2024-2242

# United States Court of Appeals for the Federal Circuit

EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant*

v.

INTERNATIONAL TRADE COMMISSION, UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, NUCOR CORPORATION,

*Defendants-Appellees*

Appeal from the United States Court of International Trade,
Case No. 1:22-cv-00350-TMR, Hon. Judge Timothy M. Reif

## PLAINTIFF-APPELLANT'S OPENING BRIEF

CHRISTINE M. STREATFEILD
JUSTIN R. BECKER
BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiff-Appellant*

November 20, 2024

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2024-2242 |
| **Short Case Caption** | Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC |
| **Filing Party/Entity** | Ereğli Demir ve Çelik Fabrikaları T.A.Ş. |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/20/2024

Signature: /s/ Christine M. Streatfeild

Name: Christine M. Streatfeild

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("Erdemir") | | See Attachment A. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Christine M. Streatfeild, Principal, Baker & McKenzie LLP | | |
| Justin R. Becker, Partner, Baker & McKenzie LLP | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# ATTACHMENT A

## (Parent Corporations and Stockholders Continued)

Plaintiff is a publicly traded company, listed on the stock exchange of Istanbul, Turkey.  Erdemir is 49.29 percent owned by Ataer Holding A.Ş., which is 100 percent owned by Ordu Yardimlaşma Kurumu ("OYAK"), which is a Turkish pension fund owned by its members, who are current and retired members of the Turkish armed forces; 47.63 percent of Erdemir's shares are traded on the Istanbul Stock Exchange; and 3.08 percent of its shares are held by the company as treasury stock.

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF RELATED CASES ................................................1

STATEMENT OF JURISDICTION .................................................1

STATEMENT OF ISSUES ...............................................................2

STATEMENT OF CASE AND FACTS ..........................................2

    I.      ADMINISTRATIVE PROCEDURAL HISTORY ..............................3

          A.      The Original Antidumping and Countervailing Duty Investigations ................................................................3

          B.      Çolakoğlu Successfully Appealed Commerce's Antidumping Determination ...............................................................5

          C.      Erdemir Moved the Commission To Give Effect to the Revised Commerce Determination ..........................................6

    II.     JUDICIAL PROCEDURAL HISTORY ..............................................8

SUMMARY OF THE ARGUMENT ................................................9

ARGUMENT ....................................................................................10

    I.      STANDARD OF REVIEW ................................................................10

    II.     ERDEMIR'S CHANGED CIRCUMSTANCES REVIEW WAS NOT MOOT ...........................................................................................11

          A.      The Statute Affords Retrospective Considerations of an Original Injury Determination in Certain Circumstances Such As Those Currently Before the Court ......................................12

          B.      CCRs and Sunset Reviews Require Distinct Analyses.............16

          C.      The Commission Failed to Afford Full Consideration of the Issues Raised by Erdemir In Its CCR Request ........................22

CONCLUSION AND RELIEF SOUGHT ...........................................23

# TABLE OF AUTHORITIES

*Page(s)*

**Administrative Decisions**

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Preliminary), USITC Pub. 4570 (Oct. 2015) .............................................................3

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731- TA-1291-1297, USITC Pub. 4638 (Sept. 2016).........................................................4, 5

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016)....................................4

*Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders,* 81 Fed. Reg. 67962 (Dep't of Commerce Oct. 3, 2016)..........................................*passim*

*Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 53428 (Dep't of Commerce Aug. 12, 2016)................................3, 4

*Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53433 (Dep't of Commerce Aug. 12, 2016).............................3, 13

*Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Inv. No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey*, 87 Fed. Reg. 73331 (Nov. 29, 2022) .........................................7, 8, 18

*Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*,
85 Fed. Reg. 29399 (Dep't of Commerce May 15, 2020) ................................13

*Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review)*,
USITC Pub. 5380 (Nov. 2022) ...............................................................*passim*

**Cases**

*Borlem S.A.-Empreedimentos Industriais v. United States*,
913 F.2d 933 (Fed. Cir. 1990) ....................................................................15

*Calderon v. Moore*,
518 U.S. 149 (1996).....................................................................................11

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*,
Case No. 22-cv-00349 (Ct. Int'l Trade 2024) .......................................8

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*,
Case No. 22-cv-00350 (Ct. Int'l Trade 2024) ............................*passim*

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*,
Case No. 22-cv-00351 (Ct. Int'l Trade 2024) .......................................8

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018).........................................5

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
357 F. Supp. 3d 1325 (Ct. Int'l Trade 2018).........................................6

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*,
415 F. Supp. 3d 1216 (Ct. Int'l Trade 2019).........................................6

*Ereğli Demir ve Çelik Fabrikaları T.A.S. v. United States*,
435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020).........................................6

*Ereğli Demir ve Celik Fabrikalari T.A.S. v. United States*,
  Case No. 20-2003 (Fed. Cir. June 4, 2021) ......................................................7

*Chafin v. Chafin*,
  568 U.S. 165 (2013)............................................................................................11

*Consol. Fibers, Inc. v. United States*,
  465 F. Supp. 2d 1338 (Ct. Int'l Trade 2006)....................................................12

*Encon Indus. v. United States*,
  18 CIT 867 (1994) ..............................................................................................15

*Eveready Battery Co. v. United States*,
  77 F. Supp. 2d 1327 (Ct. Int'l Trade 1999)............................................16, 19, 20

*Facebook, Inc. v. Windy City Innovations*,
  LLC, 973 F.3d 1321 (Fed. Cir. 2020) ...............................................................17

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)............................................................................................16

*Genesis HealthCare Corp. v. Symczyk*,
  569 U.S. 66 (2013)..............................................................................................11

*Knox v. Service Employees*,
  567 U.S. 298 (2012)............................................................................................11

*Lewis v. Continental Bank Corp.*,
  494 U.S. 472 (1990)............................................................................................11

*LG Elecs., Inc. v. ITC*,
  38 CIT 103 (2014) .........................................................................................14, 15

*Marx v. Gen. Revenue Corp.*,
  568 U.S. 371 (2013)............................................................................................17

*Nucor Corp. v. United States*,
  296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018)......................................................5

*Pub. Citizen v. Dep't of Justice*,
  491 U.S. 440 (1989)......................................................................................17, 18

*Serta Simmons Bedding, LLC v. Casper Sleep Inc.*,
  950 F.3d 849 (Fed. Cir. 2020) ............................................................10

*Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc.*,
  645 F. App'x 1018 (Fed. Cir. 2016) ...................................................10

*Usinor Industeel, S.A. v. United States*,
  215 F. Supp. 2d 1356 (Ct. Int'l Trade 2022) ......................................13

**Statutes**

19 U.S.C. § 1675(b) ..............................................................................*passim*

19 U.S.C. § 1675(b)(1)(C) ...........................................................................18

19 U.S.C. § 1675(c)(1) .................................................................................21

19 U.S.C. § 1675(c)(1)(C) ...........................................................................19

19 U.S.C. § 1675a ...................................................................................17, 21

19 U.S.C. § 1677(24) .....................................................................................3

19 U.S.C. §§ 2501-2581 (1979) ..................................................................17

19 U.S.C. § 3512(d) .....................................................................................13

28 U.S.C. § 1295(a)(5) ..................................................................................1

28 U.S.C. § 1295(a)(6) ..................................................................................1

28 U.S.C. § 1581(c) ...............................................................................1, 2, 9

28 U.S.C. § 1581(i)(1)(B) ..............................................................................1

28 U.S.C. § 1581(i)(1)(D) ..............................................................................1

**Regulations**

19 C.F.R. § 207.20 ......................................................................................21

19 C.F.R. § 207.24 ......................................................................................21

19 C.F.R. § 207.22 ..................................................................21

19 C.F.R. § 207.45(a)..............................................................21

19 C.F.R. § 207.45(c)..........................................................18, 22

19 C.F.R. § 351.216(b) ...........................................................21

19 C.F.R. § 351.216(d) ...........................................................22

19 C.F.R. § 351.218(b) ...........................................................21

**Legislative Materials**

Statement of Administrative Action,
   *reprinted in* 1994 U.S.C.C.A.N. 3773 ........................................*passim*

S. Rep. No. 249, 96th Cong., 1st Sess. 80-81 (July 17, 1979) ................................16

**Other Authorities**

Fed. Cir. R. 47.5 ......................................................................1

*Letter from Erdemir to Commission re Changed Circumstances
   Review* (Sept. 10, 2021) ......................................................7

*Letter from Erdemir to Commission re Request for Reconsideration*
   (May 18, 2020)....................................................................7

U.S. Const., Art. III, § 2, cl. 1 .................................................10

**STATEMENT OF RELATED CASES**

The following cases are currently pending before this Court and will directly affect or be directly affected by this Court's decision: *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2243 (Fed. Cir. 2024) and *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2249 (Fed. Cir. 2024). *See* Fed. Cir. R. 47.5. This Court has ordered that all three appeals be assigned to the same merits panel as companion cases. *See* ECF No. 23.

**STATEMENT OF JURISDICTION**

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1295(a)(5)-(6). Plaintiff-Appellant Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("Erdemir") appeals from a judgment of the U.S. Court of International Trade (the "CIT"), which dismissed Erdemir's challenge to a determination by the U.S. International Trade Commission (the "Commission" or the "ITC") under 28 U.S.C. §§ 1581(c), (i)(1)(B), (i)(1)(D). *See* Appx0001. The Commission had denied Erdemir's request for a changed circumstances review ("CCR") under Section 751(b) of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1675(b). *See* Appx0038. Erdemir timely filed its appeal on August 14, 2024. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 22-cv-00350, ECF No. 57.

## STATEMENT OF ISSUES

Whether the CIT had subject matter jurisdiction under 28 U.S.C. § 1581(c) to review Plaintiff's appeal of the Commission's decision not to conduct a CCR of the final injury determination in the antidumping duty ("AD") investigation of *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom* to consider the effect of corelated litigation that amended certain facts relied upon by the Commission in its original injury determination.

## STATEMENT OF CASE AND FACTS

This appeal arises out the CIT's determination that it did not have subject matter jurisdiction under 28 U.S.C. § 1581(c) to review Erdemir's appeal of the Commission's decision not to conduct a CCR to consider events and information that became available subsequent to the Commission's final injury determination in the AD investigation of *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*. Appx0038. Erdemir, a producer and exporter of hot-rolled steel from Turkey, requested that the Commission conduct a CCR to consider changes to the factual underpinnings of the original determination that resulted from corelated litigation. Appx0656-64. Provided below is a summary of the administrative and judicial procedural history that resulted in the current appeal.

# I. ADMINISTRATIVE PROCEDURAL HISTORY

## A. The Original Antidumping and Countervailing Duty Investigations

In the original AD and Countervailing Duty ("CVD") investigations underlying this appeal, the Commission preliminarily found that imports from Turkey were above the three percent threshold for exclusion from investigation on grounds of negligibility. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Preliminary), USITC Pub. 4570, at 14 (Oct. 2015) ("Injury Prelim"), Appx0078; 19 U.S.C. § 1677(24).

After the issuance of the Commission's preliminary findings, Commerce ultimately found that one of the two mandatory respondents, Çolakoğlu Metalurji A.S. ("Çolakoğlu"), was not subsidized, and Çolakoğlu was therefore excluded from Commerce's final determination in the CVD investigation. This left Erdemir as the only Turkish producer found to have been subsidized. *See Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53433, 53434-35 (Dep't of Commerce Aug. 12, 2016) ("Turkey CVD Final"), Appx0285-86.

In the companion AD investigation, Commerce calculated an above *de minimis* dumping margin for Çolakoğlu as well as for Erdemir. *Certain Hot-Rolled Steel Flat Products From the Republic of Turkey: Final Affirmative Determination*

*of Sales at Less Than Fair Value*, 81 Fed. Reg. 53428, 53429 (Dep't of Commerce Aug. 12, 2016) ("Turkey LTFV Final"), Appx0289.

Crucially, because Commerce found that Çolakoğlu did not receive subsidies, the Commission excluded Çolakoğlu's imports from its final injury analysis in the CVD investigation. The Commission determined that the exclusion of Çolakoğlu's imports was significant and drove the Turkish subsidized import volume below the negligible levels and therefore terminated the CVD investigation with respect to Turkey. *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016) ("HRS ITC Notice"), Appx0042; *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731- TA-1291-1297 (Final), USITC Pub. 4638, at 1 & n.2, 3, 12-14 (Sept. 2016) ("HRS ITC Final"), Appx0315 ("We consequently determine that subsidized subject imports from Turkey are negligible and terminate the countervailing duty investigation on hot-rolled steel from Turkey.").

In the AD injury case, however, because Çolakoğlu was found to have an above *de minimis* dumping margin, the Commission included Çolakoglu's imports with all Turkish imports as total subject imports from Turkey, found subject AD imports from Turkey were not negligible, and found material injury by reason of

subject imports from Turkey and other subject countries. *See* HRS ITC Final, USITC Pub. 4638, at 1, 3, 13, Appx0304, Appx0306, Appx0314 ("[I]mports from Turkey that are subject to the AD investigation are different from those subject to the CVD investigation. Hot-rolled steel imports from Turkey that are subject to the AD investigation were 7.4 percent of total imports during this period and therefore were above negligible levels."). Consequently, Commerce issued an AD order on hot-rolled steel from Turkey. *Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders,* 81 Fed. Reg. 67962 (Dep't of Commerce Oct. 3, 2016) ("AD Order"), App0617-22.

## B. Çolakoğlu Successfully Appealed Commerce's Antidumping Determination

There were three appeals resulting from the Commerce and Commission decisions in the investigation – one by the U.S. producers and one each by Çolakoğlu and Erdemir. The U.S. producers challenged the Commission's negligibility determination and lost. *See Nucor Corp. v. United States*, 296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018). Çolakoğlu and Erdemir each appealed Commerce's final determination with respect to their own calculated rates, and the CIT consolidated the two cases. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 308 F.

5

Supp. 3d 1297, 1314-20, 1328 (Ct. Int'l Trade 2018) ("*Erdemir AD I*"); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 357 F. Supp. 3d 1325, 1329-34, 1336 (Ct. Int'l Trade 2018) ("*Erdemir AD II*"); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. United States*, 415 F. Supp. 3d 1216, 1222-32 (Ct. Int'l Trade 2019) ("*Erdemir AD III*"); *Eregli Demir ve Çelik Fabrikalari T.A.S. v. United States*, 435 F. Supp. 3d 1378, 1380 (Ct. Int'l Trade 2020) ("*Erdemir AD IV*").

