2024-2242

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant*

v.

INTERNATIONAL TRADE COMMISSION, UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, NUCOR CORPORATION,

*Defendants-Appellees*

Appeal from the U.S. Court of International Trade
Case No. 1:22-cv-00350-TMR

Judge Timothy M. Reif

# RESPONSE BRIEF OF DEFENDANTS-APPELLEES STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, CLEVELAND-CLIFFS INC., NUCOR CORPORATION, AND UNITED STATES STEEL CORPORATION

*Submitted on February 28, 2025 by*

Roger B. Schagrin
Jeffrey D. Gerrish
SCHAGRIN ASSOCIATES
900 Seventh Street, NW,
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for SSAB Enterprises LLC and Steel Dynamics, Inc.*

Stephen P. Vaughn
Neal J. Reynolds
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
(202) 737-0500

*Counsel for Cleveland-Cliffs Inc.*

Alan H. Price
Christopher B. Weld
Maureen E. Thorson
John Allen Riggins
Theodore P. Brackemyre
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

Thomas M. Beline
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave NW
Suite 300
Washington, DC 20037
(202) 567-2316

*Counsel for United States Steel Corporation*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-2242

**Short Case Caption** Eregli Demir ve Celik Fabrikalari T.A.S. v. ITC

**Filing Party/Entity** Steel Dynamics, Inc. and SSAB Enterprises LLC

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/28/2025

Signature: /s/ Jeffrey D. Gerrish

Name: Jeffrey D. Gerrish

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Steel Dynamics, Inc. | | Steel Dynamics, Inc. is a publicly traded company listed on the NASDAQ |
| SSAB Enterprises LLC | | SSAB Enterprises LLC is a subsidiary of SSAB AB which is a publicly traded company on the NASDAQ OMX Stockholm with a secondary listing on the NASDAQ OMX Helsinki |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Benjamin J. Bay, formerly of Schagrin Associates | Michelle R. Avrutin, formerly of Schagrin Associates | |
| Joseph A. Laroski, Jr., formerly of Schagrin Associates | Justin M. Neuman | |
| Kelsey M. Rule, formerly of Schagrin Associates | Alessandra A. Palazzolo | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-2242

**Short Case Caption** Eregli Demir ve Celik Fabrikalari T.A.S. v. ITC

**Filing Party/Entity** Cleveland-Cliffs Inc.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/28/2025

Signature: /s/ Neal J. Reynolds

Name: Neal J. Reynolds

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Cleveland-Cliffs Inc. | | BlackRock, Inc. (10.56%) |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Barbara Medrado Dias Silveira | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-2242

**Short Case Caption** Eregli Demir ve Celik Fabrikalari T.A.S. v. ITC

**Filing Party/Entity** Nucor Corporation

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/28/2025

Signature: /s/ Alan H. Price

Name: Alan H. Price

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Nucor Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Derick G. Holt | Enbar Toledano | Nicole C. Hager Fingeroot (formerly of Wiley Rein LLP) |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2024-2242

**Short Case Caption** Eregli Demir ve Celik Fabrikalari T.A.S. v. ITC

**Filing Party/Entity** United States Steel Corporation

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/28/2025

Signature: /s/ Thomas M. Beline

Name: Thomas M. Beline

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| United States Steel Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... i
STATEMENT OF RELATED CASES ..... 1
STATEMENT OF THE ISSUES ..... 2
STATEMENT OF THE CASE ..... 3
I. Procedural History of the Case ..... 3
A. The Original Investigation ..... 3
B. Çolakoğlu and Erdemir's Appeal of Commerce's Final Dumping Margins ..... 7
C. The Commission's Sunset Reviews and Denial of Erdemir's Request to Initiate a Changed Circumstances Review ..... 9
D. The CIT's Dismissal of Erdemir's Action for Lack of Subject Matter Jurisdiction ..... 14
SUMMARY OF ARGUMENT ..... 17
ARGUMENT ..... 19
I. Standard of Review ..... 19
II. This Court Should Uphold the CIT's Dismissal of Erdemir's Action for Lack of Subject Matter Jurisdiction ..... 20
A. The CIT Correctly Determined that Erdemir's Claim Was Moot and Correctly Dismissed the Case for Lack of Jurisdiction ..... 20
B. Erdemir Has Not Shown that the CIT Erred in Its Dismissal for Lack of Jurisdiction ..... 28
1. Changed Circumstance Reviews Do Not Provide Retrospective Consideration of an Original Injury Determination ..... 28
2. Erdemir is Incorrect in Arguing that Changed Circumstances and Sunset Reviews Require Distinct Analyses ..... 35

3. The Commission Did Not Fail to Afford Full Consideration of the Issues Raised in Erdemir's Changed Circumstances Review Request ........ 40

III..Dismissal On the Merits Is Also Warranted for Erdemir's Failure to State a Claim Upon Which Relief May Be Granted ........ 44

CONCLUSION ........ 46

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases**

*3V, Inc. v. United States,* 23 CIT 1047,
83 F. Supp. 2d 1351 (Ct. Int'l Trade 1999) ........................................21
*A. Hirsh, Inc. v. United States*, 14 C.I.T. 286,
737 F. Supp. 1186 (Ct. Int'l Trade 1990) ............................................34
*Adair v. United States*, 497 F.3d 1244 (Fed. Cir. 2007)..........................44
*Air Line Pilots Ass'n Int'l v. UAL Corp.*,
897 F.2d 1394 (7th Cir. 1990)........................................................21, 22
*Church of Scientology v. United States*, 113 S.Ct. 447,
121 L. Ed. 2d 313 (1992).....................................................................22
*Doe v. United States*, 463 F.3d 1314 (Fed. Cir. 2006) .............................44
*Encon Indus. v. United States*, 18 CIT 867 (1994)............................31, 32
*Engage Learning, Inc. v. Salazar*, 660 F.3d 1346 (Fed. Cir. 2011) ........44
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*,
308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018). .........................................8
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*,
357 F. Supp. 3d 1325 (Ct. Int'l Trade 2018) ..........................................8
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*,
415 F. Supp. 3d 1216 (Ct. Int'l Trade 2019) ..........................................8
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*,
435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020) ..........................................8
*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. U.S. Int'l Trade Comm'n*,
710 F. Supp. 3d 1341(Ct. Int'l Trade 2024) ........................................42

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. U.S. Int'l Trade Comm'n*, 719 F. Supp. 3d 1302 (Ct. Int'l Trade 2024) ........... 16, 20, 22, 26, 42, 44

*Eveready Battery Co. Inc. v. United States*, 23 CIT 896, 77 F. Supp. 2d 1327 (1999) ..................................... 13, 15, 22, 26, 27, 39

*Halls v. Beals*, 396 U.S. 45, 90 S. Ct. 200 (1968) .............................. 21, 22

*Honig v. Doe*, 484 U.S. 305, 317 (1988) ................................................ 21

*Hutchison Quality Furniture Inc. v. United States*, 827 F.3d 1355 (Fed. Cir. 2016) ........................................................................... 20

*LG Elecs. Inc. v. U.S.*, Consol. Court No. 13-00100, Slip Op. 14-8 (Ct. Int'l Trade Jan. 23, 2014) ....................................... 32

*Nasatka v. Delta Scientific Corp.*, 58 F.3d 1578 (Fed. Cir. 1999)..... 20, 22

*Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347 (Fed. Cir. 2006) ........................................................................................ 20

*Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021 (Fed. Cir. 2012) .................................... 20

**Statutes and Regulations**

19 C.F.R. § 207.45(c) ............................................................ 34, 39

19 U.S.C. § 1516a(a)(1)(B) ............................................................ 21

19 U.S.C. § 1517 ............................................................................ 21

19 U.S.C. § 1675(b) ............................................ 16, 24, 29, 31, 33, 36, 45

19 U.S.C. § 1675(b)(1) ........................................................ 23, 31, 34, 36

19 U.S.C. § 1675(b)(1)(A) ............................................................. 23

19 U.S.C. § 1675(b)(2)(A) ........................................................ 23, 29, 30, 35

19 U.S.C. § 1675(c) ............................................................ 16, 24, 36, 37

19 U.S.C. § 1675(c)(1) ................................................................... 23

19 U.S.C. § 1675(c)(1)(A) .................... 23
19 U.S.C. § 1675a .................... passim
19 U.S.C. § 1675a(2)(A)-(B) .................... 38
19 U.S.C. § 1675a(a)(1) .................... passim
19 U.S.C. § 1675a(a)(7) .................... 39
28 U.S.C. § 1581(c) .................... 21

**Administrative Decisions**

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 80 Fed. Reg. 50,028 (Int'l Trade Comm'n Aug. 18, 2015) .................... 3

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 80 Fed. Reg. 58,787 (Int'l Trade Comm'n Sept. 30, 2015) .................... 4

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (Int'l Trade Comm'n Sept. 29, 2016) .................... 5

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Final), USITC Pub. 4638 (Sept. 2016) .................... 6

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Preliminary), USITC Pub. 4570 (Oct. 2015) .................... 4

*Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom*,
80 Fed. Reg. 54,261 (Dep't Commerce Sept. 9, 2015)............................3

*Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*,
81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016) ..........................7

*Certain Hot-Rolled Steel Flat Products from Brazil, the Republic of Korea, and Turkey*,
80 Fed. Reg. 54,267 (Dep't Commerce Sept. 9, 2015)............................3

*Certain Hot-Rolled Steel Flat Products from the Republic of Turkey*,
81 Fed. Reg. 53,428 (Dep't Commerce Aug. 12, 2016) ...........................5

*Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*,
85 Fed. Reg. 29,399 (Dep't Commerce May 15, 2020)............................8

*Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey*,

81 Fed. Reg. 53,433 (Dep't Commerce Aug. 12, 2016) ............................ 4

*Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom,* Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022) ........................................ 41, 42

*Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products From Turkey,* 87 Fed. Reg. 73,331 (Int'l Trade Comm'n Nov. 29, 2022) ........ 12, 13, 40

*Hot-Rolled Steel Flat Products From Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination,* 86 Fed. Reg. 68,512 (Int'l Trade Comm'n Dec. 2, 2021)....................... 11

*Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom,* 87 Fed. Reg. 74,167 (Int'l Trade Comm'n Dec. 2, 2022)....................... 13

*Notice of Commission Determination to Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom,* 87 Fed. Reg. 3,123 (Int'l Trade Comm'n Jan. 20, 2022)....................... 12

*See Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews,*

86 Fed. Reg. 49,057 (Int'l Trade Comm'n Sept. 1, 2021) .................9, 10

**Other Authorities**

*Statement of Administrative Action Accompanying the Uruguay Round Agreements Act,* H.R. Rep. No. 103-316 (1994), reprinted in 1994 U.S.C.C.A.N. 4040 .................................25, 29, 30, 45

Defendants-Appellees Steel Dynamics, Inc., SSAB Enterprises LLC, Cleveland-Cliffs Inc., Nucor Corporation, and the United States Steel Corporation (collectively, "Domestic Interested Parties" or "Defendants-Appellees") respectfully submit this brief in response to the opening brief of Plaintiff-Appellant Ereğli Demir ve Çelik Fabrikalari T.A.Ş. ("Erdemir") ("Erdemir Br.") in its appeal of the final judgment entered by the U.S. Court of International Trade ("CIT") ordering the dismissal of *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. U.S. Int'l Trade Comm'n*, CIT Court No. 22-00350.

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Defendants-Appellees makes the following statements:

1. This Court ordered that two other pending appeals shall be designated companion cases and assigned to the same merits panel as this case. *See* ECF No. 23; *see also Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. U.S. Int'l Trade Comm'n* (Appeal No. 24-2243) and *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. U.S. Int'l Trade Comm'n* (Appeal No. 24-2249). The Court, however, denied

Erdemir's request to consolidate the three companion cases. *See* ECF No. 33.

2. Counsel is not aware of any other case pending in this or any other court that will directly affect or be directly affected by the Court's decision in this appeal.

## STATEMENT OF THE ISSUES

1. Whether the CIT correctly determined that it did not have subject matter jurisdiction to review Plaintiff's appeal of the decision by the U.S. International Trade Commission (the "Commission") not to conduct a changed circumstances review of the antidumping duty order on *Certain Hot-Rolled Steel Flat Products from Turkey*.
2. To the extent that the CIT had subject matter jurisdiction, whether the CIT's dismissal of Erdemir's actions should be dismissed on alternate grounds, because Erdemir failed to state a claim against the Commission upon which relief may be granted.

## STATEMENT OF THE CASE[1]

### I. Procedural History of the Case

#### A. The Original Investigation

In 2015, the U.S. Department of Commerce ("Commerce") initiated and the Commission instituted investigations in response to petitions filed on behalf of the domestic industry requesting the imposition of antidumping ("AD") and countervailing ("CVD") duties on imports of hot-rolled steel flat products ("hot-rolled steel") from Turkey and six other countries. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 80 Fed. Reg. 50,028 (Int'l Trade Comm'n Aug. 18, 2015); *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom*, 80 Fed. Reg. 54,261 (Dep't Commerce Sept. 9, 2015); *Certain Hot-Rolled Steel Flat Products from Brazil, the Republic*

[1] For the briefs submitted in the three companion cases, the Court instructed the parties to "note at the beginning of the brief or section containing any duplicative content." *See* ECF No. 33. Domestic Interested Parties note that, in each of the response briefs submitted in these companion cases, there is significant overlap in the facts and procedural history set forth in the statement of the case.

*of Korea, and Turkey*, 80 Fed. Reg. 54,267 (Dep't Commerce Sept. 9, 2015).

In September 2015, the Commission made an affirmative preliminary determination that there was a reasonable indication that an industry in the United States was materially injured by reason of imports of hot-rolled steel from the subject countries. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 80 Fed. Reg. 58,787 (Int'l Trade Comm'n Sept. 30, 2015). As part of that determination, the Commission preliminarily found that the volume of imports of hot-rolled steel from Turkey during the period of investigation was not negligible. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Preliminary), USITC Pub. 4570 (Oct. 2015) at 14, Appx0078.

In August 2016, Commerce published its affirmative final CVD determination for Turkey. *See Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey*, 81 Fed. Reg. 53,433 (Dep't Commerce Aug. 12, 2016), Appx0284. While

Commerce found that Çolakoğlu Metalurji A.S. (“Çolakoğlu”), one of the Turkish producers of hot-rolled steel, received a *de minimis* level of countervailable subsidies, it made an affirmative determination because it calculated a 6.01 percent net countervailable subsidy rate for Erdemir and all other Turkish producers and exporters. *Id.* at 53,434, Appx0285. On the same date, Commerce published its affirmative final determination of sales at less than fair value for Turkey with final dumping margins of 7.15 percent for Çolakoğlu, 3.66 percent for Erdemir, and 6.67 percent for all other Turkish producers and exporters. *See Certain Hot-Rolled Steel Flat Products from the Republic of Turkey*, 81 Fed. Reg. 53,428, 53,429 (Dep’t Commerce Aug. 12, 2016) (“Commerce Final Determination”), Appx0289.

