# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant,*

v.

### INTERNATIONAL TRADE COMMISSION, UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, NUCOR CORPORATION,

*Defendants-Appellees.*

_____

On Appeal from the United States Court of International Trade,
Case No. 1:22-CV-00350 (Judge Timothy M. Reif)

## BRIEF OF DEFENDANT-APPELLEE INTERNATIONAL TRADE COMMISSION

**RAVI D. SOOPRAMANIEN**
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, S.W.
Washington, DC 20436
Tel: (202) 205-3492
Fax: (202) 205-3111

**DOMINIC L. BIANCHI**
General Counsel
Tel: (202) 205-3061

**ANDREA C. CASSON**
Assistant General Counsel
 for Litigation
Tel: (202) 205-3105

*Attorneys for Defendant-Appellee*

**February 28, 2025**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

STATEMENT OF RELATED CASES .................................................... 1

JURISDICTIONAL STATEMENT ......................................................... 1

STATEMENT OF THE ISSUE .................................................................. 2

STATEMENT OF THE CASE .................................................................... 2

    I.     The Commission's Original Investigations on *Certain Hot-Rolled Steel Flat Products from Turkey* ........................................ 3

    II.    CIT Appeals Arising from the Final Determinations in the Original Investigations Issued by the Commission and Commerce on *Hot-Rolled Steel from Turkey* ................................ 6

         A.    Domestic Producers' Appeal of the Commission's Negligibility Determination with Respect to Turkey in the Countervailing Duty Investigation ...................... 6

         B.    Turkish Producers' Appeal of Commerce's Final Antidumping Duty Determination ........................................... 7

         C.    Erdemir's Protective Appeal of Commerce's Final Countervailing Duty Determination .......................................... 8

    III.   Erdemir's Request for Reconsideration, or in the Alternative a Changed Circumstances Review .................................... 9

    IV.   Five-Year Reviews and Rejection of Request for Changed Circumstances Review .......................................................... 11

    V.    Court of International Trade Proceedings Below ................................ 14

SUMMARY OF THE ARGUMENT ....................................................... 18

ARGUMENT ............................................................................................ 20

    I.     Standard of Review .......................................................................... 20

II. The Court of International Trade Lacked Subject Matter Jurisdiction Under Section 1581(c)......................................22

    A.    Statutory Framework ................................................22

    B.    The Commission's Institution of a Full Five-Year Review Mooted Erdemir's CCR Request .................................24

    C.    The Lower Court Considered All of Erdemir's Arguments and Properly Rejected Them .................................26

        1.    The Lower Court Correctly Found that the Statute Does Not Authorize Retroactive Changes to Original Determinations in Changed Circumstances Reviews...................................27

        2.    The Lower Court Properly Considered Applicable Case Law......................................34

        3.    Erdemir Did Not File a Valid CCR Request Until After the Commission Instituted the Five-Year Review............................................38

        4.    As the Lower Court Correctly Found, the Commission Considered All of the Issues Raised in Erdemir's CCR Request .................................39

III. Alternatively, This Court Should Affirm the Dismissal of this Case on Grounds that Erdemir Failed to State a Claim Upon Which Relief Can Be Granted........................................42

CONCLUSION.......................................................45

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Air Line Pilots Ass'n Int'l v. UAL Corp.,*
    897 F.2d 1394 (7th Cir. 1990) ....................................................24, 25

*ARP Materials Inc. v. United States,*
    47 F.4th 1370 (Fed. Cir. 2022) ...........................................................20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................42, 43

*Borlem S.A. Emoreedimentos Industriais v. United States,*
    913 F.2d 933 (Fed. Cir. 1990) ...........................................................33, 34

*Ereğli Demir ve Çelik Fabrikalari T.A.S. v. United States,*
    435 F. Supp. 3d 1378 (Ct. Int'l Trade 2020) ...................................7, 37

*Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States,*
    Case No. 16-cv-00217 (Ct. Int'l Trade)..........................................8, 9

*Ereğli Demir ve Celik Fabrikalari T.A.S. v. United States,*
    No. 20-1999, Mandate Order (Fed. Cir. Dec. 18, 2020) (ECF 38) .....................8

*Ereğli Demir ve Celik Fabrikalari T.A.S. v. United States,*
    No. 20-2003, Mandate Order (Fed. Cir. June 4, 2021) (ECF 36) ........................8

*Corus Staal, B.V. v. United States,*
    502 F.3d 1370 (Fed. Cir. 2007) ..........................................................41

*DeFunis v. Odegaard,*
    416 U.S. 312 (1974)...............................................................................24

*Encon Indus. v. United States,*
    18 CIT 867 (1994) ................................................................................33

*Erwin Hymer Grp. N. Am., Inc. v. United States,*
    930 F.3d 1370 (Fed. Cir. 2019) ..........................................................20

*Eveready Battery Co., Inc. v. United States,*
    77 F. Supp. 2d 1327 (Ct. Int'l Trade 1999) ................................*passim*

**Cases (cont'd)**                                                    **Page(s)**

*Honig v. Doe*,
    484 U.S. 305 (1988)..................................................................24

*Juancheng Kangtai Chem. Co. v. United States*,
    932 F.3d 1321 (Fed Cir. 2019) ...............................................20

*LG Elecs., Inc. v. U.S. Int'l Trade Comm'n*,
    Slip Op. 14-8, 2014 WL 260603 (Ct. Int'l Trade Jan. 23, 2014) ......................33

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)..............................................................20, 21

*Metro. Area EMS Auth. v. Sec'y of Veterans Affs.*,
    122 F.4th 1339 (Fed Cir. 2024) ...............................................21

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010)..................................................................42

*Nasatka v. Delta Sci. Corp.*,
    58 F.3d 1578 (Fed. Cir. 1995) ............................................24, 25

*Nucor Corp. v. United States*,
    296 F. Supp. 3d 1276 (Ct. Int'l Trade 2018) ...........................7

*Nucor Corp. v. United States*,
    601 F.3d 1291 (Fed. Cir. 2010) ...............................................38

*PPG Indus., Inc. v. United States*,
    660 F. Supp. 965 (Ct. Int'l Trade 1987) .................................15

*Protestant Mem'l Med. Ctr., Inc. v. Maram*,
    471 F.3d 724 (7th Cir. 2006) ...................................................26

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.*,
    672 F.3d 1041 (Fed. Cir. 2012) ............................................42, 43

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)..................................................................21

**Cases (cont'd)** **Page(s)**

*Timex V.I., Inc. v. United States*,
   6157 F.3d 879 (Fed. Cir. 1998) ............................................................21

*TR Int'l Trading Co. v. United States*,
   4 F.4th 1363 (Fed. Cir. 2021) ..............................................................20

*Verson v. United States*,
   5 F. Supp. 2d 963 (Ct. Int'l Trade 1998) ............................................15

*Wanxiang Am. Corp. v. United States*,
   12 F.4th 1369 (Fed. Cir. 2021) ............................................................20

**Statutes**

19 U.S.C. § 1673d(b)(1) ...........................................................................41

19 U.S.C. § 1675a .............................................................................24, 35

19 U.S.C. § 1675a(a) ...........................................................................28, 41

19 U.S.C. § 1675a(a)(1) ......................................................................16, 44

19 U.S.C. § 1675a(a)(7) .............................................................................37

19 U.S.C. § 1675(b) .............................................................................*passim*

19 U.S.C. § 1675(b)(1)(A) .........................................................................44

19 U.S.C. § 1675(b)(2) ...............................................................................30

19 U.S.C. § 1675(b)(2)(A) .................................................................. *passim*

19 U.S.C. § 1675(c) .............................................................................*passim*

19 U.S.C. § 1675(c)(1) .........................................................................19, 22

19 U.S.C. § 1675(c)(1)(C) ...........................................................................40

19 U.S.C. § 1675(d)(1) ................................................................................29

19 U.S.C. § 1675(d)(3) ................................................................................29

**Statutes (cont'd)**                                                    **Page(s)**

19 U.S.C. § 1677(24) ...............................................................5, 41

28 U.S.C. § 1295(a)(5).................................................................2

28 U.S.C. § 1581(c) ..........................................................2, 14, 22

28 U.S.C. § 2643(c)(1)................................................................34

**Code of Federal Regulations**

19 C.F.R. § 207.45 .....................................................................11

19 C.F.R. § 207.45(c)............................................................17, 39

19 C.F.R. § 207.45(d) ................................................................35

19 C.F.R. § 351.216 ...................................................................35

**Federal Register Materials**

*Ceiling Fans from the People's Republic of China, Request for
    Comments Concerning the Institution of a Section 751(b) Review
    Investigation,* 59 Fed. Reg. 30,036 (June 10, 1994) ...................30, 31

**Legislative Materials**

Statement of Administrative Action to the Uruguay Round Agreements
Act, H.R. Doc. No. 103-316, vol. I (1994) ......................................*passim*

**Rules**

Fed. Cir. R. 28(j) ..........................................................................3

Fed. R. Civ. P. 12(b)(6) .........................................................42, 43

CIT R. 12(b)(6)  ...............................................................15, 42, 45

## STATEMENT OF RELATED CASES

Defendant-Appellee, the U.S. International Trade Commission, states that it is not aware of any other appeal in or from this action that was previously before this Court, or any other appellate court. The Court has designated this case as a companion case to *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. ITC*, Case No. 24-2243 (Fed. Cir. 2024), and *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. ITC*, Case No. 24-2249 (Fed. Cir. 2024).

## JURISDICTIONAL STATEMENT

The complaint in this case involved a challenge by Plaintiff-Appellant, Ereğli Demir ve Çelik Fabrikalari T.A.Ş. ("Erdemir") to the Commission's decision not to institute a changed circumstances review ("CCR") concerning the Commission's 2016 affirmative determination in the antidumping duty investigation of hot rolled steel from Turkey. Erdemir appeals the decision of the U.S. Court of International Trade ("CIT") in *Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States Int'l Trade Comm'n*, 719 F. Supp. 3d 1302, Slip. Op. 24-82 (Ct. Int'l Trade July 22, 2024) (Appx0001-0037), in which that court issued a final opinion and order dismissing Erdemir's complaint for lack of subject matter jurisdiction.

For the reasons explained below, the CIT properly held that it lacked subject matter jurisdiction over the underlying matter and dismissed the case on July 22,

2024.  This Court has jurisdiction to review the final decision of the lower court under 28 U.S.C. § 1295(a)(5).

## STATEMENT OF THE ISSUE

The Commission submits that the issue raised in this case is properly framed as:

> Whether the Court of International Trade properly dismissed Erdemir's complaint because Erdemir's request for a changed circumstances review was rendered moot by the Commission's institution of a full five-year review that entailed the identical prospective analysis that would have been available under a CCR.

## STATEMENT OF THE CASE

Erdemir's statement of the case is selective and does not include a number of salient facts.  Accordingly, the Commission provides its own statement below.

Erdemir appeals the lower court's dismissal of Erdemir's complaint for lack of subject matter jurisdiction due to mootness.  Erdemir had invoked 28 U.S.C. § 1581(c) to challenge the Commission's decision not to institute a CCR.  *See Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 22-cv-00349, ECF No. 4 ¶ 3 (Ct. Int'l. Trade Dec. 26, 2022) (Compl.) (Appx1413).  *See also Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration*

*Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73,331 (Nov. 29, 2022) ("Final CCR Decision") (Appx0038-0040).

The Commission and defendant-intervenors (consisting of domestic producers of hot rolled steel) moved to dismiss Erdemir's complaint. *See generally Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 22-cv-00349, ECF No. 38 (Ct. Int'l. Trade May 18, 2023) ("Commission's MTD") (Appx1423-1449); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 22-cv-00349, ECF No. 39 (Ct. Int'l. Trade May 18, 2023) (Appx3090-3091). After consideration of all submissions and oral argument, the Court of International Trade dismissed the appeal and entered judgment and an accompanying opinion. Appx0001-0037.

## I. The Commission's Original Investigations on *Certain Hot-Rolled Steel Flat Products from Turkey*[1]

Erdemir's complaint involves a request for review of the Commission's original determinations in the antidumping ("AD") and countervailing duty

---

[1] Pursuant to Fed. Cir. R. 28(j) and the Court's Order of Oct. 22, 2024 (ECF No. 33), we note that the discussion of the Commission's underlying proceedings is largely duplicative of the discussion of those proceedings as set out in the Commission's brief in companion case No. 24-2243.

("CVD") investigations involving hot-rolled steel ("HRS") from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-547 & 731-TA-1291-1297 (Final), USITC Pub. 4638 (Sept. 2016) (Appx0292-0616); *see also Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996 (Sep. 29, 2016) (Appx0041-0042).

On August 11, 2015, six domestic steel producers filed antidumping petitions concerning imports of hot-rolled steel from Australia, Brazil, Japan, the Netherlands, South Korea, Turkey, and the United Kingdom and countervailing duty petitions concerning imports of hot-rolled steel from Brazil, Korea, and the United Kingdom. Appx0304. The Commission subsequently instituted its investigations of hot-rolled steel from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom. *See Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations*, 80 Fed. Reg. 50,028 (Aug. 18, 2015).

In the final phase of these investigations, the Commission determined that hot-rolled steel imports from Turkey, found by the U.S. Department of Commerce ("Commerce") to be subsidized, as a percentage of total imports of hot-rolled steel during the relevant period fell below the statutory three percent negligibility threshold once Commerce assigned a final *de minimis* subsidy margin to Turkish exporter Çolakoğlu Dis Ticaret A.Ş. ("Colakoglu"). Appx0302, Appx0313-0314; *see also* 19 U.S.C. § 1677(24). The Commission thus determined that subsidized imports from Turkey were negligible and terminated its countervailing duty investigation on imports from Turkey. Appx0313-0314.

The Commission separately determined that subject imports from Turkey, found by Commerce to be sold in the United States at less than fair value (*i.e.,* dumped), were not negligible. Appx0313-0314. In reaching this determination, the Commission observed that because hot-rolled steel imports from Colakoglu remained subject to the antidumping investigation, the volume of hot-rolled steel imports from Turkey subject to the antidumping duty investigation was 7.4 percent of total imports of hot-rolled steel during the relevant reporting period, and therefore those imports were above negligible levels. Appx0313-0314. The Commission then analyzed the subject products on a cumulated basis, cumulating dumped imports from Turkey with subject imports from Australia, Brazil, Japan, Korea, the Netherlands, and the United Kingdom. Appx0318-0322. The

Commission determined that the domestic industry was materially injured by reason of cumulated subject imports. Appx0344-0348, Appx0353. Following the Commission's affirmative injury determination, Commerce issued antidumping duty orders on hot-rolled steel from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom. *See Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962 (Oct. 3, 2016) (Appx0617-0622).

Three appeals followed with respect to the antidumping and countervailing duty final determinations concerning Turkey. However, no party, including Erdemir, appealed the Commission's affirmative injury determination, or any aspect thereof, concerning dumped imports from Turkey, which, therefore, became final when the time to appeal that decision expired on November 2, 2016.

## II. CIT Appeals Arising from the Final Determinations in the Original Investigations Issued by the Commission and Commerce on *Hot-Rolled Steel from Turkey*

### A. Domestic Producers' Appeal of the Commission's Negligibility Determination with Respect to Turkey in the Countervailing Duty Investigation

Nucor Corporation ("Nucor"), one of the six petitioning domestic steel producers, appealed the Commission's negligibility determination involving

6

subsidized imports from Turkey.[2]  Erdemir participated as defendant-intervenor in

that case, arguing in support of the Commission's negligibility finding in the

countervailing duty investigation of HRS from Turkey.  On February 28, 2018, the

Court of International Trade affirmed the Commission's negligibility

determination.  *Nucor Corp. v. United States*, 296 F. Supp. 3d 1276, 1294 (Ct. Int'l

Trade 2018).  No interested party timely appealed the CIT's final opinion and

order.

### B.  Turkish Producers' Appeal of Commerce's Final Antidumping Duty Determination

Erdemir and Colakoglu appealed Commerce's final antidumping

determination on imports from Turkey.  On April 13, 2020, after several remands,

the Court of International Trade affirmed Commerce's redetermination of a *de*

*minimis* dumping margin for Colakoglu, resulting in the latter's exclusion from the

antidumping duty order on hot-rolled steel from Turkey effective April 23, 2020.

*Eregli Demir ve Çelik Fabrikalari T.A.S. v. United States*, 435 F. Supp. 3d 1378,

1380 (Ct. Int'l Trade 2020).  Commerce and the petitioners in the underlying

---

[2] AK Steel Corporation, ArcelorMittal USA LLC., and the United States
Steel Corporation, also petitioners in the underlying investigations, participated in
Nucor's appeal as plaintiff-intervenors.  SSAB Enterprises, LLC and Steel
Dynamics, Inc. were the other two petitioners in the hot-rolled steel investigations.
Appx0304.  We refer to the six petitioners collectively as "Domestic Producers."

investigations, participating as defendant-intervenors, filed appeals of the CIT's decision in this Court.

Commerce and the Domestic Producers subsequently requested voluntary dismissal of their appeals, which this Court granted in December 2020 and June 2021. See *Eregli Demir ve Celik Fabrikalari T.A.S. v. United States*, No. 20-1999, Mandate Order, ECF No. 38 (Fed. Cir. Dec. 18, 2020) (Appx3702-3704); *Eregli Demir ve Celik Fabrikalari T.A.S. v. United States*, No. 20-2003, Mandate Order, ECF No. 36 (Fed. Cir. June 4, 2021), *docketed in* Ct. No. 16-cv-00218, ECF No. 161 (Ct. Int'l Trade June 4, 2021) (Appx3705-3706).

### C. Erdemir's Protective Appeal of Commerce's Final Countervailing Duty Determination

Erdemir also filed a protective appeal of Commerce's final affirmative countervailing duty determination in case the Domestic Producers succeeded in their appeal challenging the Commission's negligibility finding in the countervailing duty investigation. *See Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, Case No. 16-cv-00217, ECF No. 7 (Ct. Int'l Trade Nov. 11, 2016) (Appx3707-3714). Erdemir sought a stay of its appeal noting that "[i]f the Court upholds the ITC's final negative injury determination in the *Nucor* appeal, then the present appeal will be mooted and plaintiff Erdemir intends to voluntarily dismiss the present appeal." *See Ereğli Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, Case No. 16-cv-00217, ECF No. 33 at 2 (Ct. Int'l Trade Jan. 23, 2017)

8

(Appx3718). The Court of International Trade granted the stay. *See Ereğli Demir*

*ve Çelik Fabrikalari T.A.Ş. v. United States*, Case No. 16-cv-00217, ECF No. 34

(Ct. Int'l Trade Jan. 24, 2017) (Appx3723). As described above, the CIT

ultimately rejected Nucor's appeal of the Commission's CVD negligibility

determination, after which Erdemir withdrew its protective appeal. *See Ereğli*

*Demir ve Çelik Fabrikalari T.A.Ş. v. United States*, Case No. 16-cv-00217, ECF

Nos. 43-44 (Ct. Int'l Trade May 30, 2018) (Appx3724-3730).

No party filed an appeal of the Commission's final determination with

respect to Turkey in the antidumping duty investigation.

## III. Erdemir's Request for Reconsideration, or in the Alternative a Changed Circumstances Review

While these appeals of the final determinations in the original investigations

were pending, Erdemir in 2020 filed two letters with the Commission, one dated

May 18 titled "Request for Reconsideration," Appx0626-0655, and another dated

July 22 titled "Letter in Support of Request for Reconsideration," Appx3160-

3171. In its May 2020 letter, Erdemir stated that it "asks that the Commission

reconsider its determination that a domestic industry is materially injured by reason

of HRS from Turkey sold in the United States at [LTFV]." Appx0626-0632.

Specifically, Erdemir requested that the Commission reopen the 2016 investigation

and consider as "new information" Commerce's remand exclusion of Colakoglu

from the antidumping duty order concerning Turkey. Erdemir also noted that the purported "new information" could also instead be considered via a changed circumstances review. Appx0631. In its July 2020 letter, Erdemir renewed its request for a reconsideration proceeding or, in the alternative a changed-circumstances review, and argued that the proceedings pending before the Federal Circuit should not render its request premature. Appx3160-3162.[3] Further, both requests occurred before the revised Commerce decision became final due to the pending appeals. Accordingly, the Commission did not act on Erdemir's premature requests. As acknowledged by Erdemir's counsel at oral argument before the lower court, however, a Commission attorney contacted counsel concerning Erdemir's premature requests. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 22-cv-00349, ECF No. 71 at 40 (Ct. Int'l. Trade June 24, 2024) (Appx0770).

---

[3] Neither letter cited the statute or the legal standard for a CCR as required by section 751(b) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(b), and neither letter provided an explanation of why sufficient changed circumstances existed to conduct a CCR, as required by statute and regulation. Appx0626-0632; Appx3160-3162. Accordingly, neither request satisfied the applicable statutory and regulatory requirements.

## IV. Five-Year Reviews and Rejection of Request for Changed Circumstances Review

On September 1, 2021, as required by statute, 19 U.S.C. § 1675(c), the Commission instituted five-year reviews of the hot-rolled steel antidumping and countervailing duty orders, including the antidumping order on hot-rolled steel from Turkey. *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057 (Sept. 1, 2021) (Appx3172-3175).

On September 10, 2021, after the Commission instituted the five-year reviews, Erdemir filed a letter with the Commission titled "Request for Commission Changed Circumstances Review Pursuant to 19 U.S.C. § 1675(b)" that attempted to comply with Commission Rule 207.45. Appx0656. On December 2, 2021, the Commission published a notice inviting comments from the public on whether changed circumstances existed sufficient to warrant the institution of a changed circumstances review. *Hot-Rolled Steel Flat Products from Turkey; Request for Comments Regarding the Institution of a Section 751(b) Review Concerning the Commission's Affirmative Determination*, 86 Fed. Reg. 68,512 (Dec. 2, 2021). Appx3176-3177. The Commission received comments from the government of the Republic of Turkey and Erdemir in support of instituting a changed circumstances review of the antidumping order on Turkey,

Appx3182-3185; Appx3194-3213, and comments from the Domestic Producers opposing institution of a changed circumstances review, Appx3308-3323.

On December 6, 2021, the Commission determined to conduct full five-year reviews of the hot-rolled steel orders, including the antidumping order on hot-rolled steel from Turkey. *Notice of Commission Determination to Conduct Full Five-Year Reviews; Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom*, 87 Fed. Reg. 3,123 (Jan. 20, 2022) (Appx3330-3331). In those reviews, Erdemir argued that, by way of a CCR or reconsideration proceeding, the Commission should find that dumped imports from Turkey were negligible in the original investigation and that the Commission should reverse its original negligibility determination involving dumped imports from Turkey in the five-year reviews. *See Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, USITC Pub. No. 5380, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review) ("Five-Year Review Determination") at 26 n.132 (Nov. 2022) (Appx0735). In September 2022, Erdemir submitted prehearing and posthearing briefs and the Commission conducted a public hearing, on September 15, 2022, where Erdemir and other interested parties provided testimony and answered specific questions from Commissioners pertaining to Erdemir's request for a CCR. *See* Comm'n Hr'g Tr.

(Sept. 15, 2022), at 82-90, 336-341 (Appx3414-3422, Appx3668-3673). *See also* Appx0036-0037.

On November 25, 2022, the Commission issued final determinations in its five-year reviews. *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167 (Dec. 2, 2022) (Appx2966). The Commission analyzed subject hot-rolled steel imports from Turkey on a cumulated basis with subject imports from Australia, Japan, the Netherlands, South Korea, Russia, and the United Kingdom. Appx0735-0776. Based on this examination, the Commission determined that revocation of the antidumping and countervailing duty orders on subject imports from these cumulated sources would likely lead to continuation or recurrence of material injury within a reasonably foreseeable time.[4] Appx0791-0809, Appx0816.

Commerce thereafter continued the antidumping duty orders on hot-rolled steel

---

[4] The Commission, however, exercised its discretion not to cumulate imports from Brazil with those from the other subject countries, and determined that revocation of the antidumping and countervailing duty orders on imports from Brazil would not be likely to lead to continuation or recurrence of injury within a reasonably foreseeable time. Appx0710, Appx0769-0771, Appx0775-0776, Appx0809-0816. Commerce thereafter revoked the orders on hot-rolled steel from Brazil. *See Certain Hot-Rolled Steel Flat Products From Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Continuation of Antidumping Duty Orders (Australia, Japan, Korea, the Netherlands, Turkey, and United Kingdom) and Countervailing Duty Order (Korea) and Revocation of Antidumping and Countervailing Duty Orders (Brazil)*, 87 Fed. Reg. 78,642 (Dec. 22, 2022).

imports Australia, Japan, Korea, the Netherlands, Turkey, and United Kingdom, and the countervailing duty order on imports from Korea. *See* 87 Fed. Reg. 78,642 (Dec. 22, 2022).

On November 23, 2022, the Commission issued its determination rejecting Erdemir's request for a CCR. Appx0038-0039.[5] The Commission explained that it determined not to institute a CCR of the antidumping order concerning Turkey because: 1) consistent with persuasive reasoning of the Court of International Trade decision in *Eveready Battery Co., Inc. v. United States*, 77 F. Supp. 2d 1327 (Ct. Int'l Trade 1999), a CCR would be duplicative of the five-year reviews and 2) negligibility is not a factor for the Commission to consider in a CCR. *Id*.

## V.    Court of International Trade Proceedings Below

On December 26, 2022, Erdemir filed an appeal in the Court of International Trade, challenging the Commission's decision not to institute a CCR. The Commission moved to dismiss Erdemir's Complaint on two grounds: 1) lack of subject matter jurisdiction under section 1581(c) due to mootness and 2) failure to state a claim on which relief could be granted. After briefing and argument, on July 22, 2024, the court issued an order and opinion dismissing the case for lack of

---

[5] The Commission also declined to institute a proceeding to reconsider its original final determination, as explained in the Commission's brief in companion case No. 24-2243. Appx0038.

subject matter jurisdiction. Appx0001-0038. In dismissing the case, the lower court analyzed the applicable statutes and caselaw and concluded that the Commission's institution of a full five-year review rendered Erdemir's request for a CCR moot. Appx0037. The court reasoned that the Commission's institution of a full five-year review provided Erdemir with the same potential remedy that Erdemir could have received in a CCR, thereby rendering the action moot. Appx0025-0026.

The Court of International Trade closely examined the statutory requirements for a five-year review of an AD or CVD order, noting that the same "likelihood of continuation or recurrence of material injury" applies to both a five-year review and a CCR. Appx0004-0023. Turning to the Commission's claim that Erdemir's appeal should be dismissed as moot under CIT Rule 12(b)(6), the court addressed relevant case law. It explained that a case will be dismissed as moot "when the challenge presented to the Court cannot result in a meaningful remedy," and that a case is moot if the issues are no longer live. Appx0020, 0023 (citing *Verson v. United States*, 5 F. Supp. 2d 963, 966 (Ct. Int'l Trade 1998) and *PPG Indus., Inc. v. United States*, 660 F. Supp. 965, 968 (Ct. Int'l Trade 1987)). The court then examined a previous CIT decision which had dismissed a request for a CCR as moot in light of institution of a full five-year review. *Eveready Battery v. United States*, 77 F. Supp.2d at 1327. The court discussed the similarities between

*Eveready* and Erdemir's case, noting that: as in *Eveready*, Erdemir challenged the Commission's denial of its request for a CCR; as in *Eveready*, the Commission instituted a five-year review after Erdemir had filed a request for a CCR; and, for the reasons articulated in *Eveready*, the Commission's decision to institute a five-year review accorded to Erdemir the same potential remedy that Erdemir could have received had the Commission instituted a CCR. Appx0025-0026.

The Court of International Trade was unpersuaded by Erdemir's efforts to distinguish *Eveready*. First, Erdemir argued that the CCR request in *Eveready* looked at changes in the market that occurred after the order went into effect, whereas Erdemir's request for a CCR in the instant proceedings looks back at the market at the time of the Commission's original investigation. However, the court disagreed with Erdemir's allegation that its request fit in "'a unique category of CCR requests specifically contemplated by the [Statement of Administrative Action to the Uruguay Round Agreements Act] to revisit a prior Commission determination.'" Appx0026 (quoting Plaintiff's Response to the Commission's MTD at 25-26 (*citing Statement of Administrative Action to the Uruguay Round Agreements Act,* H.R. Doc. No. 103-316, vol. 1 (1994) ("SAA")). Looking at the relevant statutory provisions – 19 U.S.C. §§ 1675(b)(2)(A) and 1675a(a)(1) – the court found Erdermir's argument to be inconsistent with the plain meaning of both provisions. The court explained that these provisions unambiguously indicate that

a CCR is prospective in nature and focuses on what is likely to occur if an order is revoked.  Appx0027.

The court also cited statements in the SAA about the forward-looking nature of CCRs and to SAA language prohibiting a retrospective analysis in a CCR. Appx0027-0029.  The court explained that, in the five-year review, Erdemir "received the benefit of the revised de minimis dumping margin that Colakoglu received on remand," and that Commission's exclusion of Colakoglu's imports in the five-year review gave Erdemir the same opportunity it would have had in a CCR.  Appx0029.

The court also rejected Erdemir's efforts to distinguish this case from *Eveready* on the grounds that the underlying changes at issue in its CCR request related solely to Turkey, whereas the underlying changes in the *Eveready* case affected all subject countries.  Appx0030.  The court emphasized that the Commission has the discretionary authority to cumulate in both five-year reviews and CCRs, and in both types of reviews, the statute prohibits the Commission from cumulating imports in a case in which it determines that such imports are likely to have no discernible impact.  Appx0030-0031.[6]

_____

[6] Notwithstanding that Erdemir made no claims about rules violations in its complaint (*see* Compl, Appx1411-1422), the court addressed Erdemir's allegations that the Commission violated its own rule, 19 C.F.R. § 207.45(c), by failing to respond promptly to Erdemir's May and July 2020 requests for a CCR, and by not timely denying the September 2021 CCR request. Appx0031-0032. The court

Finally, the court rejected Erdemir's claim that the Commission did not give full consideration to the issues raised in its CCR request in the five-year review. Appx0035-0036. The court reviewed the Commission's five-year review determination alongside the Commission's denial of the request to institute a CCR and concluded the Commission had fully addressed Erdemir's arguments. Appx0036-0037. This appeal followed.

## SUMMARY OF THE ARGUMENT

Erdemir's complaint should be dismissed as it seeks to litigate a matter that was rendered moot when the Commission determined to institute full five-year reviews of the hot-rolled steel orders on Turkey, et al. pursuant to 19 U.S.C. § 1675(c). In so doing, the Commission gave Erdemir the equivalent of a CCR, namely a full review to determine whether revocation of the antidumping order on imports from Turkey would be "likely to lead to continuation or recurrence of

---

observed that the May and July 2020 letters did not comply with the statutory or regulatory requirements concerning CCR requests, and, thus, the Commission was under no obligation to publish notice and invite comment. Appx0033. However, the court found that the Commission's failure to respond in a more timely manner to Erdemir's properly filed September 2021 CCR request was "suboptimal," notwithstanding that the Commission's explanation in its Federal Register notice and at oral argument that it had waived the 45-day rule for good cause in light of the additional analysis needed to consider the alternative reconsideration request. Appx0034. The court concluded, however, that "[t]he failure of the Commission to post within 45 days after the close of the period for public comments its denial of plaintiff's request for a CCR and the perfunctory nature of the Commission's decision to waive that timeframe is at most harmless error." Appx0034-0035.

dumping and of material injury" to the domestic industry. *See Eveready*, 77 F. Supp. 2d at 1328-1334 (comparing 19 U.S.C. § 1675(b)(2)(A) with 19 U.S.C. § 1675(c)(1)); Appx0025-0026.

Undeterred by the lower court's application of *Eveready* to find its complaint moot, Erdemir continues to advance arguments, dismissed in the proceedings below, that the statute recognizes prospective considerations in the circumstances presented in this case; that CCRs and five-year reviews require distinct analyses, and that the Commission failed to afford it due considerations of the issues it raised in its CCR request in the course of its five-year reviews.

The Court should affirm the Court of International Trade's decision and judgment because Erdemir's arguments evince a misunderstanding of the statute and regulations. Indeed, Erdemir has already received all of the relief to which it was entitled in the full five-year reviews conducted by the Commission; a CCR would merely be duplicative of those proceedings. Namely, the Commission determined in the five-year review whether revocation of the antidumping order on imports from Turkey would be "likely to lead to continuation or recurrence of . . . material injury" to the domestic industry – the same inquiry called for by the statute governing CCRs and five-year reviews: 19 U.S.C. § 1675(b)(2)(A) and 19 U.S.C. § 1675(c)(1), respectively.

In the alternative, the Court should affirm the lower court's dismissal of

Erdemir's complaint for failure to state a claim upon which relief can be granted.

At bottom, Erdemir wants for the Commission to revisit its final negligibility

determination in the original investigation. The CCR provision, however, only

provides *prospective* relief, 19 U.S.C. § 1675(b); thus, Erdemir's requested relief

cannot be granted.

## ARGUMENT

## I.     Standard of Review

This Court reviews Court of International Trade decisions to grant a motion

to dismiss for lack of subject matter jurisdiction *de novo* as a question of law. *ARP*

*Materials Inc. v. United States*, 47 F.4th 1370, 1376 (Fed. Cir. 2022); *see also*

*Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1373 (Fed. Cir. 2021); *TR*

*Int'l Trading Co. v. United States*, 4 F.4th 1363, 1367 (Fed. Cir. 2021); *Erwin*

*Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370, 1374 (Fed. Cir. 2019).

Although the Court reviews the jurisdictional determination of the lower court *de*

*novo*, it "give[s] great weight to the informed opinion of the CIT and it is nearly

always the starting point of [the Court's] analysis." *Juancheng Kangtai Chem. Co.*

*v. United States*, 932 F.3d 1321, 1326 (Fed Cir. 2019). The plaintiff-appellant bears

the burden of pleading and establishing jurisdiction. *Wanxiang*, 12 F.4th at 1373;

*TR Int'l Trading Co.*, 4 F.4th at 1367.

Regarding statutory interpretation, the Supreme Court has stated that "courts use every tool at their disposal to determine the best reading of the statute and resolve [any] ambiguity." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). As this Court has recognized, beyond the statute's text, the tools of statutory construction to ascertain Congress's purpose and intent include the statute's legislative history, the statute's structure, and the canons of statutory construction. *See Metro. Area EMS Auth. v. Sec'y of Veterans Affs.*, 122 F.4th 1339, 1345 (Fed Cir. 2024) (discussing the employment of the traditional tools of statutory construction, including "the statute's structure, canons of statutory construction, and legislative history") (citing *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998)). Furthermore, the Supreme Court continues to recognize that courts should be informed by agencies' expertise, interpretation, and experience with statutes that Congress entrusted them to administer. *Loper Bright*, 603 U.S. at 402, (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40 (1944)).

On this point, the Commission agrees with Erdemir: the SAA provides an especially important tool in interpreting the Uruguay Rounds Agreement Act. Plaintiff-Appellant's Opening Brief, ECF No. 34 (Nov. 20, 2024) ("Erdemir Br.") at 13 n.1.

## II. The Court of International Trade Lacked Subject Matter Jurisdiction Under Section 1581(c)

The lower court correctly held that it lacked subject matter jurisdiction under section 1581(c) because the Commission's five-year review provided Erdemir with the same potential remedy that Erdemir could have received had the Commission conducted a CCR, thereby mooting Erdemir's claims. Appx0026.

### A. Statutory Framework

Under the statutory scheme, in both a CCR and a five-year review the Commission is charged with determining whether revocation of an antidumping or countervailing duty order would be "likely to lead to continuation or recurrence of . . . material injury" to the domestic industry. 19 U.S.C. § 1675(b)(2)(A) (CCR); 19 U.S.C. § 1675(c)(1) (five-year review). While there are some differences, such as when reviews are instituted and how, they are irrelevant to Erdermir's claims. The relevant statutory provisions addressing CCRs provide as follows:

**(b) Reviews based on changed circumstances**

(1) In general

Whenever the administering authority or the Commission receives information concerning, or a request from an interested party for a review of –

(A) a final affirmative determination that resulted in an antidumping duty order under this subtitle or a finding under the Antidumping Act of 1921, or in a countervailing duty order under this subtitle or section 1303 of this title

\*\*\*

which shows changed circumstances sufficient to warrant a review of such determination or agreement, the administering authority or the Commission (as the case may be) shall conduct a review of the determination or agreement after publishing notice of the review in the Federal Register.

(2) Commission review

In conducting a review under this subsection, the Commission shall –
(A) in the case of a countervailing duty order or antidumping duty order or finding, *determine whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury*[.]

***

(3) Burden of persuasion

During a review conducted by the Commission under this subsection –
(A) the party seeking revocation of an order or finding as described in paragraph (1)(A) shall have the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant such revocation.

19 U.S.C. § 1675(b) (emphasis added).

The relevant provisions regarding five-year reviews provide as follows:

**(c) Five-year review**

(1)     In general

Notwithstanding subsection (b) and except in the case of a transition order defined in paragraph (6), 5 years after the date of publication of-

(A) a countervailing duty order (other than a countervailing duty order to which subparagraph (B) applies or which was issued without an affirmative determination of injury by

the Commission under section 1303 1 of this title), an antidumping duty order, or a notice of suspension of an investigation, described in subsection (a)(1)[.]

\*\*\*

[*T*]*he Commission shall conduct a review to determine, in accordance with section 1675a of this title, whether revocation of the countervailing or antidumping duty order . . . would be likely to lead to continuation or recurrence . . . of material injury.*

19 U.S.C. § 1675(c) (emphasis added).

The statutory factors the Commission evaluates when deciding whether continuation or recurrence of material injury is likely are set forth in 19 U.S.C. § 1675a, which is titled "Special rules for section 1675(b) and section 1675(c) reviews." Notably, the statutory factors set forth in 19 U.S.C. § 1675a for CCRs and five-year reviews are identical.

## B. The Commission's Institution of a Full Five-Year Review Mooted Erdemir's CCR Request

Pursuant to Article III of the Constitution, the Court "may only adjudicate actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988); *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) ("The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.") (quotation omitted). Accordingly, an actual case or controversy must exist at all stages of review, not simply when the action was filed. *DeFunis*, 416 U.S. at 319. "'The test for mootness . . . is whether the relief sought would, if

24

granted, make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation).'" *Nasatka v. Delta Sci. Corp.*, 58 F.3d 1578, 1580 (Fed. Cir. 1995) (quoting *Air Line Pilots Ass'n Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990)).

In denying Erdemir's request for a CCR as moot, the Commission considered the similarity of applicable legal standards between changed circumstances undertaken pursuant to 19 U.S.C. § 1675(b) and five-year reviews undertaken pursuant to 19 U.S.C. §1675(c), as well as the corresponding burdens on the agency and market participants to participate in parallel reviews. Appx0039. The Final CCR Decision explains, in this regard, that conducting a changed circumstances review at the same time as a five-year review would be unwarranted because it would be duplicative of the five-year reviews. Appx0039. On this point, the Commission followed the CIT's reasoning in *Eveready,* and determined that Erdemir's request for a changed circumstances review was moot. Appx0039.

Erdemir would have this Court overlook that the statute on its face sets out the same standards for changed circumstances and five-year reviews. This correct interpretation does not, as Erdemir asserts, empower the Commission to "delay and deny all CCR requests" knowing that a five-year review will "eventually" occur. Erdemir Br. at 18. In this particular case, Commerce's redetermination did not

become final until almost five-years after the original investigation, so in these specific circumstances it would have been wasteful of the Commission's and the parties' resources to conduct duplicative reviews with the inevitable identical outcome. This does not in any way negate the correctness of the Commission's and the lower court's interpretations of the five-year review and changed circumstances review provisions.[7]

### C. The Lower Court Considered All of Erdemir's Arguments and Properly Rejected Them

In light of the foregoing, the Court of International Trade was correct to grant the Commission's motion to dismiss for lack of subject matter jurisdiction. Erdemir nonetheless argues that the lower court erred in three ways, none of which reflect an accurate understanding of the statute. Erdemir argues that the court erred: (1) by not recognizing that the statute allegedly affords retrospective considerations in certain circumstances; (2) by not recognizing that CCRs and five-

---

[7] Erdemir had an opportunity to obtain the relief it seeks in this action by timely filing an appeal of the Commission's injury determination concerning dumped imports from Turkey and moving to stay that appeal until its challenge of Commerce's final antidumping determination was resolved. Appx0040. Erdemir failed to avail itself of this opportunity even though it filed a protective appeal of Commerce's final countervailing duty determination. Appx0040. Erdemir's prior litigation decisions do not prevent this matter from being moot. *See*, *e.g.*, *Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 731 (7th Cir. 2006) ("We have declined to determine that a controversy falls under the 'capable of repetition, yet evading review' exception when it is the plaintiff's procedural missteps that prevent judicial review.").

year reviews allegedly require distinct analysis; and (3) by not recognizing the Commission allegedly failed to afford full consideration of the issues Erdemir raised in its CCR request in the five-year review. This Court's *de novo* review should result in an affirmation of dismissal for lack of subject matter jurisdiction, for the reasons set out above. Erdemir's attacks on the lower court's reasoning should be rejected, as explained below.

1. **The Lower Court Correctly Found that the Statute Does Not Authorize Retroactive Changes to Original Determinations in Changed Circumstances Reviews**

Erdemir concedes that the general rule, as articulated in the SAA, is that Congress intended to preclude challenges to Commission determinations based on subsequent changes to the dumping margins. Erdemir Br. at 14 (citing SAA at 851). Erdemir claims, however that the circumstances in this proceeding are "precisely" those for which the SAA provides an exception permitting Commission review. But whether or not Commerce's redetermination finding Colakoglu's margins to be *de minimis* falls within the exception for recalculations of the dumping margin, which it does not, Erdemir is simply wrong in its understanding that any type of CCR—including one that falls within the recalculated margins exception—can be retroactive.

To the contrary, nothing in the statute or the SAA supports Erdemir's view that a backward-looking correction or change to an original determination is

contemplated by the SAA's reference to the availability of a Section 751(b) review in certain circumstances.

In fact, Erdemir's argument is contradicted by section 751(b) on its face, as well as by the SAA's discussion of CCRs, at 878.

The SAA states that:

> Amended section 751(b) also applies a new substantive standard, which is consistent with current Commission practice. In the case of an antidumping or countervailing duty order or finding or a suspended investigation, the Commission must determine whether revocation of the order or finding, or termination of the suspended investigation, is likely to lead to continuation or recurrence of material injury.

SAA at 878.

The language of the statute itself likewise states that the Commission's CCR of an antidumping order must "determine whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury[.]" 19 U.S.C. § 1675(b)(2)(A). The statute also specifies the factors the Commission is to consider in both five-year and changed circumstances reviews when it determines whether revocation of the order is likely to lead to continuation or recurrence of material injury. 19 U.S.C. § 1675a(a). The factors focus on the likely effects of the subject imports upon revocation of the order and do not allow for modification of the original determination. In this way, the statute and the SAA are explicit that

the Commission's reviews, whether they be CCRs or five-year reviews, must be forward-looking, focusing on what is likely to occur if the order is revoked.

Further contrary to Erdemir's assertion, the statute on its face indicates that, in response to a CCR determination, Commerce may only revoke an order prospectively. The statute states that, after a CCR, "[Commerce] may revoke, in whole or in part, a countervailing duty order or an antidumping duty order . . . ," 19 U.S.C. § 1675(d)(1), and that "a determination under this section to revoke an order . . . shall apply with respect to unliquidated entries of the subject merchandise which are entered, or withdrawn from warehouse, for consumption on or after the date determined by [Commerce]." *Id*. at 1675(d)(3). Thus, neither the statute nor the SAA contemplate a backwards-looking analysis or the revocation of the order *ab initio* in the context of a section 751(b) review as urged by Erdemir.

Erdemir's reasoning is all the more misplaced given that it would turn the purpose of a CCR on its head, providing a better remedy for what Erdemir itself agrees is, at best, an exception to the general rule that changes in dumping margins should not generally be considered sufficient to warrant a CCR. Under Erdemir's proposal, the statute would actually go beyond allowing an "exception" and allow a super-exception under which CCRs involving dumping margin changes would be entitled to a wholly different test from the prospective "likely" standard applicable

to all other CCRs.  Notably, Erdemir cites to nothing in the statute—because there is no such provision in the statute—that lays out any such unique test for certain types of CCRs.  Moreover, as Erdemir itself recognizes, the terms of a statute are to be construed to avoid treating terms as surplusage.  Erdemir Br. at 16.  Yet, Erdemir's interpretation would do just that; in a certain class of cases it would render superfluous 19 U.S.C. § 1675(b)(2) (discussing the standard for Commission review in a CCR) , and would instead make review in those types of cases exactly the same as a reconsideration of the original investigation.

Consistent with the actual purpose of a CCR, the Commission's Federal Register notice inviting comments on whether to institute a CCR explained that "[t]he purpose of the proposed review is to determine whether revocation of the existing antidumping duty order on imports of hot-rolled steel flat products from Turkey *is likely to lead to* continuation or recurrence of material injury." Appx3172 (emphasis added).  Furthermore, in response to a CCR request based on revisions by Commerce to its final antidumping duty determination that resulted in the exclusion of a subject producer and reduction of antidumping margins for non-specified firms, the Commission's request for comments explained that:

> The purpose of the proposed review investigation is to determine whether an industry in the United States would be materially injured, or would be threatened with material injury, or the establishment of an industry in the United States would be materially retarded, by reason of imports of ceiling fans from China if the existing antidumping

order on such merchandise were to be modified or revoked.

*Ceiling Fans from the People's Republic of China, Request for Comments*

*Concerning the Institution of a Section 751(b) Review Investigation*, 59 Fed. Reg.

30,036 (June 10, 1994).

Against this background, the lower court emphasized another SAA passage

undermining Erdemir's position that CCR relief is retroactive:

> In final staggered investigations, the Commission is to use Commerce's final margins as to the pending investigations. For other investigations for which cumulation is appropriate, the Commission is to use the most recent dumping margin issued by Commerce at the time the Commission closes its record. This precludes challenges to a Commission determination on the basis that Commerce later modifies the original dumping margin. Changes in the original margin could occur due to further proceedings in staggered investigations, corrections of ministerial errors, reconsideration of a determination, or judicial remand. Absent this provision, Commission determinations could be subject to repeated requests for reconsideration or judicial remands. The finality of injury determinations would be seriously compromised if the Commission were required to amend or revisit its determination each time the administering authority modified its dumping margin. The Commission, however, may conduct a changed circumstances review of its determination *pursuant to Section 751(b)* on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes it is warranted.

Appx0028 (emphasis in original by CIT) (quoting SSA at 851).

As the court highlighted, the reference to "pursuant to Section 751(b)" refutes Erdemir's interpretation about a retrospective inquiry because that statutory language, which unambiguously specifies the nature of the relief, is prospective. Thus, the very SAA language Erdemir cites to support a supposed exception in the case of a change to the dumping margin in an original investigation makes clear that, even in that circumstance, the Commission conducts a prospective inquiry pursuant to 19 U.S.C. § 1675(b) to "determine whether revocation of the order or finding is likely to lead to continuation or recurrence of material injury[.]" 19 U.S.C. § 1675(b)(2)(A).

In this same vein, the lower court cited other SAA language leaving no question that CCRs, like five-year reviews, are prospective inquiries. As support, the CIT cited a passage from the SAA contrasting CCRs and five-year reviews with critical circumstances reviews stating:

> If Commerce determines that critical circumstances exist, then the Commission determines whether retroactive duties are necessary to prevent recurrence of material injury. . . . Critical circumstances determinations focus on whether an order's effectiveness is undermined by increasing shipments prior to the effective date of the order. *Changed circumstances and five-year reviews focus on likely developments if an order is revoked.*

Appx0027 (quoting SAA at 876-877) (alterations and emphasis by the CIT)).

The CIT found additional support for the prospective nature of the inquiry in CCRs and five-year reviews in the portion of the SAA discussing the likelihood standard for both in tandem:

> [S]ection 752 elaborates on the standards for determining whether revocation of an order or termination of a suspended investigation would be likely to lead to a continuation or recurrence of injury, countervailable subsidies, or dumping. The determination called for in these types of reviews is inherently predictive and speculative.

Appx0027 (quoting SAA at 883) (alteration by the CIT).

Erdemir cites three cases which supposedly support its interpretation about an exception for a retrospective inquiry. Erdemir Br. at 14-15 (*citing LG Elecs., Inc. v. U.S. Int'l Trade Comm'n,*, Slip Op. 14-8 at 2 (Ct. Int'l Trade 2014) , *available at* 2014 WL 260603; *Encon Indus. v. United States*, 18 CIT 867, 869, 870 n.2 (1994); and *Borlem S.A. Emoreedimentos Industriais v. United States*, 913 F.2d 933 (Fed. Cir. 1990)). Erdermir's assertion does not reconcile with the cases it cites – two of which actually stand for the principle that CCRs are prospective. In *Encon Industries*, the CIT stated that Section 751(b) was a "'statutory avenue [] of *prospective* relief available to plaintiff.'" *Encon Indus.*, 18 CIT at 869, 870 n.2 (cited in Erdemir Br. at 15) (emphasis added). *LG Electronics* also recognizes that a changed circumstances review does not provide retroactive relief. *See LG Elecs.*, 2014 WL 260603, at *3 (contrasting the relief available in an appeal of an original

ITC injury determination with the relief available in a CCR). Finally, there is no

inconsistency between the Commission's assertion in *Borlem* (which predated the

addition of five-year reviews to the statute) that a CCR examines events after the

imposition of an order with the position that a CCR provides prospective relief.

The Court in *Borlem* found that the Commission had the authority to reconsider its

determination when directed to do so by court order on judicial remand pursuant to

the CIT's power to remand a matter back to the agency under 28 U.S.C. §

2643(c)(1). See *Borlem*, 913 F.2d at 938. There is no such order from the lower

court here. Moreover, Section 2643(c)(1), was amended as part of the Uruguay

Round Agreements Act to make clear that the Commission cannot reconsider its

final injury determinations based on changes in dumping calculations after the

closing of the record in the original investigations.

## 2. The Lower Court Properly Considered Applicable Case Law

As the Court of International Trade explained in this case, this was not the

first time it was confronted with the mootness issue raised in this case. Rather, the

lower court carefully reviewed and relied on the previous decision of another CIT

judge in a previous case presenting a similar issue—*Eveready*—and concluded that

the reasoning of the early case was sound and apt. It is not clear whether Erdemir

challenges the soundness of the *Eveready* reasoning, but it does (remarkably) claim

that *Eveready* is "inapposite." Erdemir Br. at 16. Erdemir argues that the lower

court misread *Eveready* and in so doing interpreted the statute in violation of the statutory cannon of interpretation against surplusage. *Id*. at 16-17. Erdemir's argument ignores that Congress set forth in 19 U.S.C. § 1675a identical factors for the Commission to examine in CCRs and five-year reviews. Indeed, Erdemir accepts that "[i]n both a CCR and a five-year review, the Commission considers whether the revocation of an order would likely lead to a continuation or recurrence of material injury." Erdemir Br. at 17 (citation omitted).

While there are differences between the two types of reviews, they do not relate to the analysis the statute directs the Commission to perform. Indeed, "'[t]he only difference of significance in the two types of reviews'" is that the party seeking a changed circumstances review "'bear[s] the burden of persuasion.'" Appx0025 (n.14) (citing *Eveready*, 77 F. Supp. 2d at 1330).[8]

---

[8] Other differences include the automatic institution of five-year reviews at certain intervals versus institution of CCRs at the Commission's initiative or at the request of an interested party. *Compare* 19 U.S.C. § 1675(b) *with* 19 U.S.C. § 1675(c).

We note that Erdemir incorrectly cited Commerce's regulations governing CCRs to support its errant claim that there are distinctive procedural differences between CCRs and five-year reviews. *See* Erdemir Br. at 22 (*citing* 19 C.F.R. § 351.216). There are not. The procedures governing the conduct of CCRs are found at 19 C.F.R. § 207.45(d), which incorporates by reference the procedures the Commission uses in the final phase of an original investigation. Thus, CCRs and full five-year reviews have the same procedural components, including the issuance of questionnaires, a staff report, briefing, and a hearing.

Erdemir argues that the factual underpinnings of the request for the CCR in *Eveready* (changes in market conditions) and those in this case (Commerce's recalculation of the dumping margin) render *Eveready* inapposite here. Erdemir Br. at 20. But the rationale in *Eveready* in no way turns on the specific facts that were cited in support of warranting a CCR. Rather, the holding was based on the procedural posture of the case, *i.e.,* that the Commission's initiation of a full five-year review had rendered the CCR moot, because the statute required the Commission to ask the same question in both types of review: whether revocation of the antidumping or countervailing duty order would be/is likely to lead to continuation or recurrence of material injury. *See Eveready*, 77 F. Supp. 2d at 1334; *Compare* 19 U.S.C. § 1675(b) *with* § 1675(c).

Erdemir fails to account for the statutory reality that whether the change affected the past or the present is immaterial. Indeed, because, as the CIT in *Eveready* highlighted, "[t]he purpose of both reviews is to determine whether revocation of any antidumping order is likely to lead to the continuation or recurrence of material injury, and in making this determination the statute provides that the Commission will *consider the same criteria*." 77 F. Supp. 2d at 1334 (emphasis added). Erdemir mischaracterizes Commerce's recalculation of Colakoglu's dumping margin as undermining the "veracity" of the information relied upon by the Commission. Erdemir Br. at 20. The Commission relied on

truthful and accurate information, the court reviewing Commerce's antidumping determination merely disagreed with certain of the agency's calculations. *Erdemir*, 435 F. Supp. 3d at 1380 (summarizing reasons for remands).

Finally, Erdemir asserts that the lower court erred because it failed to acknowledge "an important distinction between CCR[s and five-year reviews]" in that Erdermir requested "individual consideration of the AD order on imports from Turkey," and the Commission, therefore, was limited to considering only Turkey. Erdemir Br. at 22. Contrary to Erdemir's assertion, the lower court not only acknowledged this distinction, it affirmatively explained how the statute refuted Erdemir's argument:

> The Commission may cumulatively assess the volume and effect of imports of the subject merchandise from all countries with respect to which reviews under section 1675(b) or (c) of this title were initiated on the same day, if such imports would be likely to compete with each other and with domestic like products in the United States.

Appx0030 (citing 19 U.S.C. § 1675a(a)(7) and *Eveready*, 77 F. Supp. 2d at 1332). In the five-year review, the Commission exercised its authority to cumulate subject imports from Turkey with those from other subject countries.[9] The fact that

---

[9] As discussed above, the Commission cumulated subject imports from Turkey with those from Australia, Japan, the Republic of Korea, the Netherlands, and the United Kingdom. The Commission did not cumulate subject imports from Brazil, but that is not at issue in Erdemir's appeal.

Erdemir only requested a CCR of the order on Turkey is irrelevant because the Commission can self-institute a CCR pursuant to 19 U.S.C. § 1675(b) and, thus, Erdemir's contention that the Commission could only consider Turkey is incorrect.[10]

### 3. Erdemir Did Not File a Valid CCR Request Until After the Commission Instituted the Five-Year Review

Erdemir's claim that the Commission intentionally delayed the initiation of a CCR is without merit. Erdemir Br. at 17-18. As an initial matter, Erdemir did not raise this issue in its complaint, and therefore has waived any allegations about delay or noncompliance with the Commission's rules. Compl., Appx1411-1422.

As the lower court found, Erdemir's "letters of May and July 2020 were neither properly filed nor sufficient requests for a CCR." Appx0033. The lower court found that Erdemir had not properly filed a sufficient request for a CCR until September 10, 2021, Appx0033-0034, which was after the Commission had instituted the five-year review on September 1, 2021. Appx3172. Consequently, Erdemir cannot fault the Commission for delaying the institution of a CCR until

---

[10] Indeed, were Erdemir's interpretation correct, that by requesting a CCR, an interested party could force the Commission to limit its consideration to only one country, it would eviscerate the protection Congress provided to the domestic industry to prevent against the "hammering effect" of imports from multiple countries. *See Nucor Corp. v. United States*, 601 F.3d 1291, 1296 (Fed. Cir. 2010).

after the institution of a five-year review when Erdemir had never filed a valid request.

Erdemir also faults the Commission for delaying the decision to decline to initiate a CCR based on Erdemir's September 10, 2021 CCR request. However, the Commission has the authority under 19 C.F.R. § 207.45(c) to extend the institution period, and it exercised that authority. Appx0040 (n.2). Nonetheless, the lower court faulted the Commission, stating its "failure to respond in a more timely manner to plaintiff's [September 10] CCR request and then to waive perfunctorily the period for response specified in its regulation was suboptimal." Appx0034. However, the CIT found that the Commission had waived the 45-day institution period pursuant to 19 C.F.R. § 207.45(c) and had informally communicated with Erdemir's counsel; thus, the CIT concluded that the delay was, "at most harmless error," because "none of the Commission's actions impaired plaintiff's opportunity to be heard." Appx0035. While the Commission's response time may have been "suboptimal," the Commission heard Erdemir's arguments and responded to them in full.

### 4. As the Lower Court Correctly Found, the Commission Considered All of the Issues Raised in Erdemir's CCR Request

Erdemir contends "[t]he CIT's determination that Erdemir received full consideration in the sunset review of the issues raised in its CCR request is

unfounded." Erdemir Br. at 22. According to Erdemir, the Commission in its five-year review did not: 1) grapple "with the question as to the effect of Commerce's remand []determination with respect to Colakoglu on the basis for the issuance of the AD Order" and 2) exclude Colakoglu's imports "for portions of analysis." *Id*. at 23. Erdemir's assertions are not borne out.

The Commission addressed Erdemir's first claim in both the Five-Year Review Determination and in the Final CCR Decision. In the Five-Year Review Determination, the Commission responded:

> We note that in asserting that subject imports from Turkey would likely have no discernible adverse impact in the event of revocation, Erdemir has raised several arguments concerning the Commission's negligibility determination in the original antidumping duty investigation with respect to subject imports from Turkey. It contends that the Commission should revisit that determination either in these reviews, in a changed circumstances review, or in proceedings outside of these reviews and the Commission has addressed them there. *Five-year reviews are prospective in nature and therefore do not accommodate reconsideration of an original determination. See* 19 U.S.C. § 1675(c)(1)(C).

Appx0757 (n.298) (citations omitted and emphasis added).

In the Final CCR Decision, the Commission responded as follows:

> [T]he result that Erdemir seeks – reexamination of the Commission's original negligibility finding – is not possible in a changed circumstances review because negligibility is not a factor for the Commission to consider under the statute in a in a changed circumstances review. A changed circumstances review involves a forward-

40

> looking inquiry that considers whether in view of changed circumstances an order is no longer needed to prevent the continuation or recurrence of material injury; it does not provide an opportunity for the Commission to reconsider and amend its original injury determination. *Compare* 19 U.S.C. § 1675a(a) *with* 19 U.S.C. § 1673d(b)(1) & 1677(24).

Appx0039.

Consequently, there is no merit to Erdemir's claim that the Commission did not consider its argument about the effects of Colakoglu's exclusion; indeed, the Commission considered and rejected it in both the CCR and the five-year reviews.

Erdemir makes a new claim about the alleged inclusion of Colakoglu's imports in Table IV-4 of the Staff Report (U.S. imports in 2021, by source and border of entry). Erdemir did not raise this argument before the Commission or at the CIT; thus, the Court should consider it waived.[11] *See Corus Staal, B.V. v. United States*, 502 F.3d 1370, 1378-79 n.4 (Fed. Cir. 2007) (citing cases). In any event, the Commission did not rely on these data, and relied instead on U.S. producer and U.S. importer questionnaire data (which did not include Colakoglu) as well as data from the original investigation. Appx0756 (n.293), Appx1001-1008.

---

[11] Erdemir cites page IV-20 of the Staff Report which is merely where the note to Table IV-4 appears explaining that the table includes unadjusted U.S. import statistics. *See* Appx1017-1020.

For the reasons discussed above, the lower court correctly dismissed Erdemir's complaint because the Commission's institution of a full five-year review mooted Erdemir's CCR request and therefore the lower court was correct in finding that it lacked subject matter jurisdiction.

### III. Alternatively, This Court Should Affirm the Dismissal of this Case on Grounds that Erdemir Failed to State a Claim Upon Which Relief Can Be Granted

In the alternative, even if Erdemir can overcome the subject matter jurisdictional hurdle of mootness, its claims were also rightly dismissed under Court of International Trade Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In *Sioux Honey Association v. Hartford Fire Insurance Co.*, 672 F.3d 1041 (Fed. Cir. 2012), the CIT had dismissed certain claims for lack of subject matter jurisdiction; the Federal Circuit affirmed the dismissal of these claims, but on the alternative basis that the claims must be dismissed under Fed. R. Civ. P. 12(b)(6).[12] *Id.* at 1064-65 & n.9 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In so doing, this Court explained that affirmance of the trial court's decision to dismiss was still appropriate, citing *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010), in which the Supreme Court likewise had affirmed a judgment dismissing claims for lack of subject matter

---

[12] CIT Rule 12(b)(6) tracks Fed. R. Civ. P. 12(b)(6) verbatim.

jurisdiction even though the Supreme Court found that these claims must be dismissed under Fed. R. Civ. P. 12(b)(6) instead. *Sioux Honey Ass'n*, 672 F.3d at 1064-65 n.9.

In this case, Erdemir's complaint is deficient and – irrespective of subject matter jurisdiction – should be dismissed because it fails to plead facts that state a claim to relief that is plausible on its face, as required under *Twombly*. Specifically, Erdemir asserts that the Commission "has the authority to conduct a changed circumstances review for purposes of retroactive correction of errors in the AD negligibility determination in the original [hot-rolled steel] investigation." Appx1421 (Compl. ¶ 37). This assertion is incorrect. The Commission is unable to provide any retroactive relief in a changed circumstances review because the statute allows only for prospective relief, *i.e.*, revocation of the order if such revocation is not "likely to lead to continuation or recurrence of material injury." 19 U.S.C. § 1675(b)(2)(A) & 3(A). As the Court of International Trade noted aptly in *Eveready*: "there is no retroactive provision when the Commission revokes an order pursuant to a changed circumstances review." *Eveready*, 77 F. Supp. 2d at 1330 n.6. The Commission in a changed circumstances review cannot make retroactive redeterminations or corrections in the original hot-rolled steel antidumping investigation involving Turkey, let alone terminate or issue a negative injury determination with respect to that investigation.

If the Court were to remand to the lower court to grant Erdemir the relief it seeks and direct the Commission to "conduct a CCR to reconsider the negligibility decision in the AD injury investigation," the Commission's remand determination would not result in a determination that hot-rolled steel imports from Turkey are negligible, as Erdemir requests. Appx1422 (Compl. at Prayer for Relief ¶ 3). This is because, as the Commission explained above, it is required to assess whether revocation of an order "would be likely to lead to a continuation or recurrence of material injury within a reasonably foreseeable time." 19 U.S.C. §§ 1675(b)(1)(A) & 1675a(a)(1). The CCR provision of the statute directs the Commission to assess whether: (i) the likely volume of the subject imports will be significant if the order is revoked, (ii) whether the subject imports are likely to significantly undersell the domestic merchandise and significantly depress or suppress domestic prices if the order is revoked, and (iii) whether the subject imports will have a significant impact on the domestic industry, taking into account the trade and financial indica of the industry's condition. 19 U.S.C. § 1675a(a)(1). The statute does not list negligibility as a factor for the Commission to consider. *Id.*

Given the statutory scheme, even if the Commission were to conduct a CCR of the antidumping duty order on imports from Turkey, it would simply perform the same analysis that it already undertook in the five-year review of the hot-rolled steel orders. As explained above and affirmed by the Court of International Trade,

the applicable legal standards in a CCR are identical to those of a five-year review, and the Commission has already undertaken the latter analysis. Therefore, the Court should dismiss Erdemir's complaint pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, the Commission respectfully requests that this Court affirm the trial court's judgment.

Respectfully submitted,

*/s/ Dominic L. Bianchi*
Dominic L. Bianchi
General Counsel

*/s/ Andrea C. Casson*
Andrea C. Casson
Assistant General Counsel for Litigation

*/s/ Ravi D. Soopramanien*
Ravi D. Soopramanien
Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW
Washington, DC 20436
Tel: (202) 205-3492
Ravi.Soopramanien@usitc.gov

*Counsel for Defendant-Appellee*
*U.S. International Trade Commission*

February 28, 2025

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.      This brief complies with the type-volume limitation of Fed. Cir. R. 32(b). The brief contains 10,133 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

*/s/ Ravi D. Soopramanien*
Ravi D. Soopramanien

*Attorney for Defendant-Appellee*
*U.S. International Trade Commission*

February 28, 2025