2024-2242

# United States Court of Appeals
# for the Federal Circuit

EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,

*Plaintiff-Appellant,*

v.

INTERNATIONAL TRADE COMMISSION, UNITED
STATES STEEL CORPORATION, CLEVELAND-CLIFFS
INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES
LLC, NUCOR CORPORATION,

*Defendants-Appellees.*

Appeal from the United States Court of International Trade,
Case No. 1:22-cv-00350-TMR, Hon. Judge Timothy M. Reif

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

CHRISTINE M. STREATFEILD
JUSTIN R. BECKER
BAKER & MCKENZIE LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006
(202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiff-Appellant*

April 4, 2025

# TABLE OF CONTENTS

*Page*

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................3

I. ERDEMIR'S CLAIMS ARE NOT MOOT .....................................3

  A. The Legal Frameworks for CCRs and Sunset Reviews Differ
    and Require Distinctive Analyses.....................................................4

  B. The Statute Affords Retrospective Consideration of an Original
    Determination in Certain Circumstances Such As These .............9

    1. The Commission May Conduct a CCR with Retrospective
      Considerations .............................................................9

    2. Commerce May Afford Retroactive Relief In Response to
      An Affirmative CCR .............................................................13

  C. Case Law Fully Supports Erdemir's Position .................................15

II. THE COMMISSION FAILED TO AFFORD FULL
    CONSIDERATION OF THE ISSUES RAISED BY ERDEMIR ....................24

III. THE COURT CAN GRANT RELIEF TO ERDEMIR.....................................27

CONCLUSION.....................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Administrative Determinations**

*Certain Metal Lockers and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Reviews, and Revocation of the Antidumping and Countervailing Duty Orders, in Part*, 89 Fed. Reg. 22377 (Dep't of Commerce Apr. 1, 2024) ...........................................................14, 29

*Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022) ........................24

*Malleable Cast Iron Pipe Fittings from Brazil, Japan, Korea, Taiwan, and Thailand*, Inv. Nos. 731-TA-278-280 (Review) and 731-TA-347-348 (Review), USITC Pub. 3274 (Feb. 2000) ...........................................27

**Cases**

*Borlem S.A.- Empreedimentos Industriais v. United States*, 913 F. 2d 933 (Fed. Cir. 1990) ....................................................18, 19

*Consolidated Fibers, Inc. v. United States*, 574 F. Supp. 2d 1371 (Ct. Int'l Trade 2008)................................15, 19

*Encon Indus. v. United States*, 18 CIT 867 (1994) ..............................................................16, 17, 19

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2243 (Fed. Cir. 2024).......................................................1

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2249 (Fed. Cir. 2024).......................................................1

*Eveready Battery Co. Inc. v. United States*, 77 F. Supp. 2d 1327 (Ct. Int'l Trade 1999)................................*passim*

*LG Elecs., Inc. v. U.S. Int'l Trade Comm'n,*
  38 CIT 103 (2014) ...........................................................16, 17, 18, 19

*Parkdale International Ltd. v. United States*,
  581 F. Supp. 2d 1334 (Ct. Int'l Trade 2008) .....................................14

*Usinor Industeel, S.A., v. United States*,
  26 CIT 467 (2002) .......................................................................27

*Usinor Industeel, S.A. v. United States*,
  27 CIT 238 (2003) .......................................................................16

**Statutes**

19 U.S.C. § 1675(b) ..........................................................*passim*

19 U.S.C. § 1675(b)(2).......................................................6

19 U.S.C. § 1675(b)(2)(A) .................................................*passim*

19 U.S.C. § 1675(b)(3)........................................................6, 12, 20

19 U.S.C. § 1675(b)(3)(A) ..................................................6, 8, 26, 28

19 U.S.C. § 1675(b)(4).......................................................6

19 U.S.C. § 1675(c) .........................................................4, 5, 6

19 U.S.C. § 1675(c)(2).......................................................6

19 U.S.C. § 1675(c)(3).......................................................6

19 U.S.C. § 1675(c)(4).......................................................6

19 U.S.C. § 1675(c)(5).......................................................6

19 U.S.C. § 1675(c)(6).......................................................6

19 U.S.C. § 1675(c)(7).......................................................6

19 U.S.C. § 1675(d) .........................................................6, 29

19 U.S.C. § 1675(d)(1).......................................................7

19 U.S.C. § 1675(d)(2).......................................................7

19 U.S.C. § 1675(d)(3)................................................................13

19 U.S.C. § 1675a ...........................................................6, 21, 26

19 U.S.C. § 1675a(a)(1) ........................................................4

19 U.S.C. § 1675a(a)(5) ...................................................21, 26

19 U.S.C. § 1675a(a)(6) ........................................................27

19 U.S.C. § 1675a(a)(7) ........................................................27

## Other Authorities

*Uruguay Round Agreements Act: Statement of Administrative Action*,
   H.R. Doc. No. 103-316, vol. 1, 807 (1994), *reprinted in* 1994
   U.S.C.C.A.N. 4040 .........................................................*passim*

# INTRODUCTION

The overarching issue in this case and companion cases *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2243 (Fed. Cir. 2024) and *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC*, Case No. 24-2249 (Fed. Cir. 2024), is the same – namely, can the U.S. International Trade Commission (the "Commission") turn a blind-eye to facts that, if properly considered, would lead to a finding that subject imports of hot-rolled steel from Turkey had never caused, and otherwise will not lead to continuation or recurrence of, material injury? The Commission improperly refused to assess these facts through three separate actions filed by Plaintiff-Appellant Ereğli Demir ve Çelik Fabrikaları T.A.Ş. ("Erdemir").[1]

Relevant here, Erdemir availed itself of a request for "changed circumstances," through which the Commission would consider crucial, subsequent developments that affected its final determination in the underlying antidumping duty ("AD") investigation. Specifically, the law provides for a changed circumstances review ("CCR") of an original injury determination when the U.S. Department of Commerce ("Commerce") recalculates a dumping margin as a result of litigation arising from an investigation, if the seeking party demonstrates that such changed circumstances may warrant revocation of an AD order.

---

[1] As noted in Erdemir's reply briefs in the companion cases, filed concurrently with this brief, this appeal should be considered independent of any consideration as to whether Erdemir did or did not seek appeal of the original investigation.

That is precisely what Erdemir sought here. The changed circumstances are a change to the factual foundations of the Commission's original injury determination. In the original investigation, the Commission found that Turkish imports of subject merchandise were not negligible ("negligible" meaning, quantitatively below the statutory limit required to issue an order). Subsequent litigation resulted in the universe of Turkish subject imports falling below the statutory threshold for negligibility. As a result of the subsequent litigation, imports from Turkey were in fact legally negligible and would not have a discernible impact on the U.S. industry. These fundamental factual changes are changed circumstances demonstrating that revocation of the AD order would not lead to continuation or recurrence of material injury.

Defendant-Appellees, Steel Dynamics, Inc., SSAB Enterprises LLC, Cleveland-Cliffs Inc., Nucor Corporation, and the United States Steel Corporation (collectively "Domestic Interested Parties" or "DIPs") and the Commission (collectively, with the Domestic Interested Parties, the "Appellees") now try to impede consideration of the changed circumstances and prevent Erdemir from exercising its legal rights. They do so by relying on the lower court's incorrect findings that a wholly separate administrative process (*i.e.*, a five-year review, or "sunset review"), conducted pursuant to a legal framework and analyses distinctive to that which are applicable to CCRs, is duplicative to a CCR; and, because the

Commission conducted a sunset review, it rendered Erdemir's CCR claims moot.

Appellees ground their position upon the fact that both reviews require the Commission to determine whether revocation of an order is likely to lead to continuance or recurrence of material injury. This position is meritless because it fails to account for distinctions between CCRs and sunset reviews, and how, when applying the revocation standard to the facts in accordance with these distinctions, the results between each review may differ.

As a matter of law, Erdemir's CCR was not duplicative of the sunset review, and this Court should overturn the lower court's decision and remand this case to the Commission for further consideration of the CCR.

## ARGUMENT

Appellees defend the lower court's ruling on the grounds that: (1) the Commission's sunset review mooted Erdemir's CCR claims in this proceeding because in both reviews, the Commission considers whether revocation of the AD order on Turkey would likely lead to the continuation or recurrence of material injury; (2) the Commission afforded Erdemir consideration of its claims raised in Erdemir's CCR request; and (3) Erdemir failed to state a claim for which relief could be granted. These arguments are meritless.

## I. ERDEMIR'S CLAIMS ARE NOT MOOT

Appellees' claims rest on the faulty premise that the legal framework

governing CCRs and sunset reviews are the same and that both reviews provide only for prospective analysis and prospective relief. However, the legal frameworks differ. The analysis during a CCR may, and in some instances *must*, be retrospective; and, the relief may be retroactive. The Commission's institution of a sunset review could not render the CCR request duplicative and therefore moot, and the lower court's dismissal on these grounds was not in accordance with law.

### A. The Legal Frameworks for CCRs and Sunset Reviews Differ and Require Distinctive Analyses

Appellees advance one primary argument:  that CCRs and sunset reviews require application of the same statutory standard. *See generally Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. USITC et al.*, Case No. 24-2242, ECF No. 43 (Fed. Cir. Feb. 28, 2025) ("Commission Br."); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. USITC et al.*, Case No. 24-2242, ECF No. 42 (Fed. Cir. Feb. 28, 2025) ("DIP Br."). They cite the statute in support, as it requires the Commission to determine whether revocation of an order is "likely to lead to continuation or recurrence of material injury." *See* Commission Br. at 18-19, 25; DIP Br. at 16, 24 (citing 19 U.S.C. §§ 1675(b)(2)(A) & (c), 1675a(a)(1)).  Crucially, the standard as applied in each of the reviews is not the same.  This is confirmed by the differing legal frameworks that govern each review.

First, as explained in Erdemir's opening brief and reiterated here, the

construction of the statutory language for CCRs and sunset reviews differ.[2]  *See*

*Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. USITC et al.*, Case No. 24-2242, ECF

No. 34, at Section II.B (Fed. Cir. Nov. 20, 2024)  ("Erdemir Br.").

CCRs and sunset reviews are divided into two separate subsections under

section 1675.  *See* 19 U.S.C. §§ 1675(b) & (c).  Subsection (b) governs CCRs and

subsection (c) governs sunset reviews.  With respect to CCRs, subsection (b)(2)

states that when conducting a CCR, the Commission must determine whether

revocation of the order is likely to lead to continuation or recurrence of material

---

[2] The Commission's position suggesting that the standard as applied in CCRs and
sunset reviews is the same would render the two statutory schemes superfluous, in
violation of general principles of statutory construction.  *See* Erdemir Br. at 17-18.
In response to this argument, the Commission contends that Erdemir's
interpretation of the statutory language for CCRs would render it superfluous to
reconsideration proceedings.  *See* Commission Br. at 29-30.  The Commission
cites no statutory language governing reconsideration proceedings, including how
such proceedings must be conducted and how it would render Erdemir's
interpretation of section 1675(b) redundant or meaningless.  *See id*.  The
Commission's argument demonstrates a misunderstanding of this canon of
statutory interpretation.  There is no statutory scheme governing reconsideration
proceedings, and thus there is nothing that could be rendered superfluous, contrary
to the Commission's position.

The DIPs' response to this argument is equally unavailing.  They acknowledge that
the statutory subsections for CCRs and sunsets reviews are different, but attempt to
minimize this fact by stating that the factors that the Commission must consider
during these reviews are under the same statutory section.  *See* DIP Br. at 37
(citing 19 U.S.C. § 1675a).  Although the factors that must be considered are under
the same heading, this ignores other differences between the two reviews that are
apparent under the main statutory subsections of 1675(b) & (c).  As a result of
these differences, and as explained in this brief, although the same factors must be
considered, the analysis of the factors as applied differs between the two reviews.

injury. *See* 19 U.S.C. § 1675(b)(2)(A). Then, under (b)(3), the statute requires the Commission "during a review" to consider whether the party seeking revocation demonstrated that the changed circumstances were "sufficient to warrant such revocation." 19 U.S.C. § 1675(b)(3)(A). Read together, sections 1675(b)(2) and (3) mean that when conducting a CCR, the Commission must determine whether the changed circumstances demonstrate or support a finding that revocation would not likely lead to continuation or recurrence of material injury.

In contrast, section 1675(c) also states that the Commission must determine whether revocation would be likely to lead to continuation or recurrence of material injury, but in doing so does not give consideration to changed circumstances. The statute does, however, require that the sunset review analysis be conducted in accordance with the standards outlined in 19 U.S.C. § 1675a.[3] The language of the two subsections governing CCRs and sunset reviews thereby includes explicit differences in considerations that must be afforded.

<u>Second</u>, in addition to these differences, the standard relating to the potential outcome of the two reviews (*i.e.*, revocation) also differs. Revocation is governed by 19 U.S.C. § 1675(d). For CCRs, subsection (d) simply notes that Commerce may

---

[3] The statute, at 19 U.S.C. § 1675(c), also includes additional substantive provisions that govern sunset reviews that are inapplicable to CCRs under 19 U.S.C. § 1675(b). *Compare* 19 U.S.C. §§ 1675(c)(2)-(7) and 19 U.S.C. §§ 1675(b)(2)-(4).

revoke an order after such a review. *See* 19 U.S.C. § 1675(d)(1) ("The administering authority may revoke…a countervailing duty or an antidumping duty order…after review under subsection (a) or (b)."). However, subsection (d) has a special, separate provision for sunset reviews, which expressly notes that Commerce cannot revoke an order unless Commerce finds dumping or a countervailable subsidy would be likely to continue or recur and the Commission finds that material injury would be likely to continue or recur. *See* 19 U.S.C. § 1675(d)(2). The differing revocation standards further support a distinction between the two reviews and the relevant factors applicable to each.

Third, the distinctive nature of CCRs and sunset reviews is further affirmed by the Statement of Administrative Action, which stands as the legislative history for the provisions. *See Uruguay Round Agreements Act: Statement of Administrative Action*, H.R. Doc. No. 103-316, vol. 1, 807 (1994) ("SAA"), *reprinted in* 1994 U.S.C.C.A.N. 4040. The SAA explicitly provides for the Commission's assessment of circumstances in CCRs that are not contemplated in other reviews, including sunset reviews. The SAA states that the Commission "may conduct a changed circumstances review of its determination pursuant to Section 751(b) on the basis of recalculations by Commerce of the dumping margin in the original investigation, if the party seeking such review establishes it is warranted." SAA at 851, *reprinted in* 1994 U.S.C.C.A.N. at 4184.

The first clause (*i.e.*, "may conduct a changed circumstances review of its determination pursuant to Section 751(b)") means that review is of the Commission's original determination. The second clause (*i.e.*, "on the basis of recalculations by Commerce of the dumping margin in the original investigation"), means that the changed circumstances against which the original Commission determination is reviewed are Commerce's recalculated dumping margin from Commerce's original investigation. The third clause (*i.e.*, "if the party seeking such review establishes it is warranted"), relates to 19 U.S.C. § 1675(b)(3)(A), which explains that a party must prove a CCR is warranted by demonstrating that the changed circumstances may be sufficient to warrant revocation. When these three clauses of the SAA language are read together, they confirm that the Commission may review its original determination in light of Commerce's recalculated margins to determine whether the recalculation would cause the Commission to find that revocation is warranted. Indeed, it is precisely the intent of such a review, and the facts apply squarely here.

Revocation is warranted, as highlighted by Appellees, when the Commission finds that it would not likely lead to continuation or recurrence of material injury. *See* Commission Br. at 36. The SAA therefore expressly captures that in certain circumstances, Commerce's recalculated margins may affect the Commission's original determination in such a way that revocation is warranted. And these certain circumstances apply only to CCRs. Thus, the standard, though it may be the same

in both a CCR and sunset review, can be applied very differently between the two reviews.

## B. The Statute Affords Retrospective Consideration of an Original Determination in Certain Circumstances Such As These

Appellees further incorrectly insist that the legal standard precludes retrospective analysis and retrospective relief. *See* DIP Br. at 28-29. The language of the statute and SAA allow for, and in no way preclude, retrospective analysis and relief.

### 1. The Commission May Conduct a CCR with Retrospective Considerations

As an initial matter, to the extent the Commission in its brief characterizes Erdemir's claim as seeking retroactive changes to the original determination in this litigation, this characterization is wrong. *See* Commission Br. at 27-28 (claiming that "the statute does not authorize retroactive changes to original determinations in changed circumstances reviews."). Erdemir is ***not*** seeking retroactive changes to the original determination. Rather, Erdemir requests a CCR for the particular assessment of the impact of Commerce's revised dumping calculations since the Commission's original determination, and confirmation that such changes warrant revocation of the AD order. *See Letter from Erdemir to Commission re Changed Circumstances Review* (Sept. 10, 2021) (Appx0664). The Commission has undeniable authority to conduct this analysis, as discussed above. And should it find

revocation appropriate, as discussed below, Commerce has the authority to give the determination retroactive effect.

The statute and SAA authorize the Commission to consider the effects of subsequent events on its original determination in a CCR in limited circumstances. This is the precise purpose of CCRs. As explained above, those limited circumstances are instances when Commerce recalculates a dumping margin in the original investigation, as it has done in this case. *See* SAA at 851, *reprinted in* 1994 U.S.C.C.A.N. at 4184. Importantly, the SAA states that the Commission "may conduct a changed circumstances review *of its determination*…". *Id.* (emphasis added). The statute specifically identifies the Commission's past determination and affords the opportunity to revisit it. This is, by its very nature, retrospective.

In fact, in their response brief, the DIPs seem to concede that the Commission may conduct a retrospective analysis despite also arguing otherwise. The DIPs acknowledge this portion of the SAA "means that the Commission would consider the impact of the changed dumping margins…". DIP Br. at 30. In other words, the Commission may assess the impact of the changed dumping margins on its original determination.[4]

---

[4] The Domestic Interested Parties' position is not a model of clarity, and understandably so, as it conflicts with the statutory structure and SAA. Their statement, when read in conjunction with the text of the SAA, can only be interpreted to mean that the Commission must assess the impact on its original determination because the CCR would be a review of the Commission's original

Appellees nonetheless allege that this analysis during a CCR is not allowed (despite the legislative history and Domestic Interested Parties' seemingly contradicting statements), because the statutory standard uses conditional terms such as "likely to lead", 19 U.S.C. § 1675(b)(2)(A), and the SAA notes that CCRs "focus on likely developments if an order is revoked" and that such reviews are "inherently predictive and speculative." SAA at 877, 883, *reprinted at* 1994 U.S.C.C.A.N. at 4204, 4208. They interpret these conditional terms to mean that the CCR does not afford retrospective considerations. *See* DIP Br. at 24-25. Such limited interpretations of the standard and its conditional nature, however, are not accurate.

Foremost, nothing in the statute, regulations, or legislative history supports their interpretation. Appellees rely only on the conditional nature of the language used in the statute and SAA, but fail to identify any express language that suggests the Commission is precluded from analyzing its previous findings. *See* DIP Br. at 25. Moreover, this interpretation directly contradicts the SAA, which explicitly authorizes the Commission to review its original injury determination during a CCR in light of recalculated dumping margins by Commerce.[5] As noted above, a review of a previously completed determination is by nature retrospective.

_____

determination.

[5] The SAA also directly contradicts Appellees' position that CCRs and sunset reviews are prospective when discussing the conditions the Commission must consider when conducting these analyses. The SAA expressly requires review of pre-order conditions. *See* SAA at 884, *reprinted in* 1994 U.S.C.C.A.N. at 4206.

The DIPs attempt to alter the meaning of the SAA by characterizing it as simply a threshold question of whether to conduct a CCR. They allege that the changed circumstances can be considered in determining *whether* to conduct the CCR, but that the changed circumstances cannot be considered *when* conducting the CCR. *See* DIP Br. at 34. The statutory language contradicts this, and to find otherwise would lead to an absurd result whereby the Commission would have to ignore the statutory directive contained in section 1675(b)(3). It states: "During a review conducted by the Commission…the party seeking revocation of an order…shall have the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant such a revocation…". 19 U.S.C. § 1675(b)(3). The phrase "***during*** a review" means that the CCR is already initiated and underway.

Furthermore, when considering these changed circumstances during the review, the Commission must assess whether the party presenting them has demonstrated that those circumstances warrant revocation. *See* 19 U.S.C. § 1675(b)(3). In other words, the Commission must consider whether the changed circumstances would support a finding that revocation would not likely lead to continuation or recurrence of material injury. In sum, the statute clearly states that the Commission must consider the changed circumstances and their potential effect not only at the time of initiation, but also when conducting the review.

How can the Commission ignore the changed circumstances and their effects

while simultaneously determining whether "there are changed circumstances sufficient to warrant such revocation"? The Commission cannot. It must consider the changed circumstances during the review.

    2.  <u>Commerce May Afford Retroactive Relief In Response to An Affirmative CCR</u>

Appellees also wrongly assert that the statute precludes retroactive relief. To support this position, Appellees again rely on the conditional nature of the statutory language "likely to lead." *See* Commission Br. at 18, 28; DIP Br. at 23, 25-26. But reliance on this language is misplaced and conflates two different statutory schemes – namely, the statutory standard for when revocation is warranted with the statutory rules for when the revocation is applicable. These standards and rules are governed by two different statutory sections and two different government authorities. Whether revocation is warranted is governed by section 1675(b) and is determined by the Commission. When the revocation is applicable is governed by section 1675(d)(3) and is determined by Commerce. The conditional language under section 1675(b) does not appear in section 1675(d)(3) and therefore is irrelevant to the applicability of revocation.

Section 1675(d)(3) states that if Commerce determines to revoke an order, the revocation "shall apply with respect to unliquidated entries of the subject merchandise which are entered, or withdrawn from warehouse, for consumption on or after the date determined by the administering authority." 19 U.S.C. § 1675(d)(3).

The clause "on or after the date determined by the administering authority" indicates that Commerce has discretion as to the applicable date of revocation. And nothing in the statute precludes Commerce from giving it retroactive effect.

Indeed, Commerce has applied this discretion and given revocations retroactive effect as a result of other CCRs. *See, e.g., Certain Metal Lockers and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Changed Circumstances Reviews, and Revocation of the Antidumping and Countervailing Duty Orders, in Part*, 89 Fed. Reg. 22377 (Dep't of Commerce Apr. 1, 2024) ("*Metal Lockers from China*"). In *Metal Lockers from China*, Commerce revoked the AD and countervailing duty ("CVD") orders with respect to certain products dating back to December 1, 2021 – the date on which the AD/CVD orders were imposed. In doing so, Commerce explained that it can set the effective date of revocation to have retroactive effect because the statute affords Commerce discretion as to the applicable date of revocation. *See Metal Lockers from China*, 89 Fed. Reg. at 22377 ("Commerce has discretion to determine the applicable date of the determination pursuant to section 751(d)(3) of the Tariff Act of 1930…"); *see also Parkdale International Ltd. v. United States*, 581 F. Supp. 2d 1334, 1339-40 (Ct. Int'l Trade 2008) (noting that the statute affords discretion to set the effective revocation date – even in a sunset review).

Thus, if the Commission were to conduct a CCR and find that the changed

circumstances warranted revocation of an order, Commerce could then revoke the order with retroactive effect pursuant to its previously exercised discretion.

### C. Case Law Fully Supports Erdemir's Position

Case law supports Erdemir's position that the CCR it requested and the sunset review conducted by the Commission were not duplicative and would have afforded Erdemir distinct analyses had both been conducted, in contrast to Appellees' flawed arguments. Appellees try to distinguish the numerous decisions in support of Erdemir's position while simultaneously relying on one inapplicable case to support their own. However, their efforts are to no avail.

Appellees ignore, downplay, or even misrepresent multiple cases in which the courts have expressly identified a CCR as a possible avenue for relief in circumstances similar to or the same as those in this case. Appellees fail to acknowledge two cases in which the CIT stated that if the court issued a remand in an appeal of Commerce's original determination, and as a result of that remand, Commerce calculated a *de minimis* margin for an interested party, other interested parties could seek a CCR before the Commission once those amended margins become final. *See Consolidated Fibers, Inc. v. United States*, 574 F. Supp. 2d 1371, 1381-82 (Ct. Int'l Trade 2008) ("Should the Court issue a remand in the Commerce Appeal, and Commerce determines Ningbo Dafa's dumping margin to be *de miminis*, the appropriate relief is for the Plaintiffs to seek a changed circumstances review

once the amended margin becomes final."); *Usinor Industeel, S.A. v. United States*, 27 CIT 238, 238-40 (2003) ("{T}he court is not required to remand where intervening events occur. { } A party may alternatively seek a changed circumstances review under 19 U.S.C. § 1675(b)."). If the plaintiffs in these two cases had the right to seek a CCR as affirmed by the CIT, then Erdemir must also have this right.

Failing to address those two cases, the Commission instead attempts to distinguish the decisions in *LG Elecs., Inc. v. U.S. Int'l Trade Comm'n* and *Encon Indus. v. United States*, where the CIT identified CCRs as a viable avenue for relief in circumstances similar to those before this Court. 38 CIT 103 (2014); 18 CIT 867 (1994); *see* Commission Br. at 33-34. To distinguish these two cases, the Commission alleges that the courts did not recognize CCRs as a tool that provides retroactive relief. *See* Commission Br. at 33-34. The Commission based this interpretation on: (1) the court's phrasing in *Encon*, in which the CIT noted that a CCR, as compared to an appeal of the original determination, would be an "avenue of prospective relief"; and (2) the court's commentary in *LG Elecs.*, in which the CIT expressed its understanding that the plaintiff preferred seeking appeal of the original determination rather than waiting to pursue a CCR. *See id*.

The CIT never stated in either case that CCRs do not provide retroactive relief. With respect to the court's use of "prospective" in *Encon*, this indicates that the relief

would be sought after the imposition of an order as compared to an immediate appeal of the original litigation. *See Encon*, 18 CIT at 870 n.2. The timing of the CCR relief would be in the future, and therefore prospective. This is also supported by the CIT's statements in *LG Elecs*. In *LG Elecs.*, the plaintiffs likely preferred to pursue litigation of the original determination because it was immediate, whereas the CCR would be a separate review that would be conducted in the future. Plaintiffs in *LG Elecs.* would have needed to wait for the relief, which was not preferable. *LG Elecs.*, 38 CIT at 109 ("The court understands that the remedy provided by a changed circumstances review is not what Plaintiffs prefer.").

Moreover, the Commission's interpretation of the two cases, if true, would lead to nonsensical outcomes. The Commission seems to argue that a party can seek a CCR as a result of amended margins by Commerce, but the Commission then cannot use the amended margins as a basis to revoke an order because relief cannot be retrospective. But the whole point of a CCR is to determine whether an order should be revoked as a result of changed circumstances, and legislative history expressly acknowledges recalculations of Commerce's dumping margins in an original investigation to be a changed circumstance that could warrant revocation.

The DIPs also address *Encon* and *LG Elecs.*, but misrepresent the discussions in both cases. *See* DIP Br. at 31-33. Most egregiously, the DIPs state that the court in *LG Elecs.* found that a CCR precludes a review of the original determination. *See*

DIP Br. at 32-33 ("{T}his case plainly recognizes that a changed circumstances review does not allow the Commission to 'revisit' an original determination…").  In making this claim, the DIPs quote the *LG Elecs.* court's opinion summarizing a different case – *Borlem* – but they apply it completely out of context.  *See* DIP Br. at 32-33.  The quote relied upon has nothing to do with the Commission's authority in a CCR and its ability to consider how changed circumstances may affect its original injury determination, as expressly contemplated under the SAA.  The quote pertains only to the court's finding in *Borlem* that it had discretion during an appeal of the original investigation to order the Commission to revisit its injury determination in light of corrections to the record.  *See LG Elecs.*, 38 CIT at 109, n. 10.  The court's discretion to order remand during an appeal of an original investigation in no way supports the proposition that the Commission is precluded from reviewing its original determination during a CCR.  Indeed, this position is directly contradicted by the language of the SAA, as discussed above, which states that the changed circumstances review would be of the Commission's original determination.

Additionally, the DIPs completely disregard the court's statement in *LG Elecs.*, in which the court said: "If the Commerce Department Cases go as they hope, and timing does not allow for a *Borlem* claim {*i.e.*, an appeal of the original injury determination based on a corrected record}, Plaintiffs **can** pursue a changed

circumstances review." *LG Elecs.*, 38 CIT at 109 (*citing* 19 U.S.C. § 1675(b) and *Consolidated Fibers*, 574 F. Supp. 2d at 1381) (emphasis added). This is exactly the relief Erdemir seeks here. The Commerce cases went as Erdemir hoped, timing did not allow for a *Borlem* claim, and as such, Erdemir is entitled to pursue a CCR.

Similarly, the DIPs' summation of *Encon* is also inaccurate. They claim that *Encon* refutes Erdemir's position that it could have pursued a CCR because the court identified a CCR as a potential avenue of "prospective relief." *See* DIP Br. at 31. However, they fail to explain why the prospective relief (*i.e.*, relief that could be sought after the investigation) is not an avenue for Erdemir, and how the court's use of "prospective" can be interpreted in any way that would undermine Erdemir's position. In fact, there is no other way to interpret the court's statement other than to acknowledge a CCR as a potential avenue of relief for Erdemir.

Appellees rely heavily on one case – *Eveready Battery Co. Inc. v. United States*, 77 F. Supp. 2d 1327 (Ct. Int'l Trade 1999) *See* Commission Br. at 34-37; DIP Br. at 26-27. Here too, the precedent fails them. The findings in *Eveready Battery* are not applicable to the circumstances before this Court. *Eveready Battery* involved different factual circumstances and did not address the specific statutory considerations at issue here. *See* Erdemir Br. at 19-20.

Particularly, the court in *Eveready Battery* was not faced with and did not contemplate the question as to whether, in a CCR, the Commission may consider its

original determination when Commerce revises the dumping margins from its original investigation. 77 F. Supp. 2d at 1328. This question was not relevant in *Eveready Battery* because Commerce did not revise its original dumping margins. As such, the exception under the SAA which affords the Commission unique authorities during a CCR to consider its original determination in light of recalculated margins was not at issue. And as noted in the sections above, this unique exception stands as a major divergence between the analyses afforded during a CCR versus those in a sunset review.

Despite this fact, the Commission argues that the court in *Eveready Battery* found that the use of the same statutory criteria to determine whether revocation is warranted in both a CCR and a sunset review renders the overall analysis in both proceedings the same. *See* Commission Br. at 36. However, the Commission's position here ignores the statutory directive, specific to CCRs, that the Commission consider whether the changed circumstances warrant revocation. *See* 19 U.S.C. § 1675(b)(3).[6] This directive is not applicable to sunset reviews.

Nevertheless, even if the Commission applies the same criteria, as demonstrated above, CCRs and sunset reviews can be afforded different considerations when applying those criteria. And the statute also recognizes this

---

[6] Erdemir also finds the court's analysis in *Eveready Battery* to be flawed on this point. The court ignored the statutory directive identified in 19 U.S.C. § 1675(b)(3), too, in making its determination.

fact, too. Section 1675a(a)(5) explains that "{t}he presence or absence of any factor which the Commission is required to consider under this subsection shall not necessarily give decisive guidance with respect to the Commission's determination of whether material injury is likely to continue or recur…". In short, though the criteria must be considered, they do not necessarily provide decisive guidance.

If these criteria do not provide decisive guidance, then logically, other factors may also provide guidance. This provision therefore authorizes other considerations outside of the required criteria. Furthermore, no relevant statutory provisions limit the Commission to consider only the criteria identified in 19 U.S.C. § 1675a when making its determination in a CCR or sunset review. Thus, the fact that there are certain criteria the Commission must consider during a CCR and sunset review does not limit consideration only to those criteria.

Appellees also rely on the court's findings with respect to cumulation in *Eveready Battery* and the Commission's authority to self-initiate CCRs. *See* Commission Br. at 37-38; DIP Br. at 39. Erdemir does not disagree with Appellees that the Commission may conduct both CCRs and sunset reviews on a cumulative basis and that the Commission may self-initiate CCRs. However, the circumstances surrounding whether the Commission can conduct its analysis on a cumulative basis differ between the current case and those in *Eveready Battery*.

The authority to self-initiate a CCR still requires the Commission to have a

reason to do so.  The inherent authority does not mean that the Commission can do so without reason or support.  And for these reasons, the court's analysis regarding cumulation in *Eveready Battery* is not applicable.

Here, the Commission would have no basis to self-initiate a CCR with respect to any country other than Turkey based on the facts presented.  Erdemir requested a CCR because of changed circumstances that were unique to the Turkey AD Order. Erdemir presented to the Commission circumstances which demonstrated that the facts pursuant to which it based its original injury determination with respect to Turkish imports changed such that the Commission could now find revocation of the Turkey AD Order would not likely lead to continuation or recurrence of material injury.[7]  Neither Erdemir nor any other party, including the Commission, presented information with respect to imports from any other country subject to the related

_____

[7] The Commission claims that the facts it relied upon in its original determination were not erroneous as a result of Commerce's remand redetermination and recalculation of the AD margins for Çolakoğlu Metalurji A.S. ("Çolakoğlu").  It instead argues that the court simply disagreed with Commerce's dumping margin methodology, not the facts upon which Commerce relied when applying that methodology.  *See* Commission Br. at 36-37.  The Commission's framing of the argument, however, misses the point.  The erroneous fact that the Commission relied upon was the understanding that Commerce calculated an above-*de minimis* margin for Çolakoğlu and therefore found Çolakoğlu to have engaged in dumping. Commerce's recalculations resulted in a finding by Commerce that Çolakoğlu had a *de minimis* margin and therefore did not dump the subject merchandise.  The facts now demonstrate that Çolakoğlu did not dump the subject merchandise.  Yet, the Commission's original determination relies on opposite information, and thus is incorrect.

investigations.  The changed circumstances were therefore limited to Turkey.  In contrast, in *Eveready Battery*, the basis of the CCR was a structural change in the general market, which could affect all subject countries.  *See* 77 F. Supp. 2d at 1328 ("The changed circumstances in Eveready's request alleged that there had been structural changes in battery consumption.").  Had the Commission conducted a CCR in that instance, it may then have had reason to do so on a cumulative basis.

Without information demonstrating that circumstances changed with respect to the other countries, too, the Commission would have no basis to self-initiate a CCR with respect to those other countries.  As such, the Commission would have only been able to initiate a CCR with respect to imports from Turkey, and this analysis would not have been on a cumulative basis.  On this point alone, the analysis that the Commission would have undertaken during a CCR would have differed from the analysis it conducted during the sunset review.

Finally, in making its findings in *Eveready Battery*, the court expressly limited them to the case before it, stating that "{t}he court finds that ***in this case*** the sunset review of the antidumping order will provide the same relief as a changed circumstances review."  *Id*. at 1334 (***emphasis added***).  The court therefore recognized that its findings with respect to the duplicative nature of a CCR and sunset review were specific to the facts before it, and may not apply in all instances.  The conclusion in *Eveready Battery* indeed does not apply in all instances, as

demonstrated by the facts of this case currently before this Court.

## II. THE COMMISSION FAILED TO AFFORD FULL CONSIDERATION OF THE ISSUES RAISED BY ERDEMIR

In the sunset review and the Commission's response to Erdemir's CCR request, the Commission failed to address, in full, the issues raised by Erdemir, and Appellees' contentions to the contrary are without support.

As an initial counter to Erdemir's position that the Commission failed to afford full consideration of Erdemir's arguments, the Commission quotes language from its sunset review determination that, as pointed out by Erdemir in its opening brief, demonstrates that the Commission considered Erdemir's arguments in other reviews but explicitly did not do so in the sunset review. *See* Erdemir Br. at 22; *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545-546 and 731-TA-1291-1297 (Review), and 731-TA-808 (Fourth Review), USITC Pub. 5380 (Nov. 2022), at n. 298 (Appx0757). Again, the Commission quoted itself, when it stated:

> It contends that the Commission should revisit that determination either in these reviews, in a changed circumstances review, or ***in proceedings outside of these reviews and the Commission has addressed them there***. Five-year reviews are prospective in nature and therefore do not accommodate reconsideration of an original determination.

Commission Br. at 40 (emphasis added; internal citations omitted). The Commission in this statement explains that it cannot address Erdemir's claims in the

sunset review and instead addressed them in other proceedings. Appellees therefore cannot claim that the Commission addressed Erdemir's issues that it would have raised in a CCR during the sunset review because the Commission explicitly stated in the sunset review that it did not.[8]

Furthermore, the Commission conducted the sunset review on a cumulated basis, whereas the CCR requested would have been solely focused on imports from Turkey. As explained above, although the Commission has the authority to self-initiate CCRs, the Commission would not have been able to exercise this authority with respect to Erdemir's CCR request. The changed circumstances alleged were isolated to the Turkey AD Order. There were no changed circumstances with respect to the other subject countries and the Appellees fail to cite to any that would have reasonably led the Commission to self-initiate a CCR with respect to those countries. The fact that the Commission would not have conducted the CCR on a cumulated basis but *did* conduct the sunset review on a cumulated basis is just another demonstration of how the Commission failed to afford Erdemir full consideration of the issues raised.

---

[8] Moreover, as noted above, the SAA affords special dispensation for the Commission to consider its original injury determination in light of recalculations by Commerce of its original margins during a CCR that is not otherwise afforded in a sunset review. Consequently, even if the Commission attempted during the sunset review to fully address the issues that would have been raised by Erdemir pursuant to its requested CCR, it would still not have been able to address the specific issue allowed for under the SAA.

Appellees also assert that the Commission, in its response to Erdemir's CCR request, addressed Erdemir's claims in full because it explained that it does not have the authority to address issues pertaining to negligibility during a CCR. *See* Commission Br. at 44; DIP Br. at 41. However, neither the statute nor case law support this position.

Importantly, the statute does not preclude the Commission from considering negligibility during a CCR, particularly in light of amended dumping calculations by Commerce that may affect the Commission's original determination as contemplated under the SAA. Section 1675(b) simply requires that the Commission determine whether revocation is likely to lead to continuation or recurrence of material injury and whether the changed circumstances warrant revocation. *See* 19 U.S.C. §§ 1675(b)(2)(A) & (b)(3)(A). Section 1675a also outlines factors that the Commission must consider when conducting a CCR, but does not preclude any factors. Indeed, as highlighted above, section 1675a(a)(5) states that "{t}he presence or absence of any factor which the Commission is required to consider under this subsection shall not necessarily give decisive guidance with respect to the Commission's determination of whether material injury is likely to continue or recur within a reasonably foreseeable time if the order is revoked…." 19 U.S.C. § 1675a(a)(5). This statutory standard means that the factors outlined under section 1675a are not controlling.

Moreover, the statute ***does*** contemplate considerations of negligibility during a CCR. Section 1675a(a)(7) states that "{t}he Commission shall not cumulatively assess the volume and effects of imports of the subject merchandise in a case in which it determines that such imports are likely to have no discernible adverse impact on the domestic industry." 19 U.S.C. § 1675a(a)(6). The Commission has previously explained, and the CIT has quoted, that the "no discernible adverse impact" standard is to be read as "largely a negligibility provision without the use of a strict numerical test…". *Usinor Industeel, S.A., v. United States*, 26 CIT 467, 472 (2002) (quoting *Malleable Cast Iron Pipe Fittings from Brazil, Japan, Korea, Taiwan, and Thailand*, Inv. Nos. 731-TA-278-280 (Review) and 731-TA-347-348 (Review), USITC Pub. 3274 (Feb. 2000)).

Because the statute requires the Commission to consider whether imports of subject merchandise would have a discernible adverse impact during a CCR, the Commission is thereby expressly authorized to analyze negligibility considerations during a CCR. The Commission therefore denied Erdemir's CCR request on an invalid basis and as a result failed to afford Erdemir full consideration of the issues it raised when seeking a CCR in every instance.

## III. THE COURT CAN GRANT RELIEF TO ERDEMIR

Appellees' declaration that Erdemir failed to state a claim for which relief can be granted is grounded wholly on the incorrect assumption that a CCR cannot

provide retrospective consideration and retroactive relief. *See* Commission Br. at 42-45; DIP Br. at 44-46. The sections above demonstrate that the statutory framework allows for consideration of the effect of Commerce's recalculated margins on the Commission's initial injury determination, and should it determine revocation is warranted, Commerce may then afford retroactive effect to the revocation.

The statute requires the Commission to determine whether changed circumstances warrant revocation. *See* 19 U.S.C. § 1675(b)(3)(A). And during a CCR, the Commission must determine whether revocation of an order is likely to lead to continuation or recurrence of material injury. *See* 19 U.S.C. § 1675(b)(2)(A). Thus, by extension, the statute requires the Commission to determine whether changed circumstances demonstrate revocation would not likely lead to continuation or recurrence of material injury. In accordance with the SAA, such changed circumstances can include recalculations by Commerce of the dumping margin in the original investigation and their potential effect on the Commission's original injury determination. *See* SAA at 851. The Commission, in turn, is authorized to provide retrospective consideration of its original injury determination when circumstances warrant such consideration, as they do in this case.

Moreover, Commerce is prescribed with the sole authority to revoke an order, even when the Commission determines changed circumstances demonstrate

revocation is warranted during a CCR. *See* 19 U.S.C. § 1675(d). Under this authority, Commerce can and has afforded retroactive effect to revocations. *See Metal Lockers from China*, 89 Fed. Reg. at 22377.

Appellees' views on these points are entirely wrong, and consequently, their position that Erdemir has failed to state a claim is without merit.

## CONCLUSION

For the foregoing reasons and as demonstrated above, Erdemir's CCR claims were not moot, the Commission failed to give Erdemir full consideration of its claims, and Erdemir presented a claim for which relief could be granted. As a result, the lower court's dismissal of Erdemir's case should be overturned and remanded.


Dated: April 4, 2025

Respectfully submitted,

*/s/ Christine M. Streatfeild*
Christine M. Streatfeild
Justin R. Becker
Baker & McKenzie LLP
815 Connecticut Avenue, N.W.
Washington, DC 20006-4078
Tel.: (202) 835-6111
christine.streatfeild@bakermckenzie.com

*Counsel to Plaintiff-Appellant,*
*Ereğli Demir ve Çelik Fabrikalari T.A.Ş.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>24-2242</u>

**Short Case Caption:** <u>Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. ITC</u>

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>6,939</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>04/04/2025</u>

Signature: <u>/s/ Christine M. Streatfeild</u>

Name: <u>Christine M. Streatfeild</u>