Çolakoğlu's appeal of Commerce's final determination was successful; its imports were found not to have been dumped and therefore were excluded from the AD Order. *Erdemir AD IV,* 435 F. Supp. 3d at 1380 ("The changes resulted in an estimated weighted-average dumping margin of zero percent for Çolakoğlu and, thus, Çolakoğlu will be excluded from the relevant antidumping duty order."); *Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29399 (Dep't of Commerce May 15, 2020), Appx0623-24.

### C.     Erdemir Moved the Commission To Give Effect to the Revised Commerce Determination

As a result of Çolakoğlu's appeal of Commerce's final determination, the

factual underpinnings of the CVD and AD investigations for purposes of the Commission's injury analysis effectively became the same; one of two Turkish producers was removed from the purview of "subject imports" and fundamentally changed the universe of imports. In light of this change, Erdemir took immediate steps to ensure adequate and lawful consideration and implementation of the results of the litigation in the AD proceeding through three separate agency proceedings.

First, immediately following the decision in *Erdemir AD IV*, Erdemir filed a letter with the Commission seeking reconsideration of the injury determination on the basis that Commerce had now excluded Çolakoğlu's imports, and as such, the total volume of Turkish imports would fall below the statutory threshold for negligibility. *See Letter from Erdemir to Commission re: Request for Reconsideration* (May 18, 2020), Appx0626-32. The Commission did not respond.

Second, in September 2021, following this Court's dismissal of an appeal to the AD order determination (*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, Case No. 20-2003, Mandate Order (Fed. Cir. June 4, 2021), docketed in Case No. 16-00218, ECF No. 161 (Ct. Int'l Trade June 4, 2021)), Erdemir requested that the Commission initiate a CCR of the original determination to address subsequent changes since the issuance of the original injury determination and resulting AD Order. *See Letter from Erdemir to Commission re Changed Circumstances Review* (Sept. 10, 2021), Appx0656-64. The Commission denied the request. *See Denial of*

*Request to Institute a Section 751(b) Review; Denial of Request to Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Inv. No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey*, 87 Fed. Reg. 73331 (Int'l Trade Comm'n Nov. 29, 2022),Appx0038-39.

Third, Erdemir participated in a sunset review before the Commission and requested the Commission give full effect of the intervening court decision that found imports from Turkish hot-rolled steel producer, Çolakoğlu, were fairly traded. The Commission, however, failed to consider Erdemir's request and instead noted that it addressed these considerations as part of its response to the reconsideration and CCR requests. *See Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review) USITC Pub. 5380 at 48, Appx0757 at n.298.

## II. JUDICIAL PROCEDURAL HISTORY

Erdemir's three administrative actions resulted in three separate appeals to the CIT. *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, Case No. 22-cv-00349 (Ct. Int'l Trade 2024); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, Case No. 22-cv-00350 (Ct. Int'l Trade 2024); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş v. ITC*, Case No. 22-cv-00351 (Ct. Int'l Trade 2024). The underlying CIT appeal for this

case related to the Commission's decision not to initiate a changed circumstances review.  The CIT dismissed Erdemir's challenge to the Commission's decision not to conduct a CCR, finding that it lacked subject matter jurisdiction.  Erdemir now appeals the CIT's dismissal.

## SUMMARY OF THE ARGUMENT

The Commission's decision to reject Erdemir's request to initiate a CCR, under Section 751(b) of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1675(b), was not supported by substantial evidence or otherwise in accordance with law.  Erdemir properly appealed the Commission's denial to the CIT pursuant to 28 U.S.C. § 1581(c).  The CIT dismissed the appeal, holding that it lacked subject jurisdiction because Erdemir's underlying claim is moot.  Appx003.

Jurisdiction is proper, however, because Erdemir's claim presents a redressable and live controversy.  Erdemir is subject to an AD order predicated on information that has since been revised pursuant to judicial review.  Through a CCR, the Commission possesses the authority to reconsider its original determination to account for these changes.  Thus, Erdemir requested a CCR after Commerce amended its original dumping margin calculations and determined that imports from the mandatory Turkish producer Çolakoğlu were not dumped.  Based on Commerce's amended calculations, imports from Turkey would fall below the three percent negligibility threshold.  The Commission's affirmative AD injury

determination with respect to imports from Turkey therefore cannot stand.

The Commission can reconsider its prior determinations based on subsequent events – in this case, Commerce's recalculated dumping margins in the original investigation. The Statement of Administrative Action, the authority on legislative intent and interpretation regarding the Tariff Act, specifically authorizes the use of a CCR in this exact situation. Moreover, the analysis undertaken in a CCR as compared to a sunset review is distinct. In a CCR, the Commission must consider changes to past circumstances. By contrast, in a sunset review the Commission must consider current circumstances. The Commission's initiation of a sunset review therefore did not render Erdemir's CCR request moot.

## ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews the CIT's "dismissal for the jurisdictional question of mootness *de novo*," *see Target Training Int'l, Ltd. v. Extended Disc N. Am., Inc*., 645 F. App'x 1018, 1022 (Fed. Cir. 2016), and applies Federal Circuit law to determine whether a case or controversy exists, *see Serta Simmons Bedding, LLC v. Casper Sleep Inc.*, 950 F.3d 849, 852 (Fed. Cir. 2020).

The U.S. Constitution limits federal court jurisdiction to "Cases" or "Controversies" where there is an actual dispute between adverse litigants. *See* U.S. Const., Art. III, § 2, cl. 1. The case-or-controversy requirement restricts the authority

of federal courts to resolving cases where the parties possess a legally cognizable interest, or personal stake, in the outcome. *See Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)).

A case only becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted). The "availability of a partial remedy is sufficient to prevent a case from being moot." *Chafin v. Chafin*, 568 U.S. 165, 177 (2013) (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam)) (internal quotation marks omitted). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox*, 567 U.S. at 307-08 (internal quotation marks and brackets omitted).

## II.  ERDEMIR'S CHANGED CIRCUMSTANCES REVIEW WAS NOT MOOT

Jurisdiction in this case is proper because Erdemir's underlying claim – that the Commission's refusal to conduct a CCR was not supported by substantial evidence or otherwise in accordance with law – presents a redressable, live controversy. Erdemir has been injured by the Commission's refusal to initiate the CCR. Erdemir therefore appealed the Commission's refusal to the CIT.

The CIT, however, erroneously found that it did not have subject matter jurisdiction to review the Commission's improper rejection because the Commission instituted a separate administrative proceeding – a sunset review – that the lower court mistakenly believed was duplicative of the CCR, thereby mooting Erdemir's request of a CCR. In making this determination, the CIT found that (A) both a CCR and sunset review afford only prospective considerations, and (B) the analysis undertaken in each is the same. Appx0028-29. These findings are not correct for reasons identified below.

A.    **The Statute Affords Retrospective Considerations of an Original Injury Determination in Certain Circumstances Such As Those Currently Before the Court**

Contrary to the CIT's findings, the statute authorizes the Commission to consider the effects of subsequent events on its original determination in a CCR. *See Consol. Fibers, Inc. v. United States*, 465 F. Supp. 2d 1338, 1343 (Ct. Int'l Trade 2006) ("Under the antidumping laws, the Commission has express statutory authorization to review its prior injury determinations upon the request of a party for a 'changed circumstances' review.") (citing 19 U.S.C. § 1675(b)); *see also* Statement of Administrative Action ("SAA") to the Uruguay Round Agreements Act ("URAA") at 851, 1994 U.S.C.C.A.N. at 4184 ("The Commission, however, may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the

original investigation…").[1]  The subsequent event in this case is that Commerce recalculated the original dumping margins for the Turkish exporters in a judicial remand redetermination.  *See Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29399 (Dep't of Commerce May 15, 2020), Appx0623-24.  Based on those recalculated margins, import volumes of subject merchandise from Turkey were negligible and therefore could not lead to a finding of material injury, as demonstrated through the parallel CVD investigation.  *See* Turkey CVD Final, 81 Fed. Reg. at 53434-35, Appx0285-86.

---

[1] "This statement represents an authoritative expression by the Administration concerning its views regarding the interpretation and application of the Uruguay Round agreements."  Statement of Administrative Action ("SAA") at 656, *reprinted in* 1994 U.S.C.C.A.N. 3773, 4040.  *See also Usinor Industeel, S.A. v. United States*, 215 F. Supp. 2d 1356, 1358 (Ct. Int'l Trade 2022) ("[T]he SAA is the authoritative expression of the Uruguay Round Agreements Act. If a statutory term or phrase were ambiguous and in need of interpretation, the court would look to the SAA first and foremost for direction. Apart from its statutory approval in 19 U.S.C. § 3512(d), in practical terms the SAA is more compelling than ordinary statutory legislative history.  Because unfair trade laws are passed pursuant to fast track procedure with only an up or down vote, normally there is not the possibly conflicting and confused legislative history that often accompanies legislation as it evolves.  The SAA is a more detailed and coherent expression of legislative intent.") (internal quotation marks and citations omitted).

It is true that generally, when dumping margins change, Congress, through the SAA, "precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margins," which "could occur due to … judicial remand." SAA, at 851, 1994 U.S.C.C.A.N. at 4184. As an exception, however, the SAA specifically approves the Commission's reconsideration of its determination in a CCR "on the basis of recalculations by Commerce of the dumping margin in the original investigation." *Id.* Thus, the circumstances in these proceedings are precisely those under which the statute affords the Commission to apply retrospective consideration of its original determination in a CCR.

The language of the SAA expressly demonstrates Congress's intent to afford the Commission authority to revisit original injury determinations when such determinations are based upon incorrect dumping margin calculations. *See id.* Specifically, the SAA states:

> The Commission, ***however***, may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes that it is warranted.

*Id.* (emphasis added); *see also LG Elecs., Inc. v. ITC*, 38 CIT 103, 107 (2014) (highlighting that the SAA "not[es] the availability of 'changes circumstances review' as a possible avenue of relief" where the Commission's determination is based upon an erroneous factual finding by Commerce). The text of this legislative

history makes clear that changes to Commerce's dumping margins in the original investigation is a limited instance when the Commission may revisit its original determination.

This authority has been further affirmed by the CIT and the Commission in previous proceedings. *See Encon Indus. v. United States*, 18 CIT 867, 869, 870 n.2 (1994) (acknowledging "that parties can and do challenge ITC's actions on the basis of errors in the information furnished to it by Commerce" and citing Section 751(b) as a "statutory avenue[] of prospective relief available to plaintiff"); *LG Elecs. Inc.*, 38 CIT at 109 (explaining that plaintiffs could pursue a CCR before the Commission if Commerce alters its determination rendering the record upon which the Commission based its determination erroneous); *Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933 (Fed. Cir. 1990) (noting that the Commission asserted in its arguments that CCRs under section 751(b) of the Tariff Act of 1930 provided the "only basis for the Commission to revisit its determinations based on subsequent events").

The CIT in these proceedings quoted the language in the SAA authorizing the Commission to revisit its original injury determinations through a CCR but came to a different conclusion without reason. The lower court stated that the language in the SAA "expressly *prohibits* such a retrospective analysis…". Appx0028. The court made this conclusion but failed to explain how or why this language is

prohibitive rather than permissive. The court also failed to address prior precedent and the previous position by the Commission that acknowledged this express authority. The CIT's position therefore was conclusory and without merit.

## B. CCRs and Sunset Reviews Require Distinct Analyses

In dismissing Erdemir's appeal, the lower court also seemingly relied on inapposite case law (*Eveready Battery*) that suggests the analyses applied in CCRs and sunset reviews are the same. *See* Appx0025 (citing *Eveready Battery Co. v. United States*, 77 F. Supp. 2d 1327, 1330 (Ct. Int'l Trade 1999)). This position, however, cannot be accepted as it would render section 751(b) superfluous and therefore violate general principles of statutory construction and analysis.

"[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks and citation omitted). Congress first authorized the Commission to conduct CCRs in 1979. Congress amended the Tariff Act of 1930 to formalize the administrative review of AD and CVD determinations. The newly enacted Section 751 was designed to "expedite[] the administration of the assessment phase of antidumping and countervailing duty investigations … and ***introduce[] more procedural safeguards***." S. Rep. No. 249, 96th Cong., 1st Sess. 80-81 (July 17, 1979) (emphasis added). Section 751(a) granted Commerce authority to conduct annual reviews of

AD/CVD orders, and Section 751(b) authorized the Commission and Commerce to review its prior determinations on a case-by-case basis when changed circumstances warranted such a review. *Trade Agreements Act of 1979*, Pub. L. No. 96-39, § 751(b), 93 Stat 144, 175-76 (1979). To "avoid placing an unnecessary burden on the domestic industry and promote efficiency of administration," Congress added Section 751(c) in 1994 to require Commerce and the Commission to automatically initiate a review of all AD/CVD orders no later than five years after issuance. SAA at 879.

In both a CCR and sunset review, the Commission considers whether the revocation of an order would likely to lead to a continuation or recurrence of injury. *See* 19 U.S.C. § 1675a. However, that does not mean that the reviews and the analyses that must be conducted in each are identical. If Congress intended for CCRs and sunset reviews to be the same, then Congress would have consolidated the reviews under the same section and the same heading. The canon against surplusage counsels against "an interpretation [that] would render superfluous another part of the same statutory scheme." *Facebook, Inc. v. Windy City Innovations*, LLC, 973 F.3d 1321, 1336 (Fed. Cir. 2020) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013)) (internal quotations and brackets omitted). Moreover, it would be absurd if the Commission were always able to wait for a sunset review and punt on a request for a CCR on the basis that both reviews are duplicative. *See Pub. Citizen*

*v. Dep't of Justice*, 491 U.S. 440, 470 (1989) ("Where the plain language of the statute would lead to patently absurd consequences, that Congress could not possibly have intended, we need not apply the language in such a fashion.") (internal quotation marks and citations omitted). This absurdity is particularly pronounced, here, when the Commission delayed its decision on whether to initiate the CCR in violation of its own regulation. *See* 19 C.F.R. § 207.45(c).[2] Surely Congress did not intend for the Commission to have the discretion to delay and deny all CCR requests simply because a sunset review will eventually occur and will involve similar standards to review.

Moreover, the plain language of the statute makes clear that the two sections are meant to address different considerations, whether or not the same factors or standards may apply to address those considerations. A CCR is meant to address changes, as stated in the statutory subheading. *See* 19 U.S.C. § 1675(b)(1)(C). Reviewing changes inherently requires consideration of past circumstances and whether they have altered to such a degree that there is no basis to find a concern for

---

[2] Erdemir highlights that the Commission delayed taking action on its CCR request by almost a full year. *See* Denial of Section 751(b) Review, 87 Fed. Reg. at 73332. Erdemir filed its initial CCR request on May 18, 2020, but the Commission did not publish notice of Erdemir's CCR request until December 3, 2021. Under its regulations, the Commission had 45 days, to February 18, 2022, to decide whether to initiate the CCR. *See* 19 C.F.R. § 207.45(c). The Commission delayed until almost a full year later (and two-and-a-half years after Erdemir's May 18, 2020 request for CCR) to decline to initiate a CCR on November 29, 2022. *See* Appx0628-32; Appx0038.

continuation or recurrence of material injury. In contrast, a sunset review is meant to serve as an inflection point for all parties, including the Commission and Commerce, to determine whether or not *current* circumstances demonstrate that revocation would lead to the continuation or recurrence of material injury. *See* 19 U.S.C. § 1675(c)(1)(C).

Acknowledging that a CCR and sunset review are not duplicative is not contrary to the CIT's holding in *Eveready Battery*. In that case, Eveready requested a CCR nine years after Commerce published an AD order on *Electrolytic Manganese Dioxide from Greece and Japan*. *Eveready Battery*, 77 F. Supp. 2d at 1328. Eveready argued that there had been "structural changes in battery consumption" since the entry of the order, and as a result, imports from Greece "would be 'limited to such a small quantity that it could have no material impact on EMD producers in the United States.'" *Id.* In short, plaintiff in *Eveready Battery* requested that the Commission consider the current market prospectively as a result of changes over time. The court in *Eveready Battery* found that, under the specific facts of that case, the requested CCR and a sunset review would provide the same relief: "The court finds that *in this case* the sunset review of the antidumping order will provide the same relief as a changed circumstances review." *Id.* at 1334 (emphasis added).

Despite these facts and the explicit limiting language in the opinion, the CIT in this proceeding broadly read *Eveready Battery* to stand for the proposition that

sunset reviews and CCRs provide the same relief because the Commission must consider the same factors and standards in both. This conclusion misinterprets the facts and the law.

Factually, *Eveready Battery* and this case are distinct. Eveready sought to address changes in the market nine years after the imposition of an order and how they have prospectively affected the market. Erdemir, on the other hand, seeks review of the original determination in light of subsequent events that undermined the veracity of the information relied upon by the Commission in that determination. These factual distinctions warrant individual consideration in this proceeding as to how a CCR may afford alternative relief from a sunset review. A prior determination by the court based on different facts cannot form the foundation for its findings here.

The CIT also misinterprets the law by conflating the application of the same factors and standard in CCRs and sunset reviews to mean that the same analysis and relief must also apply. *See* Appx0025. As noted above, while the same factors and standard may apply, the purpose and procedure of each review differs. A CCR, by virtue of its name, is intended to address changes to factual circumstances that previously led to the imposition of an order and whether such changes warrant revocation of the order because those changes have resulted in a likelihood that revocation would not lead to the continuation or recurrence of material injury. Sunset reviews, in contrast, are intended to review *current* circumstances to

determine whether revocation would lead to the continuation or recurrence of material injury. *See generally* 19 C.F.R. §§ 207.60-207.69; *see*, *e.g.*, Appx0728. Because the purpose differs, the lens to which the factors and standard that are applied must also differ. This difference in lens may (and in this case, should) lead to different results.

The procedures of both reviews also differ. The Tariff Act requires Commerce and the Commission to conduct a sunset review no later than five years after the publication of an AD/CVD order. *See* 19 U.S.C. § 1675(c)(1). In conducting sunset reviews, Commerce must determine whether revocation of an order would likely lead to the continuation or recurrence of dumping; *see* 19 C.F.R. § 351.218(b), and the Commission must determine whether revocation would likely lead to the continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time. *See* 19 U.S.C. § 1675a. During this process, questionnaires must be issued; hearings are held; and a report is issued. *See* 19 C.F.R. §§ 207.20, 207.24, 207.22.

By comparison, any interested party may request either Commerce or the Commission to initiate a CCR at any time. *See* 19 C.F.R. § 351.216(b); 19 C.F.R. § 207.45(a). And these CCRs are conducted unilaterally, by either Commerce or the Commission; they do not require review by both. If Commerce or the Commission decides that changed circumstances sufficient to warrant a review exist, then a CCR

will be initiated.  *See* 19 C.F.R. § 351.216(d); 19 C.F.R. § 207.45(c).  Notably, the procedures for a CCR by the Commission are more fluid.  *See generally* 19 C.F.R. § 351.216; 19 C.F.R. § 207.45.  The procedural differences between CCRs and sunset reviews further demonstrate the distinctive nature of each.

The CIT also fails to acknowledge an important distinction between the CCR requested by Erdemir and the Commission's sunset review with respect to cumulation.  Erdemir requested individual consideration of the AD Order on imports from Turkey.  The analysis thus should have focused solely on Turkey.  The sunset review in contrast covered multiple countries.  The sunset review and the CCR (had it been conducted) foundationally would have focused on different factual universes.  Therefore, the sunset review was not duplicative of a CCR, and Erdemir has been denied meaningful review.

### C.   The Commission Failed to Afford Full Consideration of the Issues Raised by Erdemir In Its CCR Request

The CIT's determination that Erdemir received full consideration in the sunset review of the issues raised in its CCR request is unfounded.  In the sunset review, the Commission explicitly failed to consider Erdemir's negligibility argument, only stating that "[t]hese arguments have also been raised in proceedings outside of these reviews and the Commission has addressed them there."  *Final Sunset Review,* USITC Pub. 5380 at 48 n.298, Appx0757 at n.298.  The Commission, thus, expressly acknowledged that it was ***not*** affording full consideration of the issues raised in the

CCR request. It never grappled with the question as to the effect of Commerce's remand redetermination with respect to Çolakoğlu on the basis for issuance of the AD Order.

The CIT claims that the Commission did take the remand redetermination into account in the sunset review by excluding Çolakoğlu's imports from the volume of subject merchandise. But this statement is also not fully true. The Commission did include Çolakoğlu's imports as part of the subject import volume for portions of analysis. *See id.* at IV-20 ("Turkey and subject sources subtotals include nonsubject imports from Colakoglu."). The CIT's findings here, too, are also without merit. The Commission squarely did not address in its sunset review the issues raised by Erdemir in its CCR request.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, this Court should reverse the CIT determination, find that the Erdemir's claim is justiciable, and remand to the CIT for further proceedings.

Dated: November 20, 2024

Respectfully submitted,

*/s/ Christine M. Streatfeild*
Christine M. Streatfeild
Justin R. Becker
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff-Appellant,*
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  24-2242

**Short Case Caption:**  Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

[✓]   the filing has been prepared using a proportionally-spaced typeface and includes  5,586  words.

[ ]   the filing has been prepared using a monospaced typeface and includes _____ lines of text.

[ ]   the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date:  11/20/2024

Signature:  /s/ Christine M. Streatfeild

Name:  Christine M. Streatfeild

# ADDENDUM

# ADDENDUM OF REQUIRED DOCUMENTS

## TABLE OF CONTENTS

| Tab No. | Document | Confidentiality Designation | Appendix Page |
|---------|----------|-----------------------------|---------------|
| 1 | *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00350, Judgment (Ct. Int'l Trade July 22, 2024) | Public | Appx0001 |
| 2 | *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00350, Slip Op. 24-82 (Ct. Int'l Trade July 22, 2024) | Public | Appx0002 |
| 3 | *Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73331 (Int'l Trade Comm'n Nov. 29, 2022) | Public | Appx0038 |
| 4 | *Affirmative Final Determination in Investigation Nos. 701–TA–545–547 and 731–TA–1291–1297 (Final), Hot-Rolled Steel Flat Products From Turkey*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016) | Public | Appx0041 |

# TAB 1:

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00350, Judgment  (Ct. Int'l Trade July 22, 2024)

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| |
|---|
| **EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>Defendant,<br><br>and<br><br>**UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES, LLC and NUCOR CORPORATION,**<br><br>Defendant-Intervenors. |

Before: Timothy M. Reif, Judge

Court No. 22-00350

## <u>JUDGMENT</u>

This case having been submitted for decision, and the court, after due deliberation, having rendered an opinion; now in conformity with that opinion, it is hereby

**ORDERED** that defendant's motion to dismiss for lack of subject matter jurisdiction is granted; and it is further

**ORDERED** that this action is dismissed.

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated:   July 22, 2024
         New York, New York

# TAB 2:

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Case No. 22-00350, Slip Op. 24-82 (Ct. Int'l Trade July 22, 2024)

Slip Op. 24-82

### UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **EREĞLI DEMIR VE ÇELIK FABRIKALARI T.A.Ş.,**<br><br>        Plaintiff,<br><br>v.<br><br>**UNITED STATES INTERNATIONAL TRADE COMMISSION,**<br><br>        Defendant,<br><br>and<br><br>**UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES, LLC and NUCOR CORPORATION,**<br><br>        Defendant-Intervenors. | Before: Timothy M. Reif, Judge<br><br>Court No. 22-00350 |

### **OPINION**

[Granting defendant's motion to dismiss.]

Dated:  July 22, 2024

David L. Simon, Law Office of David L. Simon, PLLC, of Washington, D.C., argued for plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş.  With him on the brief was Mark B. Lehnardt.

Frank H. Morgan, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, D.C., argued for defendant U.S. International Trade Commission.  With him on the brief were Andrea C. Casson, Assistant General Counsel for Litigation, and Michael K. Haldenstein, Attorney-Advisor.

Jeffrey D. Gerrish, Schagrin Associates, of Washington, D.C., argued for defendant-intervenors.  With him on the brief were Roger B. Schagrin and Saad Y. Chalchal, Schagrin Associates, of Washington, D.C., for defendant-intervenors Steel Dynamics, Inc. and SSAB Enterprises, LLC, Alan H. Price, Christopher B. Weld, and Theodore P.

Brackemyre, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Nucor Corporation, Stephen P. Vaughn, Neal Reynolds, and Barbara Medrado, King &

_____    _____

for defendant-intervenor United States Steel Corporation.

 Reif, Judge:  Before the court is the motion to dismiss of defendant U.S. International Trade Commission (the "Commission").  Plaintiff Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("plaintiff" or "Erdemir") invokes this Court's subject matter jurisdiction under 28 U.S.C. § 1581(c) and alleges that the refusal of the Commission to conduct a changed circumstances review ("CCR") to reconsider the negligibility decision in the Commission's investigation of hot-rolled steel flats from Turkey is unsupported by substantial evidence and not in accordance with law.  Compl. ¶ 37, ECF No. 4.  Plaintiff asserts that the Commission "has the authority to conduct a changed circumstances review for purposes of retroactive correction of errors in the AD negligibility determination in the original investigation."  *Id.* ¶ 37.  Plaintiff asks the court to set aside the Commission's denial of plaintiff's request for a CCR and remand to the Commission to conduct such a review and reconsider whether the volume of imports of hot-rolled steel from Turkey is above the negligibility threshold.  *Id.* at 12.  The Commission has filed a motion to dismiss, asserting that (1) the court lacks subject matter jurisdiction because plaintiff's claim is moot and (2) plaintiff has failed to state a claim upon which relief may be granted.  Def.'s Mot. to Dismiss ("Def. Br."), ECF No. 38.

 For the reasons discussed below, the court grants the Commission's motion to dismiss.

## BACKGROUND

**I.    The final determination of the Department of Commerce of sales at less than fair value and the Commission's final affirmative determination of material injury**

In August and September 2015, the U.S. Department of Commerce ("Commerce") initiated and the Commission instituted investigations in response to petitions filed on behalf of the domestic industry requesting the imposition of antidumping and countervailing duties on imports of hot-rolled steel flat products from various countries (including Turkey).  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50,028 (ITC Aug. 18, 2015); *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Less-Than-Fair-Value Investigations*, 80 Fed. Reg. 54,261 (Dep't of Commerce Sept. 9, 2015); *Certain Hot-Rolled Steel Flat Products from Brazil, the Republic of Korea, and Turkey: Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54,267 (Dep't of Commerce Sept. 9, 2015).

On October 1, 2015, the Commission made an affirmative preliminary determination that there was a reasonable indication that an industry in the United States was materially injured due to imports of hot-rolled steel flat products from the subject countries.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, USITC Pub. 4570, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Oct. 2015), at 3.

The Commission preliminarily determined also that the volume of imports of hot-rolled steel from Turkey was above the three percent threshold for exclusion from the investigation on grounds of negligibility.[1]  *See id.* at 13.

On August 12, 2016, Commerce published its affirmative final countervailing duty determination for Turkey.  *Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433 (Dep't of Commerce Aug. 12, 2016).

Commerce found that Çolakoğlu Dis Ticaret A.Ş. ("Colakoglu") — another Turkish producer of hot-rolled steel — received a de minimis level of countervailable subsidies.  *Id.* at 53,434.  However, Commerce made an affirmative determination because it calculated a 6.01 percent net countervailable subsidy rate for Erdemir.  *Id.*  All remaining Turkish producers and exporters were assigned Erdemir's 6.01 percent CVD rate.  *Id.*  Also on August 12, 2016, Commerce published its affirmative final determination of sales at less than fair value for Turkey.  *Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Determination of Sales at Less Than Fair Value* ("*Final Determination of Sales at Less Than Fair Value*"), 81 Fed. Reg. 53,428 (Dep't of Commerce Aug. 12, 2016).  Commerce determined that Colakoglu was selling hot-rolled steel in the United States for less than fair value and calculated a weighted-average dumping margin of 7.15 percent.  *Id.* at 53,429.

---

[1] 19 U.S.C. § 1677(24)(A)(i) defines "negligible imports" as "imports from a country of merchandise corresponding to a domestic like product identified by the Commission" that "account for less than 3 percent of the volume of all such merchandise imported into the United States in the most recent 12-month period for which data are available that precedes" the filing of a petition under 19 U.S.C. § 1673a(b) or the initiation of an investigation under 19 U.S.C. § 1673a(a).

On September 29, 2016, the Commission published its affirmative final determinations that an industry in the United States was materially injured due to imports of hot-rolled steel flat products from the subject countries.[2]  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (ITC Sept. 29, 2016).  As to Turkey, the Commission explained that "imports from Turkey that are subject to the antidumping duty investigation are different from those subject to the countervailing duty investigation" because Colakoglu's final net countervailable subsidy rate was de minimis.  *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom* ("*Final Determination of Material Injury*"), USITC Pub. 4638, Inv. Nos. 701-TA-545-547 and 731-TA-1291-1297 (Sept. 2016), at 13.

Colakoglu's imports were excluded from the Commission's injury analysis in the CVD investigation because "Colakoglu received a *de minimis* subsidy margin."  *Id.*  As a result of the exclusion of Colakoglu's imports, the volume of imports from Turkey subject to the CVD investigation fell below the negligibility threshold.[3]  *Id.*  Because subsidized

---

imports from Turkey were negligible, the Commission "terminate[d] the countervailing

duty investigation on hot-rolled steel from Turkey." *Id.* at 14; *see also* 19 U.S.C. §

1677(24)(A)(i).[4]

However, because Commerce determined that Colakoglu's imports were sold at

less than fair value, *Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg.

at 53,428, Colakoglu's imports were included in the Commission's negligibility analysis

for purposes of its antidumping duty determination. *See Final Determination of Material*

*Injury*, USITC Pub. 4638 at 13. The Commission determined that the volume of imports

subject to the AD investigation exceeded the negligibility threshold. *Id.*

As a result, the Commission's final determination of material injury applied only to

dumped imports from Turkey — not to subsidized imports from Turkey. *Id.* at 3. The

Commission analyzed subject imports on a cumulated basis, meaning that the

Commission cumulated dumped imports from Turkey with subject imports from

Australia, Brazil, Japan, Korea, the Netherlands and the United Kingdom found by

Commerce to be dumped or subsidized. *Id.* at 14-21. The Commission determined that

an industry in the United States was materially injured by reason of the cumulated

subject imports. *Id.* at 21, 39-47, 52.

On October 3, 2016, Commerce published the final AD order on imports of hot-

rolled steel flat products from Turkey. *Certain Hot-Rolled Steel Flat Products from*

*Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey,*

*and the United Kingdom: Amended Final Affirmative Antidumping Determinations for*

---

[4] 19 U.S.C. § 1673d(b)(1) requires that "[i]f the Commission determines that imports of
the subject merchandise are negligible, the investigation shall be terminated."

*Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016).

Commerce calculated revised dumping margins of 6.77 percent for Colakoglu, 4.15 percent for Erdemir and 6.41 percent for all other producers or exporters. *Id.* at 67,965.

## II.    Colakoglu and Erdemir challenged Commerce's final determination

Colakoglu and Erdemir appealed Commerce's final determination of sales at less than fair value. On April 13, 2020, this Court entered judgment sustaining Commerce's third remand redetermination, in which Commerce calculated a zero percent AD duty margin for Colakoglu. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 44 CIT __, 435 F. Supp. 3d 1378 (2020)*; see also Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 43 CIT __, 415 F. Supp. 3d 1216 (2019); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 42 CIT __, 357 F. Supp. 3d 1325 (2018); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 42 CIT __, 308 F. Supp. 3d 1297 (2018).[5]

On May 15, 2020, Commerce published an amended final determination with recalculated weighted-average dumping margins. *Certain Hot-Rolled Steel Flat Products from Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final*

-----------------------

*Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping*

*Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty*

*Administrative Reviews, in Part*, 85 Fed. Reg. 29,399 (Dep't of Commerce May 15,

2020).  Those margins were zero percent for Colakoglu, 2.73 percent for Erdemir and

2.73 percent for all other producers or exporters.  *Id.* at 29,400.

Commerce partially revoked the AD order to exclude merchandise produced and

exported by Colakoglu because Colakoglu's dumping margin was reduced to zero.[6]  *Id.*

at 29,399, 29,400 ("Commerce is hereby excluding merchandise produced and

exported by [Colakoglu] from the Order.").

Therefore, Colakoglu was successful in its appeal of Commerce's final

determination of sales at less than fair value.  However, none of the Turkish

respondents challenged the Commission's final material injury determination concerning

dumped imports from Turkey.

**III.    Plaintiff requested that the Commission institute reconsideration
         proceedings or a changed circumstances review**

After Commerce excluded Colakoglu from the AD order on hot-rolled steel from

Turkey — and with appeals of the USCIT judgment still pending before the U.S. Court of

Appeals for the Federal Circuit ("Federal Circuit") — Erdemir requested reconsideration

of the Commission's original material injury determination.  Def.'s Ex. C, Letter from

_____

Erdemir to the Commission, Request for Reconsideration ("Letter Request for

Reconsideration") (May 18, 2020) at 5, PR 1 ("Erdemir respectfully requests that the

Commission reopen the . . . investigations to consider the impact of Çolakoğlu's

exclusion from the [AD] order.").  Plaintiff asked the Commission to consider whether,

"after the exclusion of Çolakoğlu's imports from the universe of unfairly traded imports

[from Turkey], the remaining volume of HRS from Turkey sold at LTFV is below the

negligibility threshold and that the other conditions for a negative injury determination

are met, as was determined in the CVD injury investigation."  *Id.* at 5.

        Also in that letter, plaintiff requested in the alternative that the Commission treat

Colakoglu's exclusion from the AD order as a changed circumstance and treat

Erdemir's letter as a request for a CCR.  *Id.* at 6.  However, plaintiff's letter did not

analyze whether the requirements for conducting a CCR had been met.  *Id.*; *see also* 19

U.S.C. § 1675(b)(1); 19 C.F.R. § 207.45(a) ("All requests shall set forth a description of

changed circumstances sufficient to warrant the institution of a review . . . .").  Plaintiff

noted in its letter that "in the past 'the Commission determined that reconsideration was

a more appropriate procedure for review of the original determinations.'"  Letter Request

for Reconsideration at 6 (citing *Ferrosilicon from Brazil, China, Kazakhstan, Russia,*

*Ukraine, and Venezuela*, USITC Pub. 3218, Inv. Nos. 303-TA-23 & 731-TA-21-27 (Aug. 1999), 1999 WL 957691, at *4).[7]

On September 1, 2021, Commerce initiated and the Commission instituted the first sunset review of the AD and CVD orders on hot-rolled steel flat products from multiple countries. *Initiation of Five-Year (Sunset) Reviews*, 86 Fed. Reg. 48,983 (Dep't of Commerce Sept. 1, 2021); *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057 (ITC Sept. 1, 2021), PR 5; *see also* 19 U.S.C. § 1675(c).

Then, on September 10, 2021, after the United States and domestic producers had voluntarily dismissed their appeals of the judgment of the USCIT in the challenges to the Commerce determination, Erdemir requested that the Commission institute a

---

[7] On July 22, 2020, plaintiff sent the Commission a follow up to its letter of May 18, 2020. Def.'s Ex. D, Letter in Support of Request for Reconsideration ("Letter in Support of Request for Reconsideration") (July 22, 2020), PR 2. In its letter of July 22, 2020, plaintiff stated that the purpose of the letter was "to renew [plaintiff's] May 18, 2020, request . . . to inform the Commission that the Court of Appeals for the Federal Circuit has now docketed an appeal of the Court of International Trade decision that was the basis for our May 18, 2020 request . . . [and] to explain why the pendency of the CAFC appeal should not render Erdemir's current request premature." *Id.* at 1-2. Plaintiff argued that the Commission should not wait until the completion of the appeal to the Federal Circuit to reconsider the Commission's material injury determination because the completion of the appellate process would coincide with the sunset review, scheduled to begin in September 2021. *Id.* at 3. According to plaintiff in that letter:

> [T]he sunset review will not afford the Commission an opportunity to review the present matter, as the import statistics from the original investigation will not be part of the sunset review record. Thus, folding the present matter into a sunset review would prevent Erdemir from ever having its claim heard, and, in effect, would cause irreparable harm by denying Erdemir any possibility of review of the injury determination.

*Id.*

CCR to revisit its affirmative final determination of material injury in the original

investigation.  Def.'s Ex. F, Request for Commission Changed Circumstances Review

("Pl. Request for CCR") (Sept. 10, 2021), PR 18.  Erdemir argued that "Commerce's

recalculation of Colakoglu's antidumping duty margin to zero percent and its exclusion

from the antidumping duty order as a result of judicial review constitute significantly

changed circumstances from those in existence at the time of the original investigation

because the facts underlying the Commission's negligibility determination completely

changed."  *Hot-Rolled Steel Flat Products from Turkey; Request for Comments*

*Regarding the Institution of a Section 751(b) Review Concerning the Commission's*

*Affirmative Determination* ("*Request for Comments*"), 86 Fed. Reg. 68,512, 68,513 (ITC

Dec. 2, 2021), PR 105.  In that letter, Erdemir argued also that the exclusion of

Colakoglu from the AD order "cannot effectively be considered in the sunset review

currently underway, because specific imports [sic] data from the original investigation

will not be part of the sunset review record."  Pl. Request for CCR at 8 (footnote

omitted).

On December 2, 2021, the Commission published a notice in the Federal

Register requesting comment on "whether the alleged changed circumstances . . . are

sufficient to warrant institution of a review" and "the degree to which any changed

circumstances proceeding concerning hot-rolled steel flat products from Turkey can be

conducted in conjunction with the five-year review of the antidumping duty order on the

same subject merchandise."  *Request for Comments*, 86 Fed. Reg. at 68,513.

The Commission then received a joint submission from Cleveland-Cliffs, Nucor,

SDI, SSAB and the United States Steel Corporation opposing the institution of a CCR.

*See Hot-Rolled Steel Flat Products from Turkey; Denial of Request To Institute a*

*Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or*

*Reconsideration Proceeding Concerning the Commission's Affirmative Determination in*

*Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products from Turkey*

("*Denial of Request for CCR and Reconsideration Proceeding*"), 87 Fed. Reg. 73,331,

73,332 (ITC Nov. 29, 2022).  The Commission received also submissions from both the

Turkish government and plaintiff in support of instituting a CCR.  *Id.* at 73,332.

In plaintiff's comments in support of its request for a CCR, plaintiff cited to certain

language in the Statement of Administrative Action in which, according to plaintiff,

Congress stated expressly that recalculations by Commerce of the dumping margin in

the original investigation were a sufficient reason to conduct a CCR, if the party seeking

such a review establishes that it is warranted.  Def.'s Ex. L, Erdemir Comments on

Institution of Changed Circumstances Review (Jan. 3, 2022) at 8, PR 109 (citing

*Statement of Administrative Action accompanying the Uruguay Round Agreements Act*,

H.R. Doc. No. 103-316, vol. 1 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4184

("SAA")).

**IV.    The Commission conducted full sunset review and denied plaintiff's request for reconsideration or a changed circumstances review**

On December 6, 2021, the Commission determined to conduct full sunset reviews of the hot-rolled steel orders.[8]  *Notice of Commission Determination to Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom* ("*Notice of Full Five-Year Reviews*"), 87 Fed. Reg. 3,123 (ITC Jan. 20, 2022), PR 116.  In those reviews, plaintiff maintained that the Commission should conduct a CCR or reconsideration proceeding so that the Commission could correct its negligibility analysis in light of the exclusion of Colakoglu from Commerce's AD order.  *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom* ("*Sunset Review Determination*"), USITC Pub. No. 5380, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), at 26 n.132 (Nov. 2022), PR 355.  Plaintiff argued also that the Commission should reverse its original

---

[8] 19 U.S.C. § 1675(c)(5) requires the Commission to complete a full sunset review "within 360 days after the date on which a review is initiated," unless there is no response to the notice of initiation, or the response to the notice of initiation is inadequate.  *See* 19 U.S.C. § 1675(c)(3)(A)-(B).  On September 1, 2021, the Commission published notice of the institution of the sunset reviews.  *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057, 49,058 ("The Commission will assess the adequacy of interested party responses to this notice of institution to determine whether to conduct a full review or an expedited review.").  Then, on December 6, 2021, "the Commission determined that it should proceed to full reviews in the subject five-year reviews" because "the domestic interested party group response and the respondent interested party group responses from Australia, Brazil, Japan, the Netherlands, Turkey, and the United Kingdom to its notice of institution . . . were adequate."  *Notice of Full Five-Year Reviews*, 87 Fed. Reg. at 3,124.

negligibility determination involving dumped imports from Turkey in the sunset reviews.[9]
*Id.*

Then, on November 29, 2022, the Commission "declined to institute [a changed
circumstances review] or grant reconsideration."  *Denial of Request for CCR and
Reconsideration*, 87 Fed. Reg. at 73,331.  The Commission noted that, "[a]t the time
Erdemir filed its request for a changed circumstance review, the Commission was
already conducting a five-year review of the antidumping duty order on hot-rolled steel
flat products from Turkey."  *Id.* at 73,332.  The Commission determined that
"[c]onducting a changed circumstances review at the same time as a five-year review
would be unwarranted because it would be duplicative of the full five-year review."  *Id.*
(citing *Eveready Battery Co., Inc. v. United States*, 23 CIT 896, 77 F. Supp. 2d 1327
(1999)).  The Commission stated also that "the result that Erdemir seeks —
reexamination of the Commission's original negligibility finding — is not possible in a
changed circumstances review because negligibility is not a factor for the Commission
to consider under the statute in a changed circumstances review."  *Id.*  The Commission
concluded that, because a CCR "involves a forward-looking inquiry," it "does not provide
an opportunity for the Commission to reconsider and amend its original injury
determination."  *Id.* (*comparing* 19 U.S.C. § 1675a(a), *with* 19 U.S.C. §§ 1673d(b)(1),
*and* 1677(24)).  As a result, the Commission denied Erdemir's request.  *Id.*

---

[9] On September 15, 2022, the Commission conducted a public hearing as part of its
sunset review.  Def.'s Ex. J, Commission Hearing Transcript (Sept. 15, 2022), PR 315.
In that hearing, interested parties provided testimony to the Commissioners concerning
plaintiff's request for a CCR or reconsideration proceeding.  *Id.* at 78:8-16, 81:13-83:17.

In that decision, the Commission noted that Erdemir's comments of January 2022 requesting a CCR included also an alternative request that the Commission institute a reconsideration proceeding.  *Id.*  The Commission declined to institute a proceeding to reconsider its negligibility analysis and the finding of non-negligibility with respect to the original AD investigation of hot-rolled steel flat products from Turkey.  *Id.* at 73,332-73,333.

The Commission explained that its reconsideration authority is reserved for "extraordinary circumstances," such as when reconsideration is necessary to protect the integrity of its proceedings from fraud.  *Id.* at 73,332.  In the instant proceedings, the Commission determined that there was "no evidence of fraud or other facts that suggest extraordinary circumstances" and therefore concluded that "the recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products" did not warrant reconsideration.  *Id.*  To support that conclusion, the Commission relied on legislative history "in which Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis."[10]  *Id.*

---

According to the Commission, Erdemir was required to challenge the

Commission's affirmative material injury determination in the original investigation,

which was the proper "path for Erdemir to avail itself to preserve its rights to obtain a

reexamination of the Commission's original determination in light of the subsequent

successful appeal of Commerce's final original determination that resulted in a de

minimis dumping margin for Colakoglu and exclusion of imports from Colakoglu from

the scope of Commerce's final affirmative antidumping duty determination." *Id.* at

73,333.

The Commission explained that "[t]he potential impact on Erdemir at the time that

Erdemir and Colakoglu appealed Commerce's final antidumping duty determination was

known to Erdemir at that time, and[,] in fact, Erdemir joined Colakoglu in appealing

Commerce's original determination." *Id.* The Commission determined, as a result, that

"[t]he interests of the finality of the agency's decision are paramount under the

circumstances presented." *Id.* On this basis, the Commission denied Erdemir's request

for reconsideration. *Id.*

On November 25, 2022, the Commission completed its first sunset review and

determined that revocation of the AD order on hot-rolled steel flat products from Turkey

would be likely to lead to continuation or recurrence of material injury. *Hot-Rolled Steel

from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United

Kingdom*, 87 Fed. Reg. 74,167 (ITC Dec. 2, 2022), PR 357. The Commission analyzed

subject hot-rolled steel imports from Turkey on a cumulated basis[11] with subject imports

from Australia, Japan, the Netherlands, South Korea, Russia and the United Kingdom

and determined that revocation of the AD order on hot-rolled steel flat products from

Turkey would be likely to lead to continuation or recurrence of material injury.[12]  *See*

*Sunset Review Determination*, USITC Pub. No. 5380 at 48, 67; *see also* 19 U.S.C. §

1675a(a)(7).  Thereafter, Commerce published a notice of continuation of the AD order.

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of*

*Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Continuation*

*of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and*

*United Kingdom) and Countervailing Duty Order (Korea) and Revocation Antidumping*

*and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dep't of Commerce Dec.

22, 2022).

Plaintiff then brought multiple actions to challenge different decisions made by

the Commission during the course of the proceedings before the agency.  In the instant

———————————————

action, plaintiff contends that the Commission has the authority to conduct a CCR for purposes of retroactive correction of errors in the antidumping negligibility determination in the original investigation.  Compl. ¶ 37.  Plaintiff asserts that the Commission's decision not to conduct a CCR is not supported by substantial evidence and otherwise is not in accordance with law.[13]  *Id.*

On June 13, 2024, the court held oral argument.  *See* Oral Arg. Tr., ECF No. 54.

## JURISDICTION AND STANDARD OF REVIEW

Whether a court has subject matter jurisdiction to hear an action is a "threshold" inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  28 U.S.C. § 1581(c) grants the Court "exclusive jurisdiction of any civil action commenced under" 19 U.S.C. § 1516a.  19 U.S.C. § 1516a(a)(1)(B) provides for judicial review of "a determination by the Commission, under section 1675(b) of [title 19], not to review a determination based upon changed circumstances."

In an action to challenge "a determination by the Commission . . . not to review a determination based upon changed circumstances," *id.*, the Court "shall hold unlawful any determination, finding, or conclusion found . . . to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id.* § 1516a(b)(1)(A).

However, "[b]ecause Article III of the Constitution requires that the court adjudicate only a presently pending case or controversy, jurisdiction is improper if the

———————————————

action is moot." *Eveready Battery Co., Inc. v. United States*, 23 CIT 896, 897, 77 F. Supp. 2d 1327, 1329 (1999) (citing *Associacao Dos Industriais de Cordoaria E Redes v. United States*, 17 CIT 754, 759, 828 F. Supp. 978, 984 (1993)).  "A case will be dismissed as moot when the challenge presented to the [c]ourt cannot result in a meaningful remedy."  *Verson v. United States*, 22 CIT 151, 154, 5 F. Supp. 2d 963, 966 (1998).  Moreover, if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is moot.  *PPG Industries, Inc. v. United States*, 11 CIT 303, 306, 660 F. Supp. 965, 968 (1987) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

With respect to the Commission's 12(b)(6) motion for failure to state a claim, "any factual allegations in the complaint are assumed to be true and all inferences are drawn in favor of the plaintiff."  *Env't One Corp. v. United States*, 47 CIT __, __, 627 F. Supp. 3d 1349, 1355 (2023) (quoting *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000)); *see generally* USCIT Rule 12(b)(6).

"A court may properly dismiss a claim pursuant to [USCIT] Rule 12(b)(6) only if Plaintiff's allegations of fact are not 'enough to raise a right to relief above the speculative level.'"  *VoestAlpine USA Corp. v. United States*, 46 CIT __, __, 578 F. Supp. 3d 1263, 1276 (2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss, plaintiff's complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

## DISCUSSION

**I.    Whether plaintiff's request for a changed circumstances review was rendered moot by the sunset review**

### A.    Legal framework

19 U.S.C. § 1675(b)(1)(A) requires that the Commission conduct a review of "a final affirmative determination that resulted in" an AD or CVD order whenever the Commission "receives information . . . or a request from an interested party . . . which shows changed circumstances sufficient to warrant a review."

Section 1675(b)(2)(A) provides the standard that the Commission applies when conducting a CCR:

> [I]n the case of a countervailing duty order or antidumping duty order or finding, [the Commission shall] determine *whether revocation of the order or finding is likely to lead to continuation or recurrence* of *material injury*,

(emphasis supplied).

In addition, § 1675(b)(3)(A) places on the "party seeking revocation of an order" pursuant to a CCR "the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant" revocation of the order.

19 U.S.C. § 1675(c) provides the statutory requirements for a five-year review ("sunset review") of a CVD or AD order of the Commission.  Under 19 U.S.C. § 1675(c)(1), "5 years after the date of publication" of an AD or CVD order the Commission is required to "conduct a review to determine . . . *whether revocation* of the *[order] would be likely to lead to continuation or recurrence of dumping or a countervailable subsidy (as the case may be) and of material injury*."  (emphasis supplied).

19 U.S.C. § 1675a(a)(1) sets out the factors that the Commission is required to consider when determining the likelihood of continuation or recurrence of material injury in either a sunset review or CCR.  The provision requires that the Commission consider "the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked."  *Id.* § 1675a(a)(1).  Section 1675a(a)(6) further provides that in conducting a sunset review or a CCR "the Commission may consider the magnitude of the margin of dumping."

Section 1677(35)(C)(ii)-(iii) describes the "magnitude of the margin of dumping" to be used by the Commission:

> (ii) in making a final determination under section 1673d(b) of this title, the dumping margin or margins most recently published by the administering authority prior to the closing of the Commission's administrative record;

> (iii) in a [changed circumstances] review under section 1675(b)(2) of this title, the most recent dumping margin or margins determined by the administering authority under section 1675a(c)(3) of this title, if any, or under section 1673b(b) or 1673d(a) of this title . . . .

19 U.S.C. § 1677(35)(C)(ii)-(iii).

Finally, Congress in the SAA elaborated on the addition of § 1677(35)(C):

> In final staggered investigations, the Commission is to use Commerce's final margins as to the pending investigations.  For other investigations for which cumulation is appropriate, the Commission is to use the most recent dumping margin issued by Commerce at the time the Commission closes its record.  This precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin.  Changes in the original margin could occur due to further proceedings in staggered investigations, corrections of ministerial errors, reconsideration of a determination, or judicial remand.  Absent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands.  The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin.  The Commission, however, may conduct a changed circumstances

review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes that it is warranted.

SAA at 851.

### B.   Analysis

The court addresses first whether plaintiff's action is moot by reason of the Commission's decision to institute a full sunset review.  "A case will be dismissed as moot when the challenge presented to the Court cannot result in a meaningful remedy." *Verson*, 22 CIT at 153, 5 F. Supp. 2d at 966.  Moreover, if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is moot.  *PPG Industries, Inc.*, 11 CIT at 306, 660 F. Supp. at 968 (quoting *Powell*, 395 U.S. at 496).

The Commission relies on this Court's decision in *Eveready Battery*, in which the Court held that a challenge of a domestic producer to the Commission's denial of the request by the domestic producer for a CCR was moot by reason of the Commission's institution of a sunset review.  Def. Br. at 14 (citing *Eveready Battery*, 23 CIT at 898, 77 F. Supp. 2d at 1329).  According to the Commission, "[g]iven the statutory scheme, even if the Commission were to conduct a CCR of the antidumping duty order on imports from Turkey, it would simply perform the same analysis that it already undertook in the five-year review of the hot-rolled steel orders."  Def. Reply Br. at 15.

Plaintiff maintains that *Eveready Battery* is inapposite and this case is not moot for multiple reasons: (1) the SAA authorizes a CCR to provide retrospective relief, which the sunset review could not provide, Pl. Br. at 25-26; (2) cumulation of plaintiff's imports with imports of other subject countries "does not make sense" in the instant case, *id.* at

28; (3) the Commission violated its regulations by delaying its response to plaintiff's request for a CCR, *id.* at 26-27; and (4) plaintiff did not receive full consideration of its arguments in the sunset review.  *Id.* at 28-29.  The court examines each argument in turn.

The court concludes that the institution of the sunset review rendered moot plaintiff's request for a CCR because the sunset review accorded to plaintiff the same potential remedy plaintiff could have received pursuant to a CCR.

In *Eveready Battery*, this Court held that the institution of a sunset review rendered plaintiff's request for a CCR moot because "[t]he purpose of both reviews is to determine whether revocation of an antidumping order is likely to lead to a continuation or recurrence of material injury, and in making this determination the statute provides that the Commission will consider the same criteria [in both reviews]."  23 CIT at 904, 77 F. Supp. 2d at 1334.  There, the Commission denied plaintiff's request for a CCR, and plaintiff appealed to this Court.  *Id.* at 897, 77 F. Supp. 2d at 1328.  Over a year after plaintiff's request for a CCR, the Commission published its determination to conduct a sunset review of the subject merchandise from Greece and Japan "to determine whether revocation of the antidumping duty orders . . . from Greece and Japan would be likely to lead to continuation or recurrence of material injury."  *Id.* at 897, 77 F. Supp. 2d at 1328-29.  Then, the Commission filed a motion to dismiss plaintiff's appeal of the Commission's denial of plaintiff's request for a CCR.  *Id.*

The Court framed the mootness inquiry as follows: "If the Commission's institution of a full sunset review accords Eveready all of the relief it sought by suing for the institution of a changed circumstances review, the current action will be rendered

moot." *Id.* at 898, 77 F. Supp. 2d at 1329 (citing 13A Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure ("*Wright & Miller*") § 3533.2, at 238 (2d ed.

1984)).  The Court noted that, in both a CCR and a sunset review, the Commission is

required to determine "whether revocation of the order is likely to lead to continuation or

recurrence of material injury."  *Id.* (*comparing* 19 U.S.C. § 1675(b)(2)(A), *with* 19 U.S.C.

§ 1675(c)(1)).  The Court concluded that "[t]he standard applied by Commerce and the

Commission in conducting a sunset review is the same as the standard applied in a

changed circumstances review."  *Id.* at 899, 77 F. Supp. 2d at 1330.  Moreover, in both

reviews, "the Commission is required to consider the same factors, namely, the likely

volume of imports, price effects, and impact of imports of the subject merchandise on

the industry if the order is revoked."[14]  *Id.* (citing 19 U.S.C. § 1675a(a)(1)).  For that

reason, "[n]othing would be gained by the institution of a changed circumstances

review," and, as a result, plaintiff's appeal was moot.  *Id.* at 904, 77 F. Supp. 2d at 1334.

Similarly, plaintiff in the instant case challenges the Commission's denial of its

request for a CCR.  Compl. ¶ 1.  As in *Eveready Battery*, the Commission instituted a

sunset review after plaintiff filed a request for a CCR.  *See* Pl. Request for CCR at 1;

*Notice of Full Five-Year Reviews*, 87 Fed. Reg. at 3,124; *Denial of Request for CCR

and Reconsideration Proceeding*, 87 Fed. Reg. at 73,331.  And, for the reasons

articulated by the court in *Eveready Battery*, the Commission's decision to institute a

sunset review accorded to plaintiff the same potential remedy that plaintiff could have

---

[14] The Court noted also that a sunset review is "more favorable to [plaintiff] than a
changed circumstances review" because "[t]he only difference of significance in the two
types of reviews" is that the party seeking a changed circumstances review "bear[s] the
burden of persuasion."  *Eveready Battery*, 23 CIT at 899, F. Supp. 2d at 1330.

received had the Commission instituted a CCR.  *See also Wright & Miller* § 3533.2.1 (3d

ed. 2024) ("If full relief is accorded by another tribunal — whether judicial,

administrative, arbitral, or a combination — a proceeding seeking the same relief is

moot.").

### 1.    Whether the SAA authorizes a CCR for a retrospective correction of errors in the AD negligibility determination in the original investigation

Plaintiff argues first that *Eveready Battery* is inapposite to this case because

"[t]he substantive CCR request in *Eveready Battery* is significantly different from

Erdemir's CCR request."  Pl. Br. at 25-26.  Plaintiff notes that the CCR request in

*Eveready Battery* "looked at changes to the market after the order went into effect and

looked forward to the effect of those changes," whereas plaintiff's CCR request "looks

back at the Commission's determination in the original investigation in light of dumping

margins recalculated . . . by Commerce on judicial remand."  *Id.* at 27-28.  According to

plaintiff, its CCR request "fits in a unique category of CCR requests specifically

contemplated by the SAA to revisit a prior Commission determination."  *Id.* at 26.

Plaintiff's position finds no support in the text of the statute or SAA.  To begin, the

text of the statute is clear that a CCR applies a prospective — not retrospective —

standard.  19 U.S.C. § 1675(b)(2)(A) governs a CCR of the Commission and provides:

In conducting a review under this subsection, the Commission shall—

(A) in the case of a countervailing duty order or antidumping duty order or finding*,* determine whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury.

In addition, § 1675a(a)(1) sets forth the factors that the Commission is required to consider when determining whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury under § 1675(b):

> The Commission shall consider the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked or the suspended investigation is terminated.

Plaintiff's position is inconsistent with the plain meaning of § 1675(b)(2)(A) and § 1675a(a)(1). The language of the statute is clear that a CCR is prospective in nature and focused on what is likely to occur if an order is revoked. The terms of § 1675(b)(2)(A) and § 1675a(a)(1) do not permit the Commission to *reconsider* the negligibility finding in the injury investigation. Moreover, Congress discussed the meaning and purpose of a CCR in different sections throughout the SAA.[15] The SAA instructs that a CCR is a forward-looking, and not backward-looking, inquiry. For example, in contrasting a CCR and a sunset review with critical circumstances determinations, the SAA provides:

> If Commerce determines that critical circumstances exist, then the Commission determines whether retroactive duties are necessary to prevent recurrence of material injury. . . . Critical circumstances determinations focus on whether an order's effectiveness is undermined by increasing shipments prior to the effective date of the order. *Changed circumstances and five-year reviews focus on likely developments if an order is revoked*.

SAA at 876-77 (emphasis supplied).

Similarly, the section of the SAA pertaining directly to CCRs states:

---

[15] By statute, Congress has stated that the SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

> In the case of an antidumping or countervailing duty order or finding or a suspended investigation, the Commission must determine whether revocation of the order or finding, or termination of the suspended investigation, is likely to lead to continuation or recurrence of material injury.

SAA at 878.

In addition, the SAA discusses in tandem the "likelihood" standard for both a

CCR and sunset review:

> [S]ection 752 elaborates on the standards for determining whether revocation of an order or termination of a suspended investigation would be likely to lead to a continuation or recurrence of injury, countervailable subsidies, or dumping. The determination called for in these types of reviews is inherently predictive and speculative.

SAA at 883.

Finally, the language of the SAA on which plaintiff relies does not authorize the

backward-looking CCR that plaintiff requests. Rather, that language expressly *prohibits*

such a retrospective analysis in a CCR:

> In final staggered investigations, the Commission is to use Commerce's final margins as to the pending investigations. For other investigations for which cumulation is appropriate, the Commission is to use the most recent dumping margin issued by Commerce at the time the Commission closes its record. This precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin. Changes in the original margin could occur due to further proceedings in staggered investigations, corrections of ministerial errors, reconsideration of a determination, or judicial remand. Absent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands. The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin. The Commission, however, may conduct a changed circumstances review of its determination *pursuant to Section 751(b)* on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes that it is warranted.

SAA at 851 (emphasis supplied).

Moreover, under 19 U.S.C. § 1675a(a)(6), the Commission "may consider the magnitude of the margin of dumping" in a CCR pursuant to § 1675(b).  On this point, the Commission's sunset review engaged in precisely the same analysis and afforded plaintiff precisely the same opportunity that the Commission would have provided pursuant to a CCR.  In the sunset review, plaintiff received the benefit of the revised de minimis dumping margin that Colakoglu received on remand.  *Sunset Review Determination*, USITC Pub. No. 5380 at 45 n.276; *see also* 19 U.S.C. § 1677(35)(C)(iii).  As a result, Colakoglu's imports were excluded from the Commission's analysis of subject imports from Turkey during the sunset review.[16]  *Sunset Review Determination*, USITC Pub. No. 5380 at 45 n.276.

### 2.    Cumulation

Plaintiff maintains also that *Eveready Battery* is inapposite to this case because, according to plaintiff, in the instant case it "does not make sense" to cumulatively assess the effects of subject imports from multiple subject countries in a CCR.  Pl. Br. at 28.  Plaintiff argues that *Eveready Battery* is inapposite because, in *Eveready Battery*, the changed circumstances pertained to the domestic industry and therefore the

---

[16] The Commission stated:

> Based on a remand from the CIT regarding Commerce's original determination, Commerce found a zero antidumping duty margin for Colakoglu and subsequently excluded Colakoglu from the antidumping duty order.  Therefore, it is no longer a producer of subject merchandise and data for it is not included in the data for subject imports from Turkey during the current review.

*Sunset Review Determination*, USITC Pub. No. 5380 at 45 n.276.

Commission requested comments as to whether the Commission should review the outstanding AD order on subject imports from both Greece and Japan on a cumulative basis.  *Id.* (citing *Electrolytic Manganese Dioxide from Greece and Japan*, 63 Fed. Reg. 30,254, 30,255 (Dep't of Commerce June 3, 1998); *Eveready Battery*, 23 CIT at 897-901, 77 F. Supp. 2d at 1328-32).  Plaintiff asserts that cumulation would not be appropriate in a CCR of the order on Turkey because plaintiff's request "is limited solely to the effect of Commerce's recalculation of Colakoglu's dumping margin."  *Id.*

Plaintiff's cumulation argument is not consistent with the statute.  In both a CCR and a sunset review, "the Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States."  19 U.S.C. § 1675a(a)(7); *see also Eveready Battery*, 23 CIT at 901, 77 F. Supp. 2d at 1332 ("[U]nder both a changed circumstances review and a sunset review, the Commission has the authority to cumulatively assess the volume and effect of imports from all countries.").  Section 1675a(a)(7) *prohibits* the Commission in a CCR or

a sunset review from cumulating imports "in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry."[17]

The statute is clear with respect to the authority it provides to the Commission in both a CCR and sunset review to cumulate imports.  Accordingly, plaintiff's argument fails.

### 3.    The effect of 19 C.F.R. § 207.45

Next, plaintiff maintains that *Eveready Battery* is inapposite to the instant case because, in this case, the Commission "violated its own regulations" by delaying its response to plaintiff's request for a CCR, whereas in *Eveready Battery*, the Commission

_____

"promptly published notice" of Eveready's CCR request.[18]  Pl. Br. at 26.  Plaintiff asserts

that its letter of May 18, 2020, was a properly filed CCR request requiring the

Commission to promptly publish notice and request comments under 19 C.F.R. §

207.45(b).  *Id.*  According to plaintiff, the Commission violated its regulations by waiting

until December 3, 2021, to publish notice of plaintiff's CCR request.  *Id.*  Plaintiff argues

further that the Commission "again violated its own regulation by delaying its decision

on whether to initiate the CCR."  *Id.*  Plaintiff notes that the Commission's notice of

December 3, 2021, set a 30-day deadline for filing comments.  *Id.* (citing *Request for*

*Comments*, 86 Fed. Reg. 68,513).  Plaintiff maintains that, under the Commission's

regulations, the Commission had until February 18, 2022 — 45 days after the close of

the comment period — to decide whether to initiate the CCR.  *Id.* (citing 19 C.F.R. §

207.45(c)).  However, plaintiff points out, the Commission did not decline to initiate a

CCR until November 29, 2022.  *Id.* (citing *Denial of Request for CCR and*

*Reconsideration Proceeding*, 87 Fed. Reg. 73,331).  Plaintiff argues that "[t]he

Commission's delay in addressing a CCR request, along with the realities of the time it

takes to appeal a Commerce AD margin calculations [sic], means that — under the

---

[18] 19 C.F.R. § 207.45(b) provides:

> Upon the receipt of a properly filed and sufficient request for a review
> investigation, *the Secretary shall publish* a notice of having received such a
> request in the Federal Register inviting public comment on the question of
> whether the Commission should institute a review investigation.

(emphasis supplied).

Commission's preferred [sic] interpretation — no party could ever successfully seek a CCR."[19]  *Id.* at 27.

Section 207.45(b) requires that the Commission publish notice and invite comment "[u]pon the receipt of a properly filed and sufficient request for a review."  19 C.F.R. § 207.45(b).  Plaintiff's letters of May and July 2020 were neither properly filed nor sufficient requests for a CCR.  Neither letter provided the standard for CCRs or attempted to explain how the recalculated dumping margin constituted "changed circumstances sufficient to warrant a review" of the injury determination.  19 U.S.C. § 1675(b)(1); *see also* 19 C.F.R. § 207.45(a) ("All requests shall set forth a description of changed circumstances sufficient to warrant the institution of a review investigation . . . ."); Def. Br. at 12.  Therefore, the Commission was under no obligation to publish notice and invite public comment under 19 C.F.R. § 207.45(b).[20][21]

By contrast, plaintiff's September 10, 2021 CCR request included an explanation of the changed circumstances as well as the legal standard that the Commission applies when determining whether to institute a CCR.  *See* Pl. Request for CCR at 6-9.

---

[19] On this point, plaintiff notes also that, "[i]n the absence of good cause shown," the Commission "may not review" an order "less than 24 months after the date of publication of the notice of" determination.  Pl. Br. at 27 (citing 19 U.S.C. § 1675(b)(4)).

[20] The court observes that the letters of May and July 2020 were titled "Request for Reconsideration" and "Letter in Support of Request for Reconsideration," respectively. *Compare* Request for Reconsideration, *and* Letter in Support of Request for Reconsideration, *with* Pl. Request for CCR.  Each letter made only a passing reference to a CCR.  Request for Reconsideration at 7; Letter in Support of Request for Reconsideration at 1.

[21] The Commission argues in addition that plaintiff's letters of May and July 2020 were premature because they were sent before Colakoglu's recalculated dumping margin became final.  Def. Reply Br. at 11.  Specifically, in May and July 2020, the appeal of the USCIT judgment in the Commerce case was still pending before the Federal Circuit.  *Id.*

Accordingly, it was "properly filed and sufficient" under 19 C.F.R. § 207.45(b).  As to this

request, the Commission failed to post notice of its denial within 45 days of the close of

the period for public comment, as required by the Commission's regulations.  19 C.F.R.

§ 207.45(c).  In fact, the Commission did not respond to plaintiff's CCR request until the

November 29, 2022 notice in which the Commission denied both plaintiff's CCR request

and plaintiff's requests for reconsideration — nearly a year after the CCR request.  *See*

*Denial of Plaintiff's Request for CCR and Reconsideration*, 87 Fed. Reg. at 73,331.  As

to the CCR request, the Commission acknowledged the requirement of § 207.45(c)

when it published the November 29, 2022 denial.  *See id.* at 73,333 n.2.  In a footnote in

that notice, the Commission explained that "the additional analysis needed to consider

[plaintiff's] alternative reconsideration request was good cause to exercise [the

Commission's] authority to waive the institution period pursuant to 207.45(c)."  *Id.*  At

oral argument, the Commission elaborated: "The Commission waived the 45-day period

. . . .  The Commission has the authority to do that and it exercised that authority in this

instance."[22]  Oral Arg. Tr. at 36:6-10.

        The Commission's failure to respond in a more timely manner to plaintiff's CCR

request and then to waive perfunctorily the period for response specified in its

regulations was suboptimal.  Transparency and responsiveness are cornerstones of

administrative process under U.S. law.  Agencies are entrusted with these

---

[22] Also at oral argument, the Commission discussed the lack of a response by the
Commission on the record to plaintiff's letters of May and July 2020.  *See* Oral Arg. Tr.
at 39:19-25.  According to the Commission, it "did not ignore [plaintiff's] letters" because
there were "oral communications" that occurred between plaintiff and the agency with
respect to those letters.  *Id.* at 39:19-40:7.

responsibilities by Congress and should treat them at all times as of utmost priority,

regardless of the circumstances.

In this case, however, none of the Commission's actions impaired plaintiff's

opportunity to be heard.  The failure of the Commission to post within 45 days after the

close of the period for public comment its denial of plaintiff's request for a CCR and the

perfunctory nature of the Commission's decision to waive that timeframe is at most

harmless error.  *See Timken Co. v. Regan*, 4 CIT 174, 179-81, 552 F. Supp. 47, 51-53

(1982) (holding that agency action should not be disturbed in the event of a harmless

procedural error, especially where there is no resulting prejudice).

####    4.    Whether plaintiff received full consideration of the issues it raised in the properly filed CCR request

The court examines next whether plaintiff received full consideration of the issues

it raised in its CCR request.  Plaintiff contends that the Commission's decision to

institute a full sunset review did not moot plaintiff's CCR request because "Erdemir did

not receive full consideration of the issues it raised in its CCR request" in the sunset

review.  Pl. Br. at 29.  Plaintiff argues that the Commission in the sunset review

"explicitly did not address issues raised by Erdemir's CCR request."[23]  *Id.*

Plaintiff received full consideration in the sunset review of the issues it raised in

its CCR request.  The sunset review took account of the recalculated dumping margin of

Colakoglu by excluding Colakoglu's imports from the volume of subject imports from

Turkey.  *Sunset Review Determination*, USITC Pub. No. 5380 at 45 n.276.  The

Commission in its denial of plaintiff's request for a CCR or reconsideration proceeding

explained its reasoning.  *See Denial of Request for CCR and Reconsideration*

*Proceeding*, 87 Fed. Reg. at 73,332.  The Commission noted first that "[c]onducting a

changed circumstances review at the same time as a five-year review would be

unwarranted because it would be duplicative of the full five-year review."  *Id.* (citing

*Eveready Battery*, 23 CIT at 896, 77 F. Supp. 2d at 1327).  The Commission then

responded to plaintiff's arguments that the Commission might revisit its original finding

of negligibility pursuant to a CCR, noting that plaintiff's request was inconsistent (as

---

[23] In responding to Erdemir's argument that the Commission is authorized to revisit its
negligibility finding in the original determination, the Commission stated:

> We note that in asserting that subject imports from Turkey would likely have
> no discernible adverse impact in the event of revocation, Erdemir has raised
> several arguments concerning the Commission's negligibility determination
> in the original antidumping duty investigation with respect to subject imports
> from Turkey.    It contends that the Commission should revisit that
> determination either in these reviews, in a changed circumstance review, or
> in a reconsideration proceeding.  These arguments have also been raised
> in proceedings outside of these reviews and the Commission has
> addressed them there.  Five-year reviews are prospective in nature and
> therefore do not accommodate reconsideration of an original determination.
> *See generally* 19 U.S.C. § 1675(c)(1)(C).

*Sunset Review Determination*, USITC Pub. No. 5380 at 48 n.298 (internal
citations omitted).

discussed above) with the statute.  *Id.* (*comparing* 19 U.S.C. § 1675a(a), *with* 19 U.S.C.
§ 1673d(b)(1), *and* § 1677(24)).

Therefore, the Commission addressed fully plaintiff's arguments that the
Commission could conduct a CCR to reconsider the Commission's negligibility
determination in the original injury investigation.  The Commission concluded that the
statute does not permit the Commission to use a CCR as a vehicle to reconsider the
Commission's finding of non-negligibility in the investigation.  *Id.*  For that reason, the
Commission concluded that the institution of the full sunset review rendered moot
plaintiff's request for a CCR.  *Id.*

In sum, the court concludes that the institution of the full sunset review of the AD
order rendered moot plaintiff's request for a CCR.

## CONCLUSION

For the reasons discussed above, the court grants the Commission's motion to
dismiss for lack of subject matter jurisdiction.  Judgment will enter accordingly.


/s/      Timothy M. Reif
Timothy M. Reif, Judge


Dated:      July 22, 2024
New York, New York

# TAB 3:

*Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73331 (Int'l Trade Comm'n Nov. 29, 2022)

by accessing its internet server at *https://www.usitc.gov.*

**FOR FURTHER INFORMATION CONTACT:** Pathenia M. Proctor, The Office of Unfair Import Investigations, (202) 205–2560.

**SUPPLEMENTARY INFORMATION:**

*Authority:* The authority for institution of this investigation is contained in section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. 1337, and in section 210.10 of the Commission's Rules of Practice and Procedure, 19 CFR 210.10 (2022).

*Scope of Investigation:* Having considered the complaint, the U.S. International Trade Commission, on November 22, 2022, *ordered that—*

(1) Pursuant to subsection (b) of section 337 of the Tariff Act of 1930, as amended, an investigation be instituted to determine whether there is a violation of subsection (a)(1)(B) of section 337 in the importation into the United States, the sale for importation, or the sale within the United States after importation of certain products identified in paragraph (2) by reason of infringement of one or more of claims 1–6 and 11–13 of the '760 patent, and whether an industry in the United States exists as required by subsection (a)(2) of section 337;

(2) Pursuant to section 210.10(b)(1) of the Commission's Rules of Practice and Procedure, 19 CFR 210.10(b)(1), the plain language description of the accused products or category of accused products, which defines the scope of the investigation, is ''semiconductor devices, and specifically undiced wafers, diced wafers, packaged chips and chipsets both attached and unattached to printed circuit boards; and end products incorporating such articles, specifically amplifiers, LIDAR sensor systems, automotive control modules, WiFi routers, and cameras'';

(3) Pursuant to Commission Rule 210.50(b)(l), 19 CFR 210.50(b)(1), the presiding administrative law judge shall take evidence or other information and hear arguments from the parties or other interested persons with respect to the public interest in this investigation, as appropriate, and provide the Commission with findings of fact and a recommended determination on this issue, which shall be limited to the statutory public interest factors set forth in 19 U.S.C. 1337(d)(l), (f)(1), (g)(1);

(4) For the purpose of the investigation so instituted, the following are hereby named as parties upon which this notice of investigation shall be served:

(a) The complainant is:

Bell Semiconductor, LLC, One West Broad Street, Suite 901, Bethlehem, PA 18018

(b) The respondents are the following entities alleged to be in violation of section 337, and are the parties upon which the complaint is to be served:

Analog Devices Inc., 1 Technology Way, Norwood, MA 02062
Bose Corporation, 100 The Mountain Road, Framingham, MA 01701
Marvell Technology Group, Ltd., Canon's Court, 22 Victoria Street, Hamilton HM 12, Bermuda
Marvell Semiconductor, Inc., 5488 Marvell Lane, Santa Clara, CA 95054
Suteng Innovation Technology Co., Ltd., d/b/a RoboSense, RoboSense Building, Block 1, South of Zhongguan Hongjualing Industrial District, No. 1213 Liuxian Avenue, Taoyuan Street, Nanshan District, Shenzen 518023, China
Kioxia Corporation, 3–1–21, Shibaura, Minato-ku, Tokyo 108–0023, Japan
Kioxia America, Inc., 2610 Orchard Pkwy., San Jose, CA 95134
MaxLinear, Inc., 5966 La Place Court, Suite 100, Carlsbad, CA 92008
Linksys USA, Inc., 121 Theory Drive, Irvine, CA 92617
MACOM Technology Solutions, Inc., 100 Chelmsford Street, Lowell, MA 01851
Silicon Laboratories, Inc., 400 West Cesar Chavez, Austin, TX 78701
DENSO Corporation, 1 Chome-1 Showacho, Kariya, Aichi 448–0029, Japan
Skyworks Solutions, Inc., 5260 California Avenue, Irvine, CA 02617
OmniVision Technologies, Inc., 4275 Burton Drive, Santa Clara, CA 95054
Arlo Technologies, Inc., 480 N McCarthy Blvd., Suite 200, Milpitas, CA 95035

(c) The Office of Unfair Import Investigations, U.S. International Trade Commission, 500 E Street SW, Suite 401, Washington, DC 20436; and

(5) For the investigation so instituted, the Chief Administrative Law Judge, U.S. International Trade Commission, shall designate the presiding Administrative Law Judge.

Responses to the complaint and the notice of investigation must be submitted by the named respondents in accordance with section 210.13 of the Commission's Rules of Practice and Procedure, 19 CFR 210.13. Pursuant to 19 CFR 201.16(e) and 210.13(a), as amended in 85 FR 15798 (March 19, 2020), such responses will be considered by the Commission if received not later than 20 days after the date of service by the complainant of the complaint and the notice of

investigation. Extensions of time for submitting responses to the complaint and the notice of investigation will not be granted unless good cause therefor is shown.

Failure of a respondent to file a timely response to each allegation in the complaint and in this notice may be deemed to constitute a waiver of the right to appear and contest the allegations of the complaint and this notice, and to authorize the administrative law judge and the Commission, without further notice to the respondent, to find the facts to be as alleged in the complaint and this notice and to enter an initial determination and a final determination containing such findings, and may result in the issuance of an exclusion order or a cease and desist order or both directed against the respondent.

By order of the Commission.

Issued: November 23, 2022.

**Jessica Mullan,**

*Acting Supervisory Attorney.*

[FR Doc. 2022–26055 Filed 11–28–22; 8:45 am]

**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**[Investigation No. 731–TA–1296 (Final)]**

**Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731–TA–1296 (Final), Hot-Rolled Steel Flat Products From Turkey**

**AGENCY:** United States International Trade Commission.

**ACTION:** Notice.

---

**SUMMARY:** The Commission hereby gives notice that it has declined to institute a review pursuant to section 751(b) of the Tariff Act of 1930 (the Act) or grant reconsideration regarding the Commission's affirmative determination in investigation No. 731–TA–1296 (Final).

**DATES:** *Applicable:* November 22, 2022.

**FOR FURTHER INFORMATION CONTACT:** Douglas Corkran (202–205–3057), Office of Investigations, U.S. International Trade Commission, 500 E Street SW, Washington, DC 20436. Hearing-impaired persons can obtain information on this matter by contacting the Commission's TDD terminal on 202–205–1810. Persons with mobility impairments who will need special

assistance in gaining access to the Commission should contact the Office of the Secretary at 202–205–2000. General information concerning the Commission may also be obtained by accessing its internet server (*http://www.usitc.gov*). The public record for this matter may be viewed on the Commission's electronic docket (EDIS) at *http://edis.usitc.gov.*

**SUPPLEMENTARY INFORMATION:**

*Background.*—In September 2016, the Commission determined that a U.S. industry was materially injured by reason of imports of hot-rolled steel flat products from Turkey found by the U.S. Department of Commerce (Commerce) to be sold in the United States at less than fair value (81 FR 66996, Sept. 29, 2016). Turkish producer and exporter Eregli Demir ve Celik Fabrikalari T.A.S. (Erdemir) did not appeal the Commission's final affirmative material injury determination in the antidumping duty investigation with respect to Turkey.

On September 1, 2021, Commerce initiated, and the ITC instituted, five-year reviews of the antidumping duty order on hot-rolled steel flat products from Turkey (86 FR 48983 & 86 FR 49057, Sept. 1, 2021). On December 6, 2021, the Commission determined to conduct a full five-year review of the order (87 FR 3123, Jan. 20, 2022).

On September 10, 2021, the Commission received a request from Erdemir to review its affirmative determination in investigation No. 731–TA–1296 (Final) pursuant to section 751(b) of the Act (19 U.S.C. 1675(b)). The request alleged there have been significant changed circumstances since the issuance of the Commission's 2016 determination. Specifically, Erdemir alleged that Commerce's recalculation of Colakoglu Dis Ticaret A.S.'s (Colakoglu) antidumping duty margin to zero percent and Colakoglu's consequent exclusion from the antidumping duty order as a result of judicial review constitute significantly changed circumstances from those in existence at the time of the original investigation. According to Erdemir, the exclusion of Colakoglu from the antidumping duty order places this case *in pari materia* with the Commission's finding of negligibility in the countervailing duty investigation and provides a compelling basis to now find that imports from Turkey were negligible in the original antidumping duty investigation.

On December 2, 2021, the Commission published a **Federal Register** notice inviting comments from the public on whether changed circumstances exist sufficient to warrant

the institution of a changed circumstances review (86 FR 68512, Dec. 2, 2021). In response to its **Federal Register** notice soliciting comments, the Commission received a submission opposing the institution of a changed circumstances review jointly filed on behalf of Cleveland-Cliffs Inc., Nucor Corporation, SSAB Enterprises, LLC, Steel Dynamics, Inc., and United States Steel Corporation. The Commission also received separate submissions in favor of instituting a changed circumstances review on behalf of the government of the Republic of Turkey and Erdemir.

The Commission has determined not to institute a changed circumstances review of the antidumping duty order on hot-rolled steel flat products from Turkey. At the time Erdemir filed its request for a changed circumstance review, the Commission was already conducting a five-year review of the antidumping duty order on hot-rolled steel flat products from Turkey. Conducting a changed circumstances review at the same time as a five-year review would be unwarranted because it would be duplicative of the full five-year review. *See Eveready Battery Co. Inc.* v. *United States,* 77 F. Supp.2d 1327 (CIT 1999) (finding that a request for a changed circumstances review was rendered moot by the Commission's institution of a full five-year review). Moreover, the result that Erdemir seeks—reexamination of the Commission's original negligibility finding—is not possible in a changed circumstances review because negligibility is not a factor for the Commission to consider under the statute in a changed circumstances review. A changed circumstances review involves a forward-looking inquiry that considers whether in view of changed circumstances an order is no longer needed to prevent the continuation or recurrence of material injury; it does not provide an opportunity for the Commission to reconsider and amend its original injury determination. *Compare* 19 U.S.C. 1675a(a) *with* 19 U.S.C. 1673d(b)(1) & 1677(24).

While not included in its request for a changed circumstances review, Erdemir raised in its comments regarding the changed circumstances request that the Commission consider the alternative of conducting a reconsideration proceeding. After considering this alternative request, the Commission has determined not to exercise its authority to undertake a reconsideration of its negligibility analysis in its original material injury determination with respect to the antidumping duty investigation of

imports of hot-rolled steel flat products from Turkey.

In view of the presumption of finality and correctness that underlies past action by the Commission, the Commission has chosen to exercise its authority to reconsider only when "extraordinary circumstances" are present. For example, the Commission reconsidered its determination in *Ferrosilicon* "when a fraud has been perpetrated on the tribunal in its initial proceeding." *Ferrosilicon from Brazil, China, Kazakhstan, Russia, Ukraine, and Venezuela,* Inv. Nos. 731–TA–566–570, 641 and 303–TA–23 (Reconsideration), USITC Pub. 3218 (Aug. 1999) ("*Ferrosilicon Reconsideration*"), *aff'd Elkem Metals Co.* v. *United States,* 193 F.Supp.2d 1314 (CIT 2002). In *Ferrosilicon Reconsideration,* the Commission concluded that the "type of extraordinary circumstances that . . . would warrant reconsideration of a Commission determination—matters that strike at the heart of the integrity of the administrative process" were present because "[d]omestic producers were criminally convicted of an offense concerning an issue—the establishment of prices for ferrosilicon—that was a focal point of the original Commission investigations." *Ferrosilicon Reconsideration* at 8.

Recognizing that the facts presented are unique to each case, and in this case where there is no evidence of fraud or other facts that suggest extraordinary circumstances, we do not find that the recalculation of the dumping margin by Commerce with respect to hot-rolled steel flat products from Turkey warrants reconsideration of our determination. We note that our finding is consistent with the Statement of Administrative Action to the Uruguay Round Agreements Act (SAA) and statutory provisions, in which Congress specifically contemplated subsequent changes to the antidumping duty margins and instructed that such changes would not be a basis to reconsider the Commission's impact analysis.[1] *See* 19 U.S.C. 1677(35)(C) and

---

[1] Commissioners Kearns and Karpel do not join this sentence. They note that 19 U.S.C. 1677(35)(C) defines the "magnitude of margins of dumping" that the Commission is to consider in its impact analysis in accordance with 19 U.S.C. 1677(7)(C)(iii)(v), and that the section of the SAA referenced above pertains to these provisions. Erdemir, on the other hand, is not asking the Commission to reconsider the "magnitude of margins of dumping" for purposes of its impact analysis pursuant to 19 U.S.C. 1677(7)(C)(iii)(v) and 1677(35)(C), but rather is asking for the Commission to reconsider its negligibility analysis for purposes of 19 U.S.C. 1673d(b)(1) and 19 U.S.C. 1677(24) because the scope of imports subject to Commerce's final affirmative antidumping duty determination

SAA at 851. There was a path for Erdemir to avail itself to preserve its rights to obtain a reexamination of the Commission's original determination in light of the subsequent successful appeal of Commerce's final original determination that resulted in a de minimis dumping margin for Colakoglu and exclusion of imports from Colakoglu from the scope of Commerce's final affirmative antidumping duty determination. The potential impact on Erdemir at the time that Erdemir and Colakoglu appealed Commerce's final antidumping duty determination was known to Erdemir at that time, and in fact, Erdemir joined Colaloglu in appealing Commerce's original determination. Erdemir did not appeal the Commission's final affirmative material injury determination which would have provided it with the opportunity to preserve its rights for further reconsideration of the merits based on the outcome of Commerce's appeal. *Accord Borlem S.A. Empreedimentos Industriais* v. *United States,* 913 F.2d 933, 939 (Fed. Cir. 1990); *LG Electronics, Inc.* v. *U.S. International Trade Commission,* Slip Op. 14–8, 2014 WL 260603, at *3 (CIT Jan. 23, 2014). The interests of the finality of the agency's decision are paramount under the circumstances presented and, absent extraordinary circumstances, we decline the request to revisit the final original determination.

*Authority:* This notice is published pursuant to section 207.45 of the Commission's Rules of Practice and Procedure.[2]

By order of the Commission.

Issued: November 23, 2022.

**Jessica Mullan,**

*Acting Supervisory Attorney.*

[FR Doc. 2022–25984 Filed 11–28–22; 8:45 am]

**BILLING CODE 7020–02–P**

---

has changed. Therefore, in their view, it is not clear that 19 U.S.C. 1677(7)(C)(iii)(v) and 1677(35)(C) and the related SAA language address the circumstances presented here.

[2] The Commission has determined the additional analysis needed to consider the alternative reconsideration request was good cause to exercise its authority to waive the institution period pursuant to section 207.45(c) of the Commission's Rules of Practice and Procedure (19 CFR 207.45(c)).

---

## DEPARTMENT OF LABOR

**Agency Information Collection Activities; Submission for OMB Review; Comment Request; High-Voltage Continuous Mining Machine Standards for Underground Coal Mines**

**ACTION:** Notice of availability; request for comments.

**SUMMARY:** The Department of Labor (DOL) is submitting this Mine Safety and Health Administration (MSHA)-sponsored information collection request (ICR) to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995 (PRA). Public comments on the ICR are invited.

**DATES:** The OMB will consider all written comments that the agency receives on or before December 29, 2022.

**ADDRESSES:** Written comments and recommendations for the proposed information collection should be sent within 30 days of publication of this notice to *www.reginfo.gov/public/do/PRAMain.* Find this particular information collection by selecting "Currently under 30-day Review—Open for Public Comments" or by using the search function.

*Comments are invited on:* (1) whether the collection of information is necessary for the proper performance of the functions of the Department, including whether the information will have practical utility; (2) if the information will be processed and used in a timely manner; (3) the accuracy of the agency's estimates of the burden and cost of the collection of information, including the validity of the methodology and assumptions used; (4) ways to enhance the quality, utility and clarity of the information collection; and (5) ways to minimize the burden of the collection of information on those who are to respond, including the use of automated collection techniques or other forms of information technology.

**FOR FURTHER INFORMATION CONTACT:** Nora Hernandez by telephone at 202–693–8633, or by email at *DOL_PRA_PUBLIC@dol.gov.*

**SUPPLEMENTARY INFORMATION:** This information collection maintains the safe use of high-voltage continuous mining machines (HVCMMs) in underground coal mines by requiring testing, examination and maintenance on machines to reduce fire, electrical shock, ignition and operation hazards. 30 CFR 75.829(b)(1), 75.831, and 75.832(a) through (c) and (g)(1 through

(g)(3) contain requirements for examination, maintenance, and recordkeeping on HVCMMs to reduce fire, electrical shock, ignition, and operational hazards. For additional substantive information about this ICR, see the related notice published in the **Federal Register** on August 22, 2022 (87 FR 51448).

This information collection is subject to the PRA. A Federal agency generally cannot conduct or sponsor a collection of information, and the public is generally not required to respond to an information collection, unless the OMB approves it and displays a currently valid OMB Control Number. In addition, notwithstanding any other provisions of law, no person shall generally be subject to penalty for failing to comply with a collection of information that does not display a valid OMB Control Number. *See* 5 CFR 1320.5(a) and 1320.6.

DOL seeks PRA authorization for this information collection for three (3) years. OMB authorization for an ICR cannot be for more than three (3) years without renewal. The DOL notes that information collection requirements submitted to the OMB for existing ICRs receive a month-to-month extension while they undergo review.

*Agency:* DOL–MSHA.

*Title of Collection:* High-Voltage Continuous Mining Machine Standards for Underground Coal Mines.

*OMB Control Number:* 1219–0140.

*Affected Public:* Businesses or other for-profits institutions.

*Total Estimated Number of Respondents:* 3.

*Total Estimated Number of Responses:* 4,092.

*Total Estimated Annual Time Burden:* 192 hours.

*Total Estimated Annual Other Costs Burden:* $0.

(Authority: 44 U.S.C. 3507(a)(1)(D))

**Nora Hernandez,**

*Departmental Clearance Officer.*

[FR Doc. 2022–25977 Filed 11–28–22; 8:45 am]

**BILLING CODE 4510–43–P**

---

## DEPARTMENT OF LABOR

**Occupational Safety and Health Administration**

**[Docket No. OSHA–2022–0001]**

**Advisory Committee on Construction Safety and Health**

**AGENCY:** Occupational Safety and Health Administration (OSHA), Labor.

**ACTION:** Request for nominations.

**SUMMARY:** The Secretary of Labor requests nominations for membership

# TAB 4:

*Affirmative Final Determination in Investigation Nos. 701–TA–545–547 and 731–TA–1291–1297 (Final), Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66996 (Int'l Trade Comm'n Sept. 29, 2016)



regarding management plans and proposed resource actions on public land in southeast Oregon. This meeting is open to the public in its entirety. Information to be distributed to the Southeast Oregon RAC is requested prior to the start of each meeting.

Before including your address, phone number, email address, or other personal identifying information in your comments, please be aware that your entire comment—including your personal identifying information—may be made publicly available at any time. While you can ask us in your comment to withhold your personal identifying information from public review, we cannot guarantee that we will be able to do so.

**Donald Gonzalez,**
*Vale District Manager.*
[FR Doc. 2016–23579 Filed 9–28–16; 8:45 am]
**BILLING CODE 4310-33-P**

---

## DEPARTMENT OF THE INTERIOR

### Bureau of Land Management

**[LLNM950000 L13400000.BX0000 16XL1109AF]**

### Notice of Filing of Plats of Survey, New Mexico

**AGENCY:** Bureau of Land Management, Interior.

**ACTION:** Notice of filing of plats of survey.

**SUMMARY:** The plats of survey described below are scheduled to be officially filed in the New Mexico State Office, Bureau of Land Management, Santa Fe, New Mexico, thirty (30) calendar days from the date of this publication.

**FOR FURTHER INFORMATION CONTACT:** These plats will be available for inspection in the New Mexico State Office, Bureau of Land Management, 301 Dinosaur Trail, Santa Fe, New Mexico. Copies may be obtained from this office upon payment. Contact Carlos Martinez at 505–954–2096, or by email at *cjjmarti@blm.gov*, for assistance. Persons who use a telecommunications device for the deaf (TDD) may call the Federal Information Relay Service (FIRS) at 1–800–877–8339 to contact the above individual during normal business hours.

**SUPPLEMENTARY INFORMATION:**

### New Mexico Principal Meridian, New Mexico (NM)

The Supplemental plat, representing the dependent resurvey in Township 9 South, Range 30 East, of the New Mexico Principal Meridian, accepted June 28, 2016 for Group, 1178, NM.

The plat, representing the dependent resurvey in Township 19 North, Range 11 West, of the New Mexico Principal Meridian, accepted July 20, 2016 for Group, 909, NM. The plat, representing the dependent resurvey in Fractional Township 27 North, Range 21 West, of the New Mexico Principal Meridian, accepted September 21, 2016 for Group, 1172, NM.

The plat representing the dependent resurvey in Township 14 North, Range 17 West, of the New Mexico Principal Meridian, accepted September 21, 2016 for Group, 1175, NM. The plat representing the dependent resurvey in Township 11 North, Range 10 West, of the New Mexico Principal Meridian, accepted September 21, 2016 for Group, 1176, NM. The plat representing the dependent resurvey in Township 11 North, Range 6 East, of the New Mexico Principal Meridian, accepted September 21, 2016 for Group, 1166, NM. These plats are scheduled for official filing 30 days from the notice of publication in the **Federal Register**, as provided for in the BLM Manual Section 2097— Opening Orders. Notice from this office will be provided as to the date of said publication. If a protest against a survey, in accordance with 43 CFR 4.450–2, of the above plats is received prior to the date of official filing, the filing will be stayed pending consideration of the protest.

A plat will not be officially filed until the day after all protests have been dismissed and become final or appeals from the dismissal affirmed.

A person or party who wishes to protest against any of these surveys must file a written protest with the Bureau of Land Management New Mexico State Director stating that they wish to protest.

A statement of reasons for a protest may be filed with the Notice of Protest to the State Director or the statement of reasons must be filed with the State Director within thirty (30) days after the protest is filed.

**Charles I. Doman,**
*Branch Chief, Cadastral Survey.*
[FR Doc. 2016–23524 Filed 9–28–16; 8:45 am]
**BILLING CODE 4310-FB-P**

---

## INTERNATIONAL TRADE COMMISSION

**[Investigation Nos. 701–TA–545–547 and 731–TA–1291–1297 (Final)]**

### Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom

**Determinations**

On the basis of the record [1] developed in the subject investigations, the United States International Trade Commission ("Commission") determines, pursuant to the Tariff Act of 1930 ("the Act"), that an industry in the United States is materially injured by reason of imports of certain hot-rolled steel flat products ("hot-rolled steel") from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom, provided for in subheadings 7208.10.15, 7208.10.30, 7208.10.60, 7208.25.30, 7208.25.60, 7208.26.00, 7208.27.00, 7208.36.00, 7208.37.00, 7208.38.00, 7208.39.00, 7208.40.60, 7208.53.00, 7208.54.00, 7208.90.00, 7210.70.30, 7210.90.90, 7211.14.00, 7211.19.15, 7211.19.20, 7211.19.30, 7211.19.45, 7211.19.60, 7211.19.75, 7211.90.00, 7212.40.10, 7212.40.50, 7212.50.00, 7214.91.00, 7214.99.00, 7215.90.50, 7225.11.00, 7225.19.00, 7225.30.30, 7225.30.70, 7225.40.70, 7225.99.00, 7226.11.10, 7226.11.90, 7226.19.10, 7226.19.90, 7226.91.50, 7226.91.70, 7226.91.80, 7226.99.01, and 7228.60.60 of the Harmonized Tariff Schedule of the United States, that have been found by the Department of Commerce ("Commerce") to be sold in the United States at less than fair value ("LTFV"), and that have been found by Commerce to be subsidized by the governments of Brazil and Korea.[2] The Commission further finds that imports of hot-rolled steel that have been found by Commerce to be subsidized by the government of Turkey are negligible. The Commission also finds that imports subject to

---

[1] The record is defined in sec. 207.2(f) of the Commission's Rules of Practice and Procedure (19 CFR 207.2(f)).

[2] Chairman Irving A. Williamson, Vice Chairman David S. Johanson, and Commissioners Dean A. Pinkert, Meredith M. Broadbent, and Rhonda K. Schmidtlein voted in the affirmative with respect to imports from Australia, Brazil, Japan, Korea, the Netherlands, and the United Kingdom and with respect to imports sold at less than fair value from Turkey. Commissioner F. Scott Kieff voted in the affirmative with respect to imports from Brazil, Japan, Korea, the Netherlands, and the United Kingdom and with respect to imports sold at less than fair value from Turkey; he voted in the negative with respect to imports from Australia. All six Commissioners found that imports of these products from Turkey that Commerce has determined are subsidized by the government of Turkey are negligible.

Commerce's affirmative critical circumstances determinations are not likely to undermine seriously the remedial effect of the countervailing and antidumping duty orders on hot-rolled steel from Brazil and the antidumping duty order on imports from Japan.

**Background**

The Commission, pursuant to sections 705(b) and 735(b) of the Act (19 U.S.C. 1671d(b) and 19 U.S.C. 1673d(b)), instituted these investigations effective August 11, 2015, following receipt of a petition filed with the Commission and Commerce by AK Steel Corporation (West Chester, Ohio), ArcelorMittal USA, LLC (Chicago, Illinois), Nucor Corporation (Charlotte, North Carolina), SSAB Enterprises, LLC (Lisle, Illinois), Steel Dynamics, Inc. (Fort Wayne, Indiana), and United States Steel Corporation (Pittsburgh, Pennsylvania). The final phase of the investigations was scheduled by the Commission following notification of preliminary determinations by Commerce that imports of hot-rolled steel from Brazil[3] were subsidized within the meaning of section 703(b) of the Act (19 U.S.C. 1671b(b)) and that imports from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom were dumped within the meaning of 733(b) of the Act (19 U.S.C. 1673b(b)). Notice of the scheduling of the final phase of the Commission's investigations and of a public hearing to be held in connection therewith was given by posting copies of the notice in the Office of the Secretary, U.S. International Trade Commission, Washington, DC, and by publishing the notice in the **Federal Register** on April 15, 2016 (81 FR 22310). The hearing was held in Washington, DC, on August 4, 2016, and all persons who requested the opportunity were permitted to appear in person or by counsel.

The Commission made these determinations pursuant to sections 705(b) and 735(b) of the Act (19 U.S.C. 1671d(b) and 19 U.S.C. 1673d(b)). It completed and filed its determinations in these investigations on September 26, 2016. The views of the Commission are contained in USITC Publication 4638 (September 2016), entitled *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*

[3] The Commission also scheduled final-phase countervailing duty investigations concerning hot-rolled steel from Korea and Turkey, although Commerce preliminarily determined that *de minimis* countervailable subsidies were being provided to hot-rolled steel producers and exporters from Korea and Turkey.

*(Investigation Nos. 701–TA–545–547 and 731–TA–1291–1297 (Final)).*

By order of the Commission.
Issued: September 26, 2016.

**Katherine Hiner,**

*Acting Supervisory Attorney.*

[FR Doc. 2016–23572 Filed 9–28–16; 8:45 am]

**BILLING CODE 7020–02–P**

---

**INTERNATIONAL TRADE COMMISSION**

**[Investigation No. 337–TA–965]**

**Certain Table Saws Incorporating Active Injury Mitigation Technology and Components Thereof; Notice of Request for Statements on the Public Interest**

**AGENCY:** U.S. International Trade Commission.

**ACTION:** Notice.

**SUMMARY:** Notice is hereby given that the presiding administrative law judge ("ALJ") has issued a recommended determination on remedy and bonding in the above-captioned investigation. The Commission is soliciting comments on public interest issues raised by the recommended relief, specifically limited exclusion orders and cease and desist orders, against certain table saws incorporating active injury mitigation and components thereof, imported by respondents Robert Bosch Tool Corporation of Mount Prospect, Illinois, and Robert Bosch GmbH of Baden-Wuerttemberg, Germany. Parties are to file public interest submissions pursuant to Commission regulations.

**FOR FURTHER INFORMATION CONTACT:** Robert Needham, Office of the General Counsel, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, telephone (202) 708–5468. The public version of the complaint can be accessed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov,* and will be available for inspection during official business hours (8:45 a.m. to 5:15 p.m.) in the Office of the Secretary, U.S. International Trade Commission, 500 E Street SW., Washington, DC 20436, telephone (202) 205–2000.

General information concerning the Commission may also be obtained by accessing its Internet server (*https://www.usitc.gov*). The public record for this investigation may be viewed on the Commission's electronic docket (EDIS) at *https://edis.usitc.gov.* Hearing-impaired persons are advised that information on this matter can be obtained by contacting the

Commission's TDD terminal on (202) 205–1810.

**SUPPLEMENTARY INFORMATION:** Section 337 of the Tariff Act of 1930 provides that if the Commission finds a violation it shall exclude the articles concerned from the United States:

unless, after considering the effect of such exclusion upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States consumers, it finds that such articles should not be excluded from entry.

19 U.S.C. 1337(d)(1). A similar provision applies to cease-and-desist orders. 19 U.S.C. 1337(f)(1).

The Commission is interested in further development of the record on the public interest in these investigations. Accordingly, members of the public are invited to file, pursuant to 19 CFR 210.50(a)(4), submissions of no more than five (5) pages, inclusive of attachments, concerning the public interest in light of the administrative law judge's recommended determination on remedy and bonding issued in this investigation on September 20, 2016. Comments should address whether issuance of limited exclusion orders and cease and desist orders in this investigation would affect the public health and welfare in the United States, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, or United States consumers.

In particular, the Commission is interested in comments that:

(i) explain how the articles potentially subject to the recommended limited exclusion orders and cease and desist orders are used in the United States;

(ii) identify any public health, safety, or welfare concerns in the United States relating to the recommended limited exclusion orders and cease and desist orders;

(iii) identify like or directly competitive articles that complainant, its licensees, or third parties make in the United States which could replace the subject articles if they were to be excluded;

(iv) indicate whether complainant, complainant's licensees, and/or third party suppliers have the capacity to replace the volume of articles potentially subject to the recommended limited exclusion orders and cease and desist orders within a commercially reasonable time; and

(v) explain how the recommended limited exclusion orders and cease and desist orders would impact consumers in the United States.

Written submissions must be filed no later than by close of business on October 18, 2016.

Persons filing written submissions must file the original document