In September 2016, the Commission published its affirmative final determination that an industry in the United States was materially injured by reason of imports of hot-rolled steel from the subject countries. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (Int’l Trade Comm’n Sept. 29, 2016), Appx0041. With respect to Turkey, although the volume of

dumped imports subject to the AD investigation exceeded the negligibility threshold, the volume of unfairly subsidized imports subject to the CVD investigation excluded exports produced by Çolakoğlu and fell below the negligibility threshold.[2] *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–547 and 731-TA-1291–1297 (Final), USITC Pub. 4638 (Sept. 2016) ("USITC Pub. 4638") at 13, Appx0314. The Commission additionally found that there was not a potential that unfairly subsidized imports from Turkey would imminently exceed the negligibility threshold. *Id.* at 13–14, Appx0314-15. Consequently, the Commission's affirmative final determination of material injury applied only to dumped imports from Turkey, and the companion CVD investigation was terminated because of the negligible volume of unfairly subsidized imports from Turkey.

Because both Commerce and the Commission made affirmative final determinations in the AD investigation, Commerce published the

[2] Imports from a particular country are "negligible" if they "account for less than 3 percent of the volume of all such merchandise imported into the United States in the most recent 12-month period" prior to the filing of the petition. *See* 19 U.S.C. § 1677(24)(A)(i).

AD order on imports of hot-rolled steel from Turkey on October 3, 2016. *Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Dep't of Commerce Oct. 3, 2016), Appx0617. After Commerce corrected certain ministerial errors, the revised final dumping margins for hot-rolled steel from Turkey were 6.77 percent for Çolakoğlu, 4.15 percent for Erdemir, and 6.41 percent for all other Turkish producers and exporters. *Id*. at 67,965, Appx0620.

### B. Çolakoğlu and Erdemir's Appeal of Commerce's Final Dumping Margins

Following publication of the AD order, Çolakoğlu and Erdemir appealed Commerce's final determination that imports of hot-rolled steel from Turkey were sold in the United States at less than fair value during the period of investigation. Çolakoğlu and Erdemir successfully contested certain aspects of the final dumping margin calculations, and the CIT entered judgment sustaining Commerce's third remand redetermination in April 2020. *See Ereğli Demir ve Çelik Fabrikalari*

*T.A.Ş v. United States*, 435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020); *see also Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*, 415 F. Supp. 3d 1216 (Ct. Int'l Trade 2019); *Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*, 357 F. Supp. 3d 1325 (Ct. Int'l Trade 2018); *Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*, 308 F. Supp. 3d 1297 (Ct. Int'l Trade 2018).

In May 2020, Commerce published an amended final determination to comply with the CIT's final judgment, and the recalculated weighted-average dumping margins were zero percent for Çolakoğlu, 2.73 percent for Erdemir, and 2.73 percent for all other Turkish producers and exporters. *See Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017-18 and 2018-19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29,399, 29,400 (Dep't Commerce May 15, 2020), Appx0624. Because Çolakoğlu's dumping margin was reduced to zero percent as a result of

the litigation, the AD order was partially revoked to exclude merchandise produced and exported by Çolakoğlu. The Government and domestic interested parties appealed to this Court, but the appeals were voluntarily dismissed in December 2020 and June 2021. *See* Mandate Order of Dismissal, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*, Appeal No. 2020-1999, ECF No. 38 (Fed. Cir. Dec. 18, 2020), Appx3702; Mandate Order of Dismissal, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*, Appeal No. 2020-2003, ECF No. 36 (Fed. Cir. June 4, 2021), Appx3705.

Importantly, although Erdemir and Çolakoğlu both appealed Commerce's final dumping margins, none of the Turkish respondents sought judicial review of the Commission's final material injury determination.

### C. The Commission's Sunset Reviews and Denial of Erdemir's Request to Initiate a Changed Circumstances Review

On September 1, 2021, the Commission initiated its sunset reviews of the AD order on hot-rolled steel from Turkey and the other AD and CVD orders on hot-rolled steel issued in 2016. *See Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the*

*Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057 (Int'l Trade Comm'n Sept. 1, 2021), Appx3172. Erdemir participated in the sunset reviews conducted by the Commission.

Previously, in May 2020, Erdemir had requested that the Commission reopen the AD investigation of hot-rolled steel from Turkey to reconsider its determination that the domestic industry was materially injured by subject imports from Turkey in light of Commerce's recalculation of Çolakoğlu's dumping margin and the subsequent exclusion of Çolakoğlu from the AD order. *See Letter from Erdemir to Commission re: Request for Reconsideration* (May 18, 2020) at 1 and 5, Appx0626 and Appx0630. In this request, Erdemir specifically asked for "reconsideration," but it vaguely indicated that "the Commission may treat this request as a {changed circumstances review} petition." *Id.* at 6, Appx0631. In July 2020, Erdemir reiterated its request for reconsideration or a changed circumstances review of the final determination in the 2016 hot-rolled steel investigation. *See Letter from Erdemir to Commission re: Letter in Support of Request for Reconsideration* (July 22, 2020), Appx3160. However, as Erdemir itself

acknowledged, the CIT decision that was the basis of Erdemir's request, which sustained Commerce's recalculation of Çolakoğlu's dumping margin, had been appealed to the Federal Circuit. *Id.*

After the dismissal of the Federal Circuit appeals and after the initiation of the sunset reviews on hot-rolled steel, Erdemir submitted a request on September 10, 2021 seeking to have the Commission conduct a changed circumstances review of the AD order on hot-rolled steel from Turkey based on Commerce's recalculation of Çolakoğlu's dumping margin and the subsequent exclusion of Çolakoğlu from the AD order. *See Letter from Erdemir to Commission re: Changed Circumstances Review* (Sept. 10, 2021), Appx0656. The Commission subsequently requested comments on Erdemir's request for a changed circumstances review. *See Hot-Rolled Steel Flat Products From Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination*, 86 Fed. Reg. 68,512 (Int'l Trade Comm'n Dec. 2, 2021). In response, the Commission received a submission from Domestic Interested Parties opposing Erdemir's request for a changed circumstances review. It also received submissions in favor of the request from Erdemir and the Government

of the Republic of Turkey. *See Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73,331, 73,332 (Int'l Trade Comm'n Nov. 29, 2022) ("*Notice of Denial of Changed Circumstances Review*"), Appx0039.

The Commission decided to conduct full sunset reviews of the AD and CVD orders on hot-rolled steel from all the subject countries, including Turkey, on December 2, 2021. *See Notice of Commission Determination to Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom*, 87 Fed. Reg. 3,123 (Int'l Trade Comm'n Jan. 20, 2022), Appx3330. After the submission of questionnaire responses, briefing, and a hearing, the Commission issued its final determination in the sunset reviews on November 25, 2022 in which it determined that revocation of the orders would be likely to lead to continuation or recurrence of material injury to an industry in the United States within a reasonably foreseeable time. *See*

*Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167 (Int'l Trade Comm'n Dec. 2, 2022).

On November 29, 2022, the Commission issued a Federal Register notice stating that it would not institute a changed circumstances review pursuant to 19 U.S.C. § 1675(b) or reconsideration of its final affirmative determination in the AD investigation of hot-rolled steel from Turkey. *See Notice of Denial of Changed Circumstances Review*, 87 Fed. Reg. at 73,331, Appx0038. In its determination, the Commission explained that it was denying Erdemir's request for a changed circumstances review because it "was already conducting a five-year review of the antidumping duty order on hot-rolled steel flat products from Turkey" and "{c}onducting a changed circumstances review at the same time as a five-year review would be unwarranted because it would be duplicative of the full five year review." *Id.* at 73,332 (citing *Eveready Battery Co. Inc. v. United States*, 23 CIT 896, 77 F. Supp. 2d 1327 (1999)), Appx0039. Furthermore, the Commission stated that "the result that Erdemir seeks—reexamination of the Commission's original negligibility finding—is not possible in a changed circumstances review

because negligibility is not a factor for the Commission to consider under the statute in a changed circumstances review." *Id*. The Commission also explained that it was denying Erdemir's reconsideration request because it found "no evidence of fraud or other facts that suggest extraordinary circumstances" which would warrant reconsideration. *Id*.

### D. The CIT's Dismissal of Erdemir's Action for Lack of Subject Matter Jurisdiction

Erdemir filed a complaint with the CIT seeking review of the Commission's decision not to initiate the changed circumstances review. *See* Erdemir's Complaint, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Court No. 22-350 (Ct. Int'l Trade Dec. 26, 2022), ECF No. 4, Appx1411. In its complaint, Erdemir asserted that the Commission "has the authority to conduct a changed circumstances review for purposes of retroactive correction of errors in the AD negligibility determination in the original investigation." *Id.* at 11, Appx1421.

The Commission and Domestic Interested Parties subsequently filed motions to dismiss Erdemir's complaint for lack of subject matter jurisdiction on the basis that Erdemir's claim was moot or, in the

alternative, for failure to state a claim upon which relief may be granted. *See* Def.'s Mot. to Dismiss, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Court No. 22-350 (Ct. Int'l Trade May 18, 2023), ECF No. 38, Appx1423; Def.-Intervenors' Mot. to Dismiss, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, Court No. 22-350 (Ct. Int'l Trade May 18, 2023), ECF No. 39, Appx3090. As the Commission explained in its motion to dismiss, in conducting a sunset review, it "gave Erdemir the equivalent of a changed circumstances review, namely a full review to determine whether revocation of the antidumping order on imports from Turkey would be 'likely to lead to continuation or recurrence of dumping and of material injury' to the domestic industry." *Def.'s Mot. to Dismiss* at 8 (quoting *Eveready Battery*, 23 CIT at 898-904, 77 F. Supp. 2d at 1328-1334), Appx1436. Additionally, the Commission explained that conducting a changed circumstances review would not result in Erdemir's requested relief, because a changed circumstances review "does not authorize the Commission to reanalyze its findings from the original determination or to revisit its negligibility determination in the original hot-rolled steel

antidumping investigation involving Turkey, let alone to issue a retroactive termination of that investigation." *Id.* at 8-9.

On July 22, 2024, the CIT dismissed Erdemir's complaint for lack of subject matter jurisdiction based on mootness. *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States International Trade Commission*, 719 F. Supp. 3d 1302, 1322 (Ct. Int'l Trade 2024) ("*CIT Dismissal*"). Specifically, the CIT found that the Commission's "institution of the sunset review rendered moot plaintiff's request for a {changed circumstances review} because the sunset review accorded to plaintiff the same potential remedy plaintiff could have received pursuant to a {changed circumstances review}." *Id.* at 1315. In making this determination, the CIT concluded that under 19 U.S.C. §§ 1675(b)-(c) and 1675a and the Statement of Administrative Action accompanying the Uruguay Round Agreements Act (the "SAA"), the Commission conducts a prospective analysis of the same factors to determine whether revocation of an AD or CVD order is likely to lead to continuation or recurrence of material injury in both a sunset review and a changed circumstances review. *See id.* at 1315-1318. Additionally, the CIT found that Erdemir's argument that the Commission could use

a changed circumstances review to retroactively reconsider its negligibility determination from the original investigation was not supported by the statute or the SAA. *Id.* at 1316-1318.

## SUMMARY OF ARGUMENT

The CIT correctly determined that it did not have subject matter jurisdiction to review Erdemir's appeal of the Commission's decision not to conduct a changed circumstances review of the AD order on hot-rolled steel from Turkey. The CIT lacks subject matter jurisdiction to hear an appeal that does not present an actual case or controversy. Erdemir's cause of action was mooted by the Commission's sunset review of the AD order on Turkish hot-rolled steel. The sunset review provided the same relief requested by Erdemir, and Erdemir's action therefore did not present an actual case or controversy for which the CIT had jurisdiction.

The CIT correctly found that the relevant statutes direct the Commission to consider the same standard and factors to determine whether the revocation of an AD order is likely to result in material injury in both changed circumstances reviews and five-year sunset reviews. Both reviews involve a prospective, rather than retrospective,

analysis, and both provide the same relief in the form of the Commission's determination as to whether the order should stay in place or be revoked. As the Commission engaged in this analysis in its sunset reviews of the AD and CVD orders on hot-rolled steel from Turkey and the other subject countries, it had already conducted the analysis that Erdemir sought in its request for a changed circumstances review. Erdemir had therefore already received its requested relief, and the CIT correctly found its appeal to be moot.

Erdemir's arguments that the Commission's sunset review did not provide Erdemir with the same relief as its requested changed circumstances review are incorrect and should be rejected. Specifically, Erdemir's contentions that the Commission may engage in a retrospective, rather than prospective, analysis in a changed circumstance review and that the Commission does not otherwise engage in the same analysis for both changed circumstances and sunset reviews are contrary to the plain language of the statute and the SAA. Moreover, Erdemir's arguments that the Commission failed to consider certain information in its sunset review that it would have considered in the requested changed circumstances review are baseless.

For these reasons, the Court should affirm the CIT's dismissal of Erdemir's appeal for lack of jurisdiction. The Court may also affirm the CIT's dismissal of Erdemir's appeal upon the alternate grounds of Erdemir's failure to state a claim upon which relief may be granted. In its appeal, Erdemir seeks to have the Commission conduct a changed circumstances review to retroactively reconsider the Commission's negligibility determination in the original investigation. However, the statutory framework for changed circumstance reviews does not authorize the Commission to retroactively reconsider any such determination. Even if the CIT had ordered the Commission to conduct the changed circumstances review requested by Erdemir, the Commission could not engage in the analysis that Erdemir demands. Dismissal is warranted on that basis as well.

## ARGUMENT

### I. Standard of Review

This Court reviews a CIT dismissal for lack of subject matter jurisdiction de novo as a question of law. *See Hutchison Quality Furniture Inc. v. United States*, 827 F.3d 1355, 1359 (Fed. Cir. 2016). The burden of establishing jurisdiction is on the party invoking it. *See*

*Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). In considering a dismissal for lack of subject matter jurisdiction, only uncontroverted factual allegations of the complaint are accepted as true. *See Shoshone Indian Tribe of Wind River Reservation, Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

## II. This Court Should Uphold the CIT's Dismissal of Erdemir's Action for Lack of Subject Matter Jurisdiction

### A. The CIT Correctly Determined that Erdemir's Claim Was Moot and Correctly Dismissed the Case for Lack of Jurisdiction

In the opinion underlying this appeal, the CIT correctly concluded that "the institution of the sunset review rendered moot plaintiff's request for a {changed circumstances review} because the sunset review accorded to plaintiff the same potential remedy plaintiff could have received pursuant to a {changed circumstances review}." *CIT Dismissal*, 719 F. Supp. 3d at 1315. Federal courts only have jurisdiction over cases that "present an actual case or controversy," *i.e.*, claims that are not moot. *Nasatka v. Delta Scientific Corp.*, 58 F.3d 1578, 1580 (Fed. Cir. 1999) (citations removed). The question for mootness is "whether the relief sought would, if granted, make a difference to the legal

interests of the parties." *Id.* (quoting *Air Line Pilots Ass'n Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990)).

Under 28 U.S.C. § 1581(c), the CIT generally has jurisdiction to hear cases brought under Sections 516A and 517 of the Tariff Act of 1930, as amended (the "Act") (*i.e.*, 19 U.S.C. §§ 1516a and 1517). *See* 28 U.S.C. § 1581(c). This includes appeals from "a determination by the Commission … not to review a determination based upon changed circumstances." 19 U.S.C. § 1516a(a)(1)(B). However, pursuant to Article III of the U.S. Constitution, the CIT, like all federal courts, "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *see also 3V, Inc. v. United States*, 23 CIT 1047, 1049, 83 F. Supp. 2d 1351, 1352 (Ct. Int'l Trade 1999) ("{D}espite a statutory grant of jurisdiction, a court's authority to entertain a claim hinges upon meeting the requirements of Article III of the U.S. Constitution."). A moot case does not present an "actual, ongoing" (or "present, live") controversy, and thus the CIT does not have jurisdiction to hear a case where the plaintiff's claim is moot. *Honig*, 484 U.S. at 317; *Halls v. Beals*, 396 U.S. 45, 48, 90 S. Ct. 200, 201-202 (1968) (a case is moot if it

lacks "a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law").

A case is moot if the reviewing court cannot provide "effectual relief." *Nasatka v. Delta Sci. Corp.*, 58 F.3d 1578, 1580 (Fed. Cir. 1995) (quoting *Church of Scientology v. United States*, 113 S.Ct. 447, 449, 121 L. Ed. 2d 313 (1992)). This depends on "whether the relief sought would, if granted, make a difference to the legal interest of the parties." *Id.* (quoting *Air Line Pilots Ass'n Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990)). One way that a case may be rendered moot is by "{a}ction by the defendant that simply accords all the relief demanded by the plaintiff." *Eveready Battery*, 23 CIT at 898, 77 F. Supp. 2d at 1329 (citing 3A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FED. PRAC. & PROC. § 3533.2, at 238 (2d ed. 1984)).

As demonstrated below, Erdemir received the same relief under the Commission's sunset review as it would have received under the requested changed circumstances review. Accordingly, the CIT correctly dismissed Erdemir's complaint for lack of subject matter jurisdiction due to mootness. *See CIT Dismissal*, 719 F. Supp. 3d at 1322.

The statutory framework governing both changed circumstances reviews and sunset reviews of AD and CVD orders is set forth in 19 U.S.C. §§ 1675 and 1675a. Specifically, 19 U.S.C. § 1675(b)(1)(A) provides for the Commission to conduct a changed circumstances review of a final AD or CVD duty determination when a review request "shows changed circumstances sufficient to warrant a review of such determination." 19 U.S.C. § 1675(b)(1). If a changed circumstances review is initiated, 19 U.S.C. § 1675(b)(2)(A) provides that "the Commission shall … determine whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury." *Id.* at § 1675(b)(2) and (2)(A).

The statute provides the same standard for the Commission's sunset reviews of AD and CVD orders every five years. In fact, 19 U.S.C. § 1675(c)(1)(A) directs the Commission to conduct sunset reviews of AD and CVD orders "to determine, in accordance with {19 U.S.C. § 1675a}, whether revocation of the countervailing or antidumping duty order … would be likely to lead to continuation or recurrence of … material injury." 19 U.S.C. § 1675(c)(1).

The standard and the factors that the Commission is to apply in both changed circumstances reviews and sunset reviews are also set forth in 19 U.S.C. § 1675a. In particular, 19 U.S.C. § 1675a(a)(1) states that:

> In a review conducted under section 1675(b) or (c) of this title, the Commission shall determine whether revocation of an order, or termination of a suspended investigation, would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time. The Commission shall consider the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked or the suspended investigation is terminated.

Moreover, 19 U.S.C. § 1675a directs the Commission to take into consideration "its prior injury determinations," "whether any improvement in the state of the industry is related to the order," and "whether the industry is vulnerable to material injury if the order is revoked" when conducting a changed circumstances review under § 1675(b) or a sunset review under § 1675(c). 19 U.S.C. § 1675a(a)(1)(A)-(C).

In addition to the plain language in §§ 1675 and 1675a directing the Commission to consider the effects of revoking an order on a prospective basis – *i.e.*, whether revocation "*would be likely to lead to* continuation or recurrence of material injury within a reasonably

foreseeable time" – during both changed circumstances and sunset reviews, the SAA also makes it clear that both reviews involve forward-looking analyses. 19 U.S.C. § 1675a(a)(1) (emphasis added). Indeed, the SAA explains that "{t}he determination called for in these types of reviews is inherently predictive and speculative." SAA at 883, 1994 U.S.C.C.A.N. at 4208. The SAA also states explicitly that "{t}he likelihood of continuation or recurrence of material injury standard" – which applies in both changed circumstances and sunset reviews – "is prospective in nature." SAA at 884, 1994 U.S.C.C.A.N. at 4209. The SAA further explicitly distinguishes this standard from other types of inquiries, explaining that unlike critical circumstances determinations, which provide retroactive remedies, "{c}hanged circumstances and five-year reviews focus on likely developments if an order is revoked." SAA at 876-77, 1994 U.S.C.C.A.N. at 4203-04.

In other words, the CIT correctly found that in both changed circumstances and sunset reviews, the Commission determines the same issue – "whether revocation of the order is likely to lead to continuation or recurrence of material injury" – by applying the same standard to the same factors for consideration (*i.e.*, "the likely volume of

imports, price effects, and impact of imports of the subject merchandise on the industry if the order is revoked"). *CIT Dismissal*, 719 F. Supp. 3d at 1316 (citing *Eveready Battery*, 23 CIT at 898-99, 77 F. Supp. 2d at 1329-30). Therefore, "{n}othing would be gained by the institution of a changed circumstances review" since it would simply replicate the same prospective analysis of the same factors, leading to the same determination about whether or not to revoke the order, as the Commission had already conducted in its sunset review of the 2016 orders on hot-rolled steel. *Id.* (citing *Eveready Battery*, 23 CIT at 904, 77 F. Supp. 2d at 1334).

Based on the virtually identical facts in *Eveready Battery*, the CIT likewise held that the plaintiff's appeal was moot because "the sunset review of the antidumping order will provide the same relief as a changed circumstances review." *Eveready Battery*, 23 CIT at 904, 77 F. Supp. 2d at 1334. In *Eveready Battery*, the plaintiff had requested a changed circumstances review regarding subject imports from one of two countries subject to the original AD investigation and order on those products. *Id.*, 23 CIT at 896, 77 F. Supp. 2d at 1328. The Commission denied plaintiff's request for a changed circumstances

review, and the plaintiff challenged this decision at the CIT. *Id.*, 23 CIT at 896-97, 77 F. Supp. 2d at 1328. The Commission subsequently instituted its statutorily required sunset review of the underlying AD order and moved to dismiss the CIT case on the grounds that the sunset review mooted plaintiff's appeal of the Commission's denial of a changed circumstances review. *Id.*, 23 CIT at 897, 77 F. Supp. 2d at 1328-29.

In evaluating whether the plaintiff's claim was moot, the court in *Eveready* – like the CIT in this case – looked to the fact that the relevant statutes direct the Commission to apply the same standard, and consider the same criteria, in both changed circumstances and sunset reviews. *See id.*, 23 CIT at 898-99, 77 F. Supp. 2d at 1330. As a result, and because the plaintiff's efforts to distinguish the two types of reviews were found to be without merit, the CIT determined that "{i}f the court found that ITC should conduct a changed circumstances review, the court would simply be ordering the ITC to do that which it has already done by initiating a full sunset review." *Id.*, 23 CIT at 904, 77 F. Supp. 2d at 1334. In other words, the Commission had already provided the relief that the plaintiff sought, and "{n}othing would be

gained by the institution of a changed circumstances review." *Id.* The same is true in the present case.

For these reasons, the CIT correctly determined that it lacked subject matter jurisdiction over Erdemir's appeal due to mootness. As 19 U.S.C. §§ 1675 and 1675a direct the Commission to apply the same standard and consider the same criteria in both changed circumstances and sunset reviews, the Commission has already conducted the same analysis through its sunset review that it would conduct for the requested changed circumstances review. Erdemir therefore would not gain anything from the CIT granting its requested relief, which makes Erdemir's complaint moot. As such, this Court should affirm the CIT's dismissal of Erdemir's appeal for lack of subject matter jurisdiction.

## B. Erdemir Has Not Shown that the CIT Erred in Its Dismissal for Lack of Jurisdiction

### 1. Changed Circumstance Reviews Do Not Provide Retrospective Consideration of an Original Injury Determination

In its opening brief, Erdemir argues that the CIT erred in determining that Erdemir's appeal was moot. Erdemir attempts to distinguish the analysis and relief granted in a changed circumstances

review from that granted in a sunset review, contending that there are circumstances under which the Commission can apply "retrospective consideration of its original determination in a {changed circumstances review}." Erdemir Br. at 14. However, Erdemir's arguments misunderstand and misconstrue the plain language of the statute and SAA, which support the CIT's finding that Erdemir's claim was moot and that the CIT therefore lacked jurisdiction.

Indeed, Erdemir's argument is contrary to the plain language of 19 U.S.C. § 1675(b), which states that when conducting a changed circumstances review of an AD or CVD order, "the Commission shall … determine whether revocation of the order or finding *is likely to lead to* continuation or recurrence of material injury." 19 U.S.C. § 1675(b)(2)(A) (emphasis added). It is also contrary to the SAA, which explains for changed circumstances reviews and sunset reviews that "{t}he determination called for in these types of reviews is inherently predictive and speculative." SAA at 883, 1994 U.S.C.C.A.N. at 4208. In other words, a changed circumstances review – like a sunset review – is by statute a forward-looking, prospective inquiry, rather than a retrospective inquiry.

Erdemir nevertheless argues that the language of the SAA "expressly demonstrates" that the Commission may retroactively "revisit" its determinations on the basis of changed dumping margins. Erdemir Br. at 14. In so doing, Erdemir relies on the following language in the SAA:

> The Commission, however, may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes that it is warranted.

SAA at 851, 1994 U.S.C.C.A.N. at 4184. However, Erdemir ignores what this language clearly states: that any changed circumstances review is to be conducted "pursuant to Section 751(b)," *i.e.*, as a *prospective* analysis of "whether revocation of the order … *is likely to lead to* continuation or recurrence of material injury." 19 U.S.C. § 1675(b)(2)(A). Thus, this language from the SAA simply means that the Commission would consider the impact of the changed dumping margins on a prospective basis.

Erdemir also cites to CIT cases that it characterizes as "affirm{ing}" the Commission's "authority" to "revisit its original determination." Erdemir Br. at 15. The cited cases provide no support

for Erdemir's contentions. None of these cases suggest that, contrary to the plain language of 19 U.S.C. § 1675(b) and the SAA, a changed circumstances review is a retrospective inquiry. Indeed, the cases that Erdemir claims "affirmed" the Commission's authority to apply a retrospective analysis in a changed circumstances review barely discuss changed circumstances reviews at all.

First, Erdemir cites to *Encon Industries*, a case dismissing a plaintiff's appeal for failure to exhaust administrative remedies and because the appeal was untimely and barred by *res judicata*. *See id.* at 15; *Encon Indus. v. United States*, 18 CIT 867, 867-69 (1994). The plaintiff sought to challenge the Commission's final injury determination in an investigation based on a subsequent change in Commerce's dumping determination that resulted in the exclusion of a company from the AD order despite the fact that its action was filed well after the deadline for appeal and was therefore untimely. The sole reference to changed circumstances reviews in this case is a footnote suggesting 19 U.S.C. § 1675(b)(1) as a potential "statutory avenue{} of *prospective* relief" for the plaintiff, who had otherwise failed to preserve its claim. *Encon Indus.*, 18 CIT at 870, fn. 2. While Erdemir also cites to

language from this case indicating "that parties can and do challenge ITC's actions on the basis of errors in the information furnished to it by Commerce," this language in *Encon Industries* was not a reference to a changed circumstances review. Instead, the CIT was simply rejecting the plaintiff's contention that it could not have appealed the Commission's determination on a timely basis because it had to wait until after the appeal of Commerce's determination. Erdemir Br. at 15; *Encon Indus.*, 18 CIT at 869. Rather than supporting Erdemir's argument, the decision in *Encon Industries* refutes it.

Second, Erdemir cites to *LG Electronics, Inc.*, a decision in which the CIT declined to sever and stay the plaintiffs' appeal of a Commission determination pending their appeal of allegedly incorrect factual findings in Commerce's final determination. *LG Elecs. Inc. v. U.S.*, Consol. Court No. 13-00100, Slip Op. 14-8 (Ct. Int'l Trade Jan. 23, 2014) at *2-3. This case does cite to a changed circumstances review as a potential remedy for the plaintiffs to pursue but notes that "{t}he court understands that the remedy provided by a changed circumstances review is not what Plaintiffs prefer" – *i.e.*, it would not allow the court "to order the ITC to revisit its injury determination in

light of the corrected record." *Id.* at *10, fn. 10. In other words, this case plainly recognizes that a changed circumstances review does not allow the Commission to "revisit" an original determination, contrary to Erdemir's contentions. *Id.*

Finally, Erdemir cites to *Borlem S.A.-Empreedimentos Industriais* for its reference to the Commission "assert{ing} that Section 751(b) of the Tariff Act of 1930, 19 U.S.C. § 1675(b) (1980), provides the only basis for the Commission to revisit its determinations based on subsequent events." Erdemir Br. at 15; *Borlem S.A.-Empreedimentos Industriais v. United States*, 913 F.2d 933, 939 (Fed. Cir. 1990). This is the sole reference to changed circumstances reviews in this opinion and does not conflict with the clear requirement that the Commission conduct a forward-looking analysis in a changed circumstances review. In fact, *Borlem* did not even involve a changed circumstances review but instead involved a situation where a Commission determination was timely appealed and the court remanded back to the Commission based on a change in Commerce's determination while the Commission appeal was still pending. *See Borlem*, 913 F.2d at 939.

Some of Erdemir's confusion may stem from its characterization of a changed circumstances review as different from a sunset review because "{r}eviewing changes inherently requires consideration of past circumstances and whether they have altered to such a degree that there is no basis to find a concern for continuation or recurrence of material injury." Erdemir Br. at 18-19. This characterization appears to conflate the standard for the Commission to determine *whether* to conduct a changed circumstances review with the standard that the Commission considers *when* conducting a changed circumstances review. The standard for initiation of a changed circumstances review is whether the Commission determines that "the request shows changed circumstances sufficient to warrant a review." 19 C.F.R. § 207.45(c); *see also* 19 U.S.C. § 1675(b)(1). This is the stage where the question of whether circumstances have, in fact, changed arises. As the CIT has explained, "where a plaintiff has not met its burden at the initial stage by presenting adequate facts to demonstrate sufficient circumstances to warrant initiation of a section 751(b) review, ITC may decline to initiate the process" of a changed circumstances review. *A. Hirsh, Inc. v. United*

*States*, 14 C.I.T. 286, 287, 737 F. Supp. 1186, 1188 (Ct. Int'l Trade 1990).

In comparison, the standard "{i}n conducting" a changed circumstances review of an AD or CVD order is that "the Commission shall … determine whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury." 19 U.S.C. § 1675(b)(2)(A). This is the relevant standard at issue here, since the question of whether Erdemir's appeal is moot is a question of whether Erdemir would receive the same relief under the requested changed circumstances review as it did under the Commission's sunset review. The fact is that it would receive the same relief, and the CIT correctly determined that this renders Erdemir's appeal moot.

**2. Erdemir is Incorrect in Arguing that Changed Circumstances and Sunset Reviews Require Distinct Analyses**

Erdemir's second line of argument in its opening brief is that the Commission's analyses for changed circumstances reviews and sunset reviews must be different because, according to Erdemir, applying the same analyses in changed circumstances and sunset reviews "would render section 751(b) superfluous and therefore violate general

principles of statutory construction and analysis." Erdemir Br. at 16. This argument also lacks merit and should be rejected.

The fact that changed circumstance reviews and sunset reviews provide different avenues for the same relief does not make either statutory provision for the reviews "superfluous." As outlined in 19 U.S.C. § 1675(c), sunset reviews are statutorily required to be conducted every five years "notwithstanding subsection (b)" – *i.e.*, the statutory provision on changed circumstances reviews in 19 U.S.C. § 1675(b). 19 U.S.C. § 1675(c). Changed circumstances reviews, on the other hand, can be initiated at any time, if information shows that such a review is warranted. *See* 19 U.S.C. § 1675(b)(1). Therefore, changed circumstance reviews are an avenue for parties to request that the Commission consider whether the revocation of an order would lead to the recurrence or continuation of material injury without waiting for the next five-year sunset review. At the same time, with the reference to "notwithstanding subsection (b)" in 19 U.S.C. § 1675(c), the statute explicitly states that the Commission "shall conduct" its sunset reviews every five years regardless of whether a changed circumstances review

was conducted at some point within the five-year cycle. 19 U.S.C. § 1675(c).

Ironically, Erdemir argues that "{i}f Congress intended for {changed circumstances reviews} and sunset reviews to be the same, then Congress would have consolidated the reviews under the same section and the same heading" immediately after citing to 19 U.S.C. § 1675a, which is entitled "Special rules for section 1675(b) and 1675(c) reviews." Erdemir Br. at 17; 19 U.S.C. § 1675a. The statutory provision cited by Erdemir, 19 U.S.C. § 1675a(a)(1), outlines factors that "{t}he Commission shall consider" and information that "{t}he Commission shall take into account" for "a review conducted under section 1675(b) or (c) of this title" – that is, explicitly naming the same factors for both a changed circumstances review (§ 1675(b)) and sunset review (§ 1675(c)). 19 U.S.C. § 1675a(a)(1). In other words, contrary to Erdemir's assertion, Congress did, in fact, consolidate its instructions for the Commission's analysis in both changed circumstances reviews and sunset reviews "under the same section and the same heading" in 19 U.S.C. § 1675a. Erdemir Br. at 17.

As discussed above, Erdemir's argument that the CIT improperly "conflate{s}" the analyses of changed circumstances and sunset reviews appears to stem from Erdemir's own misunderstanding of changed circumstances reviews. *See id.* at 20. As 19 U.S.C. §§ 1675 and 1675a and the SAA make clear, *both* changed circumstances reviews and sunset reviews involve the "review {of} *current* circumstances to determine whether revocation would lead to the continuation or recurrence of material injury," which Erdemir attributes only to sunset reviews. *Id.* at 20-21 (emphasis original). For example, 19 U.S.C. § 1675a – which applies to both changed circumstances reviews and sunset reviews – direct the Commission to consider both the "existing" production capacity and inventories and the "likely increases" in production capacity and inventories when evaluating the likely volume of imports if the order is revoked. 19 U.S.C. § 1675a(2)(A)-(B). Additionally, while Erdemir argues that the procedures for changed circumstances reviews and sunset reviews differ, it does not explain how this would result in different relief in a changed circumstances review and a sunset review. *See* Erdemir Br. at 21-22.

Finally, Erdemir argues that the Commission's analysis in its requested changed circumstances review would have differed from the Commission's analysis in the sunset review it actually conducted since Erdemir only requested a review of the AD order on hot-rolled steel from Turkey, while the Commission's sunset review "covered multiple countries." Erdemir Br. at 22. Although Erdemir only requested a changed circumstances review for Turkey, the Commission may also self-initiate changed circumstances reviews. *See* 19 C.F.R. § 207.45(c). Under 19 U.S.C. § 1675a, "the Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day." 19 U.S.C. § 1675a(a)(7). As such, where a changed circumstances review was originally requested for only one country but the Commission self-initiates the review for other countries on the same day, the Commission may exercise its discretion to cumulate imports during the changed circumstances review. *Eveready Battery*, 23 CIT at 900-901, 77 F. Supp. 2d at 1331-1332 (noting that "{t}he Commission has previously exercised its

authority to self-initiate a review of multiple countries where a request for review was received for only one country").

Therefore, the CIT did not err in finding that the Commission conducted the same analysis in the sunset review as it would have conducted in the requested changed circumstances review, mooting Erdemir's appeal. Erdemir simply cannot show to the contrary.

### 3. The Commission Did Not Fail to Afford Full Consideration of the Issues Raised in Erdemir's Changed Circumstances Review Request

Erdemir argues that "the Commission explicitly failed to consider Erdemir's negligibility argument" in its sunset review and that it thus failed to afford full consideration of the issues raised in Erdemir's request for a changed circumstances review. Erdemir Br. at 22. However, as the Commission explained in the notice of its determination not to initiate a changed circumstances review, "the result that Erdemir seeks—reexamination of the Commission's original negligibility finding—*is not possible* in a changed circumstances review because negligibility is not a factor for the Commission to consider under the statute in a changed circumstances review." *Notice of Denial of Changed Circumstances Review*, 87 Fed. Reg. at 73,332 (emphasis

added), Appx0039. In a changed circumstances review, 19 U.S.C. § 1675a(a)(1) instructs the Commission to consider "the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked." 19 U.S.C. § 1675a(a)(1). These are the same factors that the Commission is instructed to consider in sunset reviews, and which the Commission did consider in its sunset review of the AD and CVD orders on hot-rolled steel from Turkey and the other subject countries. *See Final Sunset Review*, USITC Pub. 5380 at 45-48, Appx0754-0757. The Commission is not authorized to reconsider its negligibility determination from the original investigation in a changed circumstances review or a sunset review, and any such retroactive reconsideration would be contrary to the prospective analysis required by the statute in such reviews. Thus, the Commission did not fail to consider information in its sunset review that it would have considered in a changed circumstances review.

Erdemir is also wrong in arguing that the Commission's sunset review failed to consider the results of Commerce's remand redetermination, *i.e.*, that Çolakoğlu's exports were not subject to the AD order on hot-rolled steel from Turkey. *See* Erdemir Br. at 23. In fact,

as the CIT correctly noted, the Commission fully acknowledged in its sunset review that Commerce's redetermination meant that Çolakoğlu "is no longer a producer of subject merchandise" and therefore excluded Çolakoğlu from the data for subject imports from Turkey during that review. *See Final Sunset Review*, USITC Pub. 5380 at 45, fn. 276, Appx0754; *see CIT Dismissal*, 719 F. Supp. 3d at 1321. The CIT provided the following additional explanation in its decision regarding Erdemir's appeal from the Commission's sunset review:

> While the Commission did reference data collected during the original investigation—that is, before Colakoglu's imports lost their status as subject imports following the Amended Antidumping Determination—the Commission generally employed those references either as background or as a means of establishing an illustrative comparison with data collected during the review underlying the Five-Year Determination. In the one instance where the Commission did apparently directly rely on Original Determination data, that data pertained to a trend in the commercial activity of Erdemir alone. At no point did the Commission directly rely on a data set that includes Colakoglu's pre-exclusion imports as a basis for its negative "no discernable adverse impact" finding.

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. U.S. Int'l Trade Comm'n*, 710 F. Supp. 3d 1341, 1355-56 (Ct. Int'l Trade 2024) (internal citations removed). Therefore, again, the Commission did not fail to consider

information in its sunset review that it would have considered in the requested changed circumstances review.

* * *

Erdemir has provided no support for its assertion that the CIT incorrectly determined that it had received the same relief under the Commission's sunset review as it would have received under the requested changed circumstances review and that, therefore, the CIT erred in dismissing Erdemir's action for lack of subject matter jurisdiction. Contrary to Erdemir's assertions, the statute and the SAA provide for the Commission to apply the same standard and analyze the same factors on a prospective, rather than retrospective, basis in both changed circumstances reviews and sunset reviews. The Commission also did not fail to consider any information in its sunset review that it would have considered in a changed circumstances review, as negligibility is not a factor that the Commission considers in a changed circumstance review, and the Commission took Commerce's remand redetermination of Çolakoğlu's dumping margin into account during its sunset review of the orders on hot-rolled steel.

## III. Dismissal On the Merits Is Also Warranted for Erdemir's Failure to State a Claim Upon Which Relief May Be Granted

Although the CIT dismissed Erdemir's complaint for lack of subject matter jurisdiction based on mootness, the CIT also had grounds to dismiss the case because Erdemir failed to state a claim upon which relief may be granted. *See CIT Dismissal*, 719 F. Supp. 3d at 1322 ("{T}he court grants the Commission's motion to dismiss for lack of subject matter jurisdiction"). Even where this Court finds that lower courts or review boards have erred in dismissing a claim on jurisdictional grounds, it may still affirm the dismissal on alternate grounds. *See Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1356 (Fed. Cir. 2011) (affirming dismissal on alternative ground for failure to state a claim); *Adair v. United States*, 497 F.3d 1244, 1251 (Fed. Cir. 2007) (same); *see also Doe v. United States*, 463 F.3d 1314, 1325 (Fed. Cir. 2006) ("{A}lthough the court erred in dismissing the … claim for lack of jurisdiction, the error was harmless because the claim should have been dismissed on the merits"). In other words, even if this Court finds that the CIT erred in determining that Erdemir's claim was moot and that it thus lacked subject matter jurisdiction, the Court should

uphold the dismissal on the alternate grounds of Erdemir's failure to state a claim upon which relief may be granted.

The relief that Erdemir sought in its complaint was for the CIT to "{r}emand{} the matter to the ITC to conduct a {changed circumstances review} to reconsider the negligibility decision in the AD injury investigation." Complaint, *Ereğli Demir ve Çelik Fabrikalari T.A.Ş v. United States*, Court No. 22-350, ECF No. 4 (Ct. Int'l Trade Dec. 26, 2022) at 12. However, even if the CIT ordered the Commission to conduct a changed circumstances review, the Commission must conduct that changed circumstances review according to the statutory requirements of 19 U.S.C. §§ 1675(b) and 1675a. As discussed above, the Commission does not "reconsider" its prior "negligibility decision{s}" during a changed circumstances review but instead considers "the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked." *Id.*; 19 U.S.C. § 1675a(a)(1). This involves the necessarily forward-looking analysis of "whether revocation of the order … is likely to lead to continuation or recurrence of material injury" rather than retrospective reconsideration of the Commission's previous decisions. 19 U.S.C. § 1675(b); *see also* SAA at

884, 1994 U.S.C.C.A.N. at 4209 ("The likelihood of continuation or recurrence of material injury standard is prospective in nature"). Therefore, the relief requested by Erdemir would be impossible to grant under the statutory framework for a changed circumstance review.

## CONCLUSION

For the foregoing reasons, the Court should affirm the CIT's dismissal of Erdemir's appeal for lack of subject matter jurisdiction based on mootness or, alternatively, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

/s/ Jeffrey D. Gerrish
Roger B. Schagrin
Jeffrey D. Gerrish
SCHAGRIN ASSOCIATES
900 Seventh Street, NW,
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for SSAB Enterprises LLC and Steel Dynamics, Inc.*

/s/ Neal J. Reynolds
Stephen P. Vaughn
Neal J. Reynolds
KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC 20006
(202) 737-0500

*Counsel for Cleveland-Cliffs Inc.*

/s/ Alan H. Price
Alan H. Price
Christopher B. Weld
Maureen E. Thorson
John Allen Riggins
Theodore P. Brackemyre
WILEY REIN LLP
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Nucor Corporation*

/s/ Thomas M. Beline
Thomas M. Beline
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave NW
Suite 300
Washington, DC 20037
(202) 567-2316

*Counsel for United States Steel Corporation*

Date: February 28, 2025

**FORM 19. Certificate of Compliance with Type-Volume Limitations** **Form 19**
**July 2020**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-2242

**Short Case Caption:** Eregli Demir ve Celik Fabrikalari T.A.S. v. ITC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 8,738 words.

- ☐ the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

- ☐ the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 02/28/2025

Signature: /s/ Jeffrey D. Gerrish

Name: Jeffrey D. Gerrish

Save for Filing