# United States Court of Appeals for the Federal Circuit

---

**EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION, UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, NUCOR CORPORATION,**
*Defendants-Appellees*

---

2024-2242

---

Appeal from the United States Court of International Trade in No. 1:22-cv-00350-TMR, Judge Timothy M. Reif.

----------------------------------------

**EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION, STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, CLEVELAND-CLIFFS INC., NUCOR CORPORATION,**
*Defendants-Appellees*

---

2024-2243

---

Appeal from the United States Court of International Trade in No. 1:22-cv-00349-TMR, Judge Timothy M. Reif.

-----------------------------------------

**EREGLI DEMIR VE CELIK FABRIKALARI T.A.S.,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES INTERNATIONAL TRADE COMMISSION, UNITED STATES STEEL CORPORATION, CLEVELAND-CLIFFS INC., STEEL DYNAMICS, INC., SSAB ENTERPRISES LLC, NUCOR CORPORATION,**
*Defendants-Appellees*

---

2024-2249

---

Appeal from the United States Court of International Trade in No. 1:22-cv-00351-GSK, Judge Gary S. Katzmann.

---

Decided: June 1, 2026

---

CHRISTINE STREATFEILD, Baker & McKenzie LLP, Washington, DC, argued for plaintiff-appellant.

RAVI DHANANJAYEN SOOPRAMANIEN, SPENCER TOUBIA

Office of the General Counsel, United States International Trade Commission, Washington, DC, argued for defendant-appellee United States International Trade Commission. Also represented by Michael HALDENSTEIN; DAVID GOLDFINE in 2024-2249.

JEFFREY DAVID GERRISH, Schagrin Associates, Washington, DC, argued for defendants-appellees Steel Dynamics, Inc., SSAB Enterprises LLC. Also represented by NICHOLAS J. BIRCH, SAAD YOUNUS CHALCHAL, CHRISTOPHER TODD CLOUTIER, ELIZABETH DRAKE, WILLIAM ALFRED FENNELL, LUKE A. MEISNER, NICHOLAS PHILLIPS, ROGER BRIAN SCHAGRIN.

THOMAS M. BELINE, Cassidy Levy Kent (USA) LLP, Washington, DC, for defendant-appellee United States Steel Corporation.

STEPHEN VAUGHN, King & Spalding LLP, Washington, DC, for defendant-appellee Cleveland-Cliffs Inc. Also represented by NEAL JOSEPH REYNOLDS.

ALAN H. PRICE, Wiley Rein, LLP, Washington, DC, for defendant-appellee Nucor Corporation. Also represented by THEODORE PAUL BRACKEMYRE, JOHN ALLEN RIGGINS, MAUREEN E. THORSON, CHRISTOPHER B. WELD.

---

Before TARANTO, CUNNINGHAM, and STARK, *Circuit Judges*.

TARANTO, *Circuit Judge*.

In 2016, the U.S. Department of Commerce, acting under 19 U.S.C. § 1673e, issued an antidumping-duty order covering certain hot-rolled steel flat products imported from seven countries, including Turkey, for which only two mandatory respondents were investigated: Ereğli Demir ve Çelik Fabrikaları T.A.Ş. (Erdemir) and Çolakoğlu

Metalurji A.S. and Çolakoğlu Dis Ticaret A.S. (collectively Çolakoğlu). One predicate for that order was a finding by Commerce that both Erdemir and Çolakoğlu had been dumping; another predicate was the determination in September 2016 by the International Trade Commission (Commission) that the dumping was causing material injury to a U.S. industry. *See* 19 U.S.C. § 1673d(a), (b). Erdemir did not file an action in the Court of International Trade (Trade Court or CIT) to challenge the September 2016 Commission determination. But both Erdemir and Çolakoğlu sued in the Trade Court to challenge Commerce's dumping determination, and that case resulted, in 2020, in a finding of no dumping by Çolakoğlu and, thus, its exclusion from the antidumping-duty order.

Erdemir thereupon sought relief from the antidumping-duty order from the Commission. It requested that the Commission both reconsider its September 2016 final determination of material injury and, under 19 U.S.C. § 1675(b), institute a changed-circumstances review. The Commission denied both requests. Relatedly, and concurrently, the Commission conducted its required five-year review (a "sunset review") under 19 U.S.C. § 1675(c), and it determined in that review that the antidumping-duty order should not be revoked.

Erdemir filed three separate lawsuits in the Trade Court, challenging, respectively, the Commission's nonrevocation determination in the sunset review (the subject of appeal No. 22-2249), the Commission's denial of the request to institute a changed-circumstances review (the subject of appeal No. 22-2242), and the Commission's denial of reconsideration of its September 2016 determination (the subject of appeal No. 22-2243). Several United States producers of hot-rolled steel—the United States Steel Corporation, Cleveland-Cliffs Inc., Steel Dynamics, Inc., SSAB Enterprises LLC, and Nucor Corporation (collectively, Domestic Interested Parties)—intervened in various combinations as defendants in the cases.

The Trade Court ruled against Erdemir in all three cases. It sustained the Commission's determination in the sunset review on the merits. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States International Trade Commission*, 710 F. Supp. 3d 1341 (Ct. Int'l Trade 2024) (*CIT Sunset Review*). It dismissed Erdemir's complaint challenging the refusal to institute a changed-circumstances review, concluding that such a review could provide no relief not already available (and which was denied) in the sunset review. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States International Trade Commission*, 719 F. Supp. 3d 1302 (Ct. Int'l Trade 2024) (*CIT CCR*). And it dismissed Erdemir's complaint challenging the denial of reconsideration as outside the Trade Court's subject-matter jurisdiction under 28 U.S.C. § 1581(i). *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States International Trade Commission*, 723 F. Supp. 3d 1354 (Ct. Int'l Trade 2024) (*CIT Reconsideration*). Erdemir appeals from all three judgments. We affirm each judgment.

## I

### A

#### 1

Under the general legal framework governing antidumping investigations, 19 U.S.C. §§ 1673–1673h, when an interested party submits a petition on behalf of an industry alleging that "foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value" and that a domestic industry is, or is threatened to be, materially injured as a result, *id.* § 1673, Commerce must evaluate whether to initiate an investigation, *id.* § 1673a(b), (c)(1)(A). During an investigation, Commerce (the "administering authority") is to decide the issue of sale for less than fair value (dumping), while the Commission is to decide the issue of material injury. *Id.* §§ 1673b, 1673d. Both agencies are assigned a role during the preliminary and final stages, and at the final-determination stage,

Commerce's determination precedes any Commission determination. *Id.* § 1673d. If affirmative final determinations of dumping and material injury are made, Commerce is to impose dumping duties on the subject merchandise to offset the underpricing. *Id.* §§ 1673, 1673e(a).

Two aspects of that process are significant here. First, regarding Commerce: During either stage, Commerce is to "disregard any weighted average dumping margin that is de minimis," *id.* §§ 1673b(b)(3) (preliminary determination), 1673d(a)(4) (final determination), with "de minimis" defined as a Commerce-determined margin of "less than 2 percent ad valorem or the equivalent specific rate for the subject merchandise," *id.* § 1673b(b)(3). Second, regarding the Commission: During either stage, "[i]f the Commission determines that imports of the subject merchandise are negligible, the investigation shall be terminated." *Id.* § 1673d(b)(1)(B) (final determination); *see id.* § 1673b(a)(1)(B) (same for preliminary determination). The parties agree that those provisions are country-specific even though, as a general matter, the Commission is to conduct its final material-injury determination by cumulating data in an investigation of multiple countries subject to certain conditions and exceptions. *Id.* § 1677(7)(G)–(H).

The negligibility provision is a particular focus of the dispute before us, and the definitions of "subject merchandise" and "negligible" clarify when the Commission is to make a negligibility determination that requires termination of an investigation as to a particular country. In general, "imports from a country of merchandise . . . are 'negligible' if *such imports* account for less than 3 percent of the volume of all *such merchandise imported* into the United States." *Id.* § 1677(24)(A)(i) (emphases added). The Commission is to make that determination based on the most recent 12-month period for which data is available that precedes either the filing of the petition for an investigation or the initiation of the investigation. *Id.* Under § 1673d(b)(1)(B), the imports in both the numerator and

denominator consist of "subject merchandise," defined, as relevant here, as "the class or kind of merchandise that is within the scope of an investigation." *Id.* § 1677(25).[1]

2

Section 1675 provides two mechanisms, as relevant here, by which an antidumping-duty order may be revoked. First, under § 1675(c), no later than 30 days before the fifth anniversary of a published antidumping-duty order, Commerce is to initiate a sunset review, in which Commerce and the Commission are to determine whether revocation of the order "would be likely to lead to continuation or recurrence of dumping . . . and of material injury." *Id.* § 1675(c)(1), (2). Commerce is to conduct its review within 240 days of initiation, and if it determines that the antidumping-duty order should not be revoked (a so-called

[1] A similar framework applies to a countervailing-duty investigation—into whether a foreign government or public entity is providing a certain kind of subsidy (countervailable) with respect to the manufacture, production, or export of merchandise. 19 U.S.C. §§ 1671–1671h. Commerce makes preliminary and final determinations about whether a countervailable subsidy is being provided, and the Commission makes material-injury determinations. *Id.* §§ 1671(a), 1671b, 1671d. An investigation must terminate if the Commission finds relevant imports from a country to be negligible. *Id.* §§ 1671b(a)(1) (preliminary determination), 1671d(b)(1)(B) (final determination); *see also id.* § 1677(24)(A)(i). And Commerce is to disregard any de minimis countervailable subsidy, *id.* §§ 1671b(b)(4) (preliminary determination), 1671d(a)(3) (final determination), with "de minimis" defined to exist if Commerce determines that "the aggregate of the net countervailable subsidies is less than 1 percent ad valorem or the equivalent specific rate for the subject merchandise," *id.* § 1671b(b)(4).

affirmative determination), the Commission is to make its own determination within 360 days of initiation. *Id.* § 1675(c)(5)(A), (d)(2)(A); *see also id.* § 1675a(c). Originating with the Uruguay Round Agreements Act (URAA), Pub. L. No. 103-465, § 220, 108 Stat. 4809, 4861–64 (1994), and not relevantly amended since, the sunset-review provision requires revocation of the antidumping-duty order if either agency's determination is negative, 19 U.S.C. § 1675(d)(2).

The statute provides a second mechanism for revocation in § 1675(b). That provision generally authorizes an interested party, after two years have passed since publication of the pertinent determination by either Commerce or the Commission, to request that either agency conduct a changed-circumstances review (CCR). *Id.* § 1675(b)(1), (4). The agency is to conduct a CCR if a party seeking revocation carries the burden of demonstrating "changed circumstances sufficient to warrant a [CCR]." *Id.* § 1675(b)(1); *see also* 19 C.F.R. § 207.45 (detailing procedure by which the Commission institutes a CCR). If the Commission conducts a CCR, it is to "determine whether revocation of the [antidumping-duty] order or [material-injury] finding is likely to lead to continuation or recurrence of material injury." 19 U.S.C. § 1675(b)(2)(A). The CCR originated with the Trade Agreements Act of 1979, Pub. L. No. 96-39, § 751(b), 93 Stat. 144, 175–76 (1979), and we addressed that version in *Borlem S.A. Empreedimentos Industriais v. United States*, 913 F.2d 933, 936, 940 (Fed. Cir. 1990). Congress rewrote the subsection in 1994, *see* URAA, § 220, 108 Stat. at 4860–61, and no later amendment is relevant here.

Two particular aspects of the revocation mechanisms are worth highlighting here. Both of them are contained within § 1675a, which immediately follows § 1675 and which sets forth "Special rules for section 1675(b) and 1675(c) reviews," *i.e.*, CCRs and sunset reviews. First, for both such reviews, the Commission must consider

> whether revocation of an order . . . would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time . . . [by] consider[ing] the likely volume, price effect, and impact of imports of the *subject merchandise* on the industry if the order is revoked.

19 U.S.C. § 1675a(a)(1) (emphasis added); *see id.* § 1675a(a)(2)–(4) (explaining how the Commission is to evaluate volume, price, and industry impacts). In so doing, the Commission is to take into account its "prior injury determinations." *Id.* § 1675a(a)(1)(A). Second, as in the investigation at the start, *see supra* p.6 (citing 19 U.S.C. § 1677(7)(G)–(H)), the Commission may "cumulatively assess" data for imports across multiple countries in a particular review, 19 U.S.C. § 1675a(a)(7). But the Commission may do so only if

> [*first*] reviews under section 1675(b) or (c) of this title were initiated on the same day, [*second*] if such imports would be likely to compete with each other[,] and [*third* such imports compete] with domestic like products in the United States market.

*Id.* The Commission must not cumulate imports for a particular country if its "imports are likely to have no discernible adverse impact on the domestic industry." *Id.*

3

Under 28 U.S.C. § 1581(c), the Trade Court has exclusive jurisdiction to review Commerce and Commission final determinations underlying an antidumping-duty order, relevant CCR determinations (including a refusal to initiate a CCR), and final sunset review determinations. Of particular significance here, the provision confers jurisdiction over any action commenced under 19 U.S.C. § 1516a(a) within thirty days after the date of publication in the Federal Register. *See* 19 U.S.C. § 1516a(a)(2)(B)(i) (Commission's final material-injury determination), (a)(2)(B)(iii)

(Commission's determination in a sunset review), and (a)(1)(B) (Commission's denial to institute a CCR); *see also* 28 U.S.C. § 2636(c).

In subsection (i) of § 1581, Congress provided for an additional residual grant of jurisdiction, subject to express and long-established limitations. As relevant here, section 1581(i)(1) states that, "[i]n addition to the jurisdiction conferred upon the [Trade Court] by subsections (a)–(h)," the Trade Court

> shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for— . . . (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section.

28 U.S.C. § 1581(i)(1)(D).[2] Subsection (i) adds:

> (2) This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by—(A) the [Trade Court] under section 516A(a) of the Tariff Act of 1930 (19 U.S.C. 1516a(a)) . . . .

*Id.* § 1581(i)(2). As discussed *infra*, the quoted limitation makes express for the present context a long-established implicit limitation on § 1581(i) residual jurisdiction: "'Section 1581(i) jurisdiction may not be invoked when

---

[2] The referred-to paragraphs (A) through (C) are: "(A) revenue from imports or tonnage; (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue; [and] (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of public health or safety." 28 U.S.C. § 1581(i)(1)(A)–(C).

jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate.'" *ARP Materials, Inc. v. United States*, 47 F.4th 1370, 1377 (Fed. Cir. 2022) (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)).

B

In August 2015, some of the Domestic Interested Parties (along with others not party to these appeals) petitioned under 19 U.S.C. §§ 1671a(b) and 1673a(b) for initiation of antidumping-duty and countervailing-duty investigations of imports of certain hot-rolled steel flat products from Turkey and six other countries. *See Certain Hot-Rolled Steel Flat Products From Brazil, the Republic of Korea, and Turkey: Initiation of Less-Than-Fair-Value Investigations*, 80 Fed. Reg. 54,261, 54,261 (Dep't of Commerce Sept. 9, 2015). In September 2015, Commerce initiated both investigations, pursuant to 19 U.S.C. §§ 1671a(c), 1673a(c). *See id.* at 54,261–66; *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands, the Republic of Turkey, and the United Kingdom: Initiation of Countervailing Duty Investigations*, 80 Fed. Reg. 54,267, 54,267–72 (Dep't of Commerce Sept. 9, 2015).

In the antidumping-duty investigation with respect to Turkey, in which Çolakoğlu and Erdemir (the latter treated together with a similarly named company as a single entity) were the only required respondents from Turkey, the Commission and Commerce each made affirmative preliminary determinations under 19 U.S.C. § 1673b(a)–(b). Next, in August 2016, Commerce made an affirmative *final* determination under 19 U.S.C. § 1673d(a), finding weighted-average dumping margins at or above 2%, hence not de minimis under 19 U.S.C. § 1673b(b)(3). *Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Determination of Sales at Less Than Fair Value*, 81

Fed. Reg. 53,428, 53,428–30 (Dep't of Commerce Aug. 12, 2016); *see id.* at 53,429 n.10 (treating two related Erdemir entities as a single entity).

The Commission then completed the investigation: On September 26, 2016, it made an affirmative final determination that a domestic industry was materially injured by reason of the subject imports under 19 U.S.C. § 1673d(b). *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, 81 Fed. Reg. 66,996, 66,996–97 (Int'l Trade Comm'n Sept. 29, 2016) (*Commission 2016 Final Determination*) (citing, as discussed *infra*, Int'l Trade Comm'n Pub. 4638 (Sept. 2016)). In so doing, the Commission analyzed subject imports by cumulating imports across all seven countries, including Turkey. *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–547, 731-TA-1291–1297, USITC Pub. 4638, 2016 WL 5845649, at *12–15 (Sept. 2016) (Final); *see* 19 U.S.C. § 1677(7)(G)–(H). On September 27, 2016, Commerce issued, and on October 3, 2016, it published, an antidumping-duty order on imported subjected merchandise from Turkey (with the dumping margins identified in its final determination corrected to eliminate a ministerial error). *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands the Republic of Turkey, and the United Kingdom: Amended Final Affirmative Antidumping Determinations for Australia, the Republic of Korea, and the Republic of Turkey and Antidumping Duty Orders*, 81 Fed. Reg. 67,962, 67,962–66 (Dep't of Commerce Oct. 3, 2016) (*2016 Antidumping-Duty Order*).[3]

---

[3] In the concurrent countervailing-duty investigation for Turkey, Commerce (after making a negative preliminary determination) made an affirmative final

Erdemir and Çolakoğlu each timely filed suit in the Trade Court—respectively, on October 14, 2016, and October 28, 2016 (within 30 days of issuance of the October 3, 2016 antidumping-duty order)—challenging Commerce's final dumping-margin determination. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 308 F. Supp. 3d 1297, 1304–05 (Ct. Int'l Trade 2018). The Trade Court consolidated those actions. No suit was filed to challenge the Commission's final determination of material injury, and it is not disputed that any such challenge had to be presented in a lawsuit separate from the margin-challenging suit. *See* U.S. Court of International Trade (USCIT) Rule 3(h).

---

determination *but* computed a de minimis subsidy rate for Çolakoğlu (less than 1%) under 19 U.S.C. §§ 1671b(b)(4), 1671d(a)(3). *Countervailing Duty Investigation of Certain Hot-Rolled Steel Flat Products from the Republic of Turkey: Final Affirmative Determination*, 81 Fed. Reg. 53,433, 53,433–35 (Dep't of Commerce Aug. 12, 2016). With imports from Çolakoğlu excluded by that de minimis determination from the "subject merchandise," the Commission found that subject (subsidized) imports of hot-rolled steel from Turkey were "negligible" under the 3% standard of § 1671d(b)(1)(B). *Commission 2016 Final Determination*, 81 Fed. Reg. at 66,996. That is, although the Commission had found that *dumped* imported subject merchandise from Turkey amounted to 7.4% of total imports, and hence were not "negligible," it found that *subsidized* imports (which did not include those produced by Çolakoğlu) fell below the 3% threshold, and hence were negligible, adding that "there is not a potential that subsidized subject imports from Turkey w[ould] imminently exceed three percent of total imports." No. 24-2249 J.A. 320–21. The Commission thus terminated the countervailing-duty investigation on hot-rolled steel products from Turkey. No. 24-2249 J.A. 321.

In 2018, the Trade Court remanded the matter to Commerce for further action. *Id.* at 1305. Commerce made a new dumping-margin determination on remand, which only Çolakoğlu challenged, and the Trade Court remanded again—which was followed by another Commerce determination and another Trade Court remand. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 357 F. Supp. 3d 1325, 1327–28 (Ct. Int'l Trade 2018); *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 415 F. Supp. 3d 1216, 1220–21 (Ct. Int'l Trade 2019). Finally, acting pursuant to the third remand, Commerce determined (on January 27, 2020) that the dumping margin for Çolakoğlu was 0%. *See Certain Hot-Rolled Steel Flat Products From Turkey: Notice of Court Decision Not in Harmony With the Amended Final Determination in the Less-Than-Fair-Value Investigation; Notice of Amended Final Determination, Amended Antidumping Duty Order; Notice of Revocation of Antidumping Duty Order in Part; and Discontinuation of the 2017–18 and 2018–19 Antidumping Duty Administrative Reviews, in Part*, 85 Fed. Reg. 29,399, 29,400 (Dep't of Commerce May 15, 2020) (*Commerce May 2020 Order)* (recounting Commerce's third remand redetermination).

Some of the Domestic Interested Parties challenged that determination in the Trade Court, but on April 13, 2020, the Trade Court sustained the *Commerce May 2020 Order*. *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, 435 F. Supp. 3d 1378, 1379–80 (Ct. Int'l Trade 2020). Zero percent is obviously de minimis, 19 U.S.C. § 1673b(b)(3), requiring exclusion of Çolakoğlu from the anti-dumping duty order, *id.* § 1673d(a)(4). As a result, on May 11, 2020, Commerce excluded Çolakoğlu and its imports from coverage by the antidumping-duty order. *See Commerce May 2020 Order*, 85 Fed. Reg. at 29,400.

C

1

Erdemir thereafter immediately started seeking relief from the Commission's 2016 material-injury determination. It argued that the determination could not stand in light of the exclusion of Çolakoğlu from the antidumping-duty order, because the relevant imports from Turkey were assertedly negligible once Çolakoğlu was excluded (the countervailing-duty investigation having been terminated for such reasons, *see supra* n.3). Erdemir pursued that relief through three paths: reconsideration, changed-circumstances review, and sunset review.

Thus, on May 18, 2020, Erdemir, not having filed suit to challenge the Commission's final determination in 2016, requested reconsideration of that final determination from the Commission. 24-2242 J.A. 625–32.[4] It asked the Commission to "reopen the captioned investigations to consider the impact of Çolakoğlu's exclusion from the [antidumping-duty] order" and to determine, in particular, whether imports properly considered for antidumping purposes were below the negligibility threshold as in the countervailing-duty injury investigation. *Id.*, J.A. 630. Erdemir asked the Commission to treat its request, in the alternative, as a petition for a CCR. *Id.*, J.A. 631. In July 2020, Erdemir, having received no response, renewed this two-path request. *Id.*, J.A. 3160–62. On September 10, 2021, Erdemir renewed its request for a CCR, without mentioning reconsideration. *Id.*, J.A. 659–67.[5]

---

[4] This opinion addresses three appeals—Nos. 24-2422, 24-2243, and 24-2249. The number before "J.A." is the docket number for the case whose joint appendix is being cited.

[5] In June 2020, the United States and some of the Domestic Interested Parties timely appealed the Trade

Erdemir also pressed its argument for relief through a third path opened up by the Commission on September 1, 2021, when the Commission published its notice of institution of its five-year sunset review of the *2016 Antidumping-Duty Order*, pursuant to 19 U.S.C. § 1675(c)(2). *Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, Korea, the Netherlands, Russia, Turkey, and the United Kingdom; Institution of Five-Year Reviews*, 86 Fed. Reg. 49,057, 49,057–60 (Int'l Trade Comm'n Sept. 1, 2021).

2

In the sunset review, Commerce, playing its assigned role, first determined under 19 U.S.C. §§ 1675(c)(5), 1675a(c) that revoking the antidumping-duty order would be likely to lead to continuation or recurrence of dumping from Turkey by a margin of 24.32%. *Certain Hot-Rolled Steel Flat Products from Australia, Brazil, Japan, the Republic of Korea, the Netherlands the Republic of Turkey, and the United Kingdom: Final Results of the Expedited Sunset Reviews of the Antidumping Duty Orders*, 87 Fed. Reg. 751, 751–53 (Dep't of Commerce Jan. 6, 2022). On November 25, 2022, the Commission, playing its assigned role, issued an affirmative (no revocation) determination under 19 U.S.C. §§ 1675(c)(5), 1675a(a). *Hot-Rolled Steel From Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, 87 Fed. Reg. 74,167, 74,167 (Int'l Trade Comm'n Dec. 2, 2022) (24-2249

---

Court's April 2020 final judgment to this court. *See* Notices of Appeal, *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, No. 16-218 (Ct. Int'l Trade June 10 & 12, 2020), ECF Nos. 156 & 157. They later voluntarily dismissed their appeals, and this court's mandates issued on December 18, 2020, and June 4, 2021. 24-2242 J.A. 3702–06. While the appeals were pending, the Commission considered the May and July 2020 requests for reconsideration to be "premature." *Id.*, J.A. 3132–34.

J.A. 28). The Commission relied on a detailed supporting analysis. *Hot-Rolled Steel from Australia, Brazil, Japan, Netherlands, Russia, South Korea, Turkey, and the United Kingdom*, Inv. Nos. 701-TA-545–546, 731-TA-1291–1297 (Review), 731-TA-808 (Fourth Review), USITC Pub. 5380, 2022 WL 17486373 (Nov. 2022) (*Commission Sunset Review*) (24-2249 J.A. 704–1416).

In its analysis, the Commission cumulated the subject imports from Turkey with five of the other six countries in the original investigation under 19 U.S.C. §§ 1675a(a)(7), while considering imports from Brazil separately because Brazil's imports uniquely were covered by a national-security-based volume quota under 19 U.S.C. § 1862 and thus not likely to compete with those of the other countries. *Commission Sunset Review*, at *39, 41 (24-2249 J.A. 775–76, 781–82). Regarding Turkey, the Commission noted that "Commerce found a zero antidumping-duty margin for Çolakoğlu . . . [so Çolakoğlu] is no longer a producer of subject merchandise and data for it is not included in the data for subject imports from Turkey during the current review." *Id.* at *29 n.276 (24-2249 J.A. 760 n.276); *see also id.* at *29 n.280 (24-2249 J.A. 761 n.280) (data "showing subject imports from Turkey minus Çolakoğlu's imports"); *id.* at *31 n.298 (24-2249 J.A. 763 n.298) ("Çolakoğlu [imports] are no longer subject merchandise."). The Commission found that cumulating Turkey's numbers with those of the non-Brazil countries satisfied the criteria for cumulation. *See id.* at *30–31 (24-2249 J.A. 761–62).

The Commission conducted the statutory analysis required by § 1675a(a). First, it found that the likely volume of cumulated subject imports during the period of the review (for the sunset review), comparing the data to the data of the original investigations, disfavored revocation. The Commission concluded that even if the volume of subject imports and market share were less than they were in 2016, that reduction reflected the existence of the antidumping-duty orders; the subject industries had a

significant unused production capacity; and the United States export market remained attractive. *Id.* at *52–53 (24-2249 J.A. 799–802). Second, the Commission found likely price effects of the cumulated subject imports in the event of revocation because there was a moderate-to-high degree of substitutability between domestically produced items and relevant imports in an "appreciable number of comparisons." *Id.* at *54–55 (24-2249 J.A. 805–07). Third, the Commission evaluated measures of the domestic industry's economic and financial health and determined that, although the measures did not suggest that the domestic industry was vulnerable during the period of review, revocation would have a significant impact because some of the more favorable conditions were the result of the antidumping-duty orders, imbalances during the pandemic, and other conditions unique to the recent years. *Id.* at *58–60 (24-2249 J.A. 810–15).

3

On November 23, 2022, two days before completing the sunset review, the Commission addressed the other two paths for relief invoked by Erdemir. Specifically, it declined to institute a CCR under § 1675(b) or to grant reconsideration of the negligibility analysis in its 2016 material-injury determination for the antidumping-duty investigation. *Hot-Rolled Steel Flat Products From Turkey; Denial of Request To Institute a Section 751(b) Review; Denial of Request To Institute a Section 751(b) Review or Reconsideration Proceeding Concerning the Commission's Affirmative Determination in Investigation No. 731-TA-1296 (Final), Hot-Rolled Steel Flat Products From Turkey*, 87 Fed. Reg. 73,331, 73,331–33 (Int'l Trade Comm'n Nov. 29, 2022) (*Commission CCR and Reconsideration Denial*) (24-2242 J.A. 38–40). First, the Commission declined institution of a CCR because it had already instituted the sunset review by the time it received Erdemir's September 10, 2021 request and determined that the CCR would be duplicative, the standards being relevantly the same; most

particularly, reexamination of the original negligibility finding is not part of either the CCR or sunset review inquiry. *Id.* at 73,332 (24-2242 J.A. 39). Second, the Commission declined reconsideration because Erdemir's request did not present the extraordinary circumstances (*e.g.*, fraud) required for reconsideration and Erdemir had failed to timely challenge the Commission's 2016 final determination once Çolakoğlu challenged its dumping margin. *Id.* at 73,332–33 (24-2242 J.A. 39–40).

D

In December 2022, Erdemir filed three actions in the Trade Court against the Commission. The Trade Court ruled against Erdemir in all three actions.

1

Erdemir challenged the Commission's affirmative determination (refusing to revoke the antidumping-duty order for Turkey) in the sunset review. 24-2249 J.A. 1979–91. On Erdemir's motion for judgment on the agency record, the Trade Court sustained the Commission's determinations. *CIT Sunset Review*, at 1357 (24-2249 J.A. 27). The Trade Court rejected both Erdemir's central legal argument and its more case-specific, fact-based challenges.

As the Trade Court's opinion makes clear, Erdemir's main argument asserted legal error on what amounts to a three-step rationale: (a) the exclusion of imports of Çolakoğlu products from the antidumping-duty order (from its outset) rendered the covered imports from Turkey "negligible," 19 U.S.C. § 1673d(b)(1)(B); (b) consequently, there never was material injury to support an antidumping-duty order for Turkey; and (c) therefore, there *could not be* a "continuation or recurrence . . . of material injury," the likelihood of which is required to reject revocation in a sunset review, *id.* § 1675(c)(1)(C). *See CIT Sunset Review*, at 1350–51 (24-2249 J.A. 14–15). The Trade Court rejected this rationale, reasoning that the Commission's material-

injury ruling in 2016 was a final agency determination that was not timely challenged, so the Commission properly took it as a starting point in its § 1675(c) inquiry into continuation or recurrence of injury, *id.* at 1351 (24-2249 J.A. 15–16), which would be assessed under the standards specific to the sunset review. The Trade Court then addressed and rejected Erdemir's challenge to that assessment by the Commission—namely, that the Commission, in making its decision to cumulate Turkey with five other countries, (a) improperly considered data from Çolakoğlu, (b) lacked substantial evidence from which to infer that imports from Turkey would have an adverse impact on the domestic industry, and (c) should have included imports from Brazil in the cumulation. *Id.* at 1354–57 (24-2249 J.A. 20–27). As most relevant now, the Trade Court determined that "[a]t no point did the Commission directly rely on a data set that includes Çolakoğlu's pre-exclusion imports." *Id.* at 1355–56 (24-2249 J.A. 23–24).

2

In another case, Erdemir challenged the Commission's denial of the request to institute a CCR. 24-2242 J.A. 1411–22. Erdemir argued that "[t]he Commission has the authority to conduct a changed circumstances review for purposes of retroactive correction of errors in the [antidumping-duty] negligibility determination in the original investigation, and [it] wrongfully declined to conduct a CCR to reconsider the negligibility decision of its original investigation in light of the retroactive exclusion of Çolakoğlu from the [antidumping-duty] order." *Id.*, J.A. 1421. On motions to dismiss the case, the Trade Court dismissed the case for lack of subject-matter jurisdiction, reasoning that the sunset review rendered moot Erdemir's request for a CCR because it accorded Erdemir the same potential remedy. *CIT CCR*, at 1305, 1315, 1322 (24-2242 J.A. 3, 24, 37); *see* Motions to Dismiss, *Ereğli Demir ve Çelik Fabrikaları T.A.Ş. v. United States*, No. 22-350 (Ct. Int'l Trade May 18, 2023), ECF Nos. 38 & 39 (moving to

dismiss for lack of jurisdiction and for failure to state a claim upon which relief may be granted).

3

In the final Trade Court case now before us, Erdemir challenged the Commission's denial of the request for reconsideration of the *Commission 2016 Final Determination*, 24-2243 J.A. 697–709 (amended complaint), urging that the Commission had, and should have exercised, "authority to reconsider and correct errors in the [antidumping-duty] negligibility determination in the original investigation," *id.*, J.A. 708. On a motion to dismiss, the Trade Court dismissed the suit for lack of subject-matter jurisdiction, reasoning that Erdemir invoked jurisdiction only under 28 U.S.C. § 1581(i) and that provision is inapplicable here because § 1581(c) had been available to Erdemir back in 2016 to challenge the material-injury determination. *CIT Reconsideration*, at 1373 (24-2243 J.A. 35). In particular, the court held that Erdemir could have filed suit against the Commission in 2016 (under USCIT Rule 3(h)) and requested a stay once Çolakoğlu challenged its dumping margin (on October 28, 2016), all within the thirty days of publication of the Commission's final determination allowed under 19 U.S.C. § 1516a(a) (of the October 3, 2016 antidumping-duty order). *Id.* at 1358, 1370–71 (24-2243 J.A. 3, 28–30). The Trade Court concluded that Erdemir had to bring its current challenge through the § 1581(c) route in 2016 because the true nature of this challenge was to attack the original negligibility analysis and the § 1581(c) remedy was not manifestly inadequate. *Id.* at 1365–67, 1371–73 (24-2243 J.A. 19–21, 30–35).

Erdemir timely appealed from each of the Trade Court's final judgments. We have jurisdiction under 28 U.S.C. § 1295(a)(5).

## II

Erdemir challenges the Trade Court's decisions in the sunset-review case, the CCR case, and the reconsideration case. We address them in that order.

We review the decision of the Trade Court sustaining the Commission's sunset review determination on the agency record by "'apply[ing] anew the same standard used'" by the Trade Court. *Ad Hoc Shrimp Trade Action Committee v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) (alteration in original) (quoting *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1380 (Fed. Cir. 2008)). The reviewing court is to "hold unlawful any determination, finding or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see Union Steel v. United States*, 713 F.3d 1101, 1106 (Fed. Cir. 2013). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *China Manufacturers Alliance, LLC v. United States*, 1 F.4th 1028, 1035 (Fed. Cir. 2021) (quoting *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477 (1951)).

We also review the Trade Court's decisions to dismiss the other two cases de novo, both being jurisdictional rulings and in any event not turning on resolutions of any factual disputes, but only resolutions of legal issues, which are subject to this court's de novo review. *See*, *e.g.*, *ARP*, 47 F.4th at 1376; *Rimco Inc. v. United States*, 98 F.4th 1046, 1051 (Fed. Cir. 2024); *Bioparques de Occidente, S.A. de C.V. v. United States*, 31 F.4th 1336, 1343 (Fed. Cir. 2022); *International Custom Products, Inc. v. United States*, 791 F.3d 1329, 1335 (Fed. Cir. 2015). We answer questions of statutory interpretation by determining the "best reading" of the statute. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 400 (2024).

A

In the case involving the sunset review, Fed. Cir. No. 24-2249, Erdemir presents essentially two contentions on appeal. First, it contends that, as a matter of law, a retrospective reassessment of the soundness of the Commission's original material-injury determination is required by the statutory phrase "continuation or recurrence of material injury" in the sunset-review provisions, 19 U.S.C. §§ 1675(c)(1)(C), 1675a(a)(1)—a phrase that appears also in the changed-circumstances-review provisions, *id.* §§ 1675(b)(2)(A), 1675a(a)(1). Second, separate from that legal issue, Erdemir contends that, in the Commission's assessment of forward-looking risk of material injury (including the "no discernible adverse impact" part of § 1675a(a)(7)), the Commission erroneously failed to exclude Çolakoğlu's products from the pool of imports it was evaluating for that risk, as required once these products were found not to be within the antidumping-duty order. We reject both challenges to the *CIT Sunset Review* sustaining the Commission's sunset-review determination.

1

The statute directs Commerce and the Commission in a sunset review to determine, "in accordance with [§ 1675a], whether revocation of the . . . antidumping duty order . . . would be likely to lead to continuation or recurrence of dumping" (Commerce's issue) "and of material injury" (the Commission's issue). 19 U.S.C. § 1675(c)(1)(C). Section 1675a(a)(1) provides that "[i]n a review conducted under [§ 1675(b) or (c)]," *i.e.*, a changed-circumstances or sunset review, "the Commission shall determine whether revocation of an order . . . would be likely to lead to continuation or recurrence of material injury within a reasonably foreseeable time." *Id.* § 1675a(a)(1). Erdemir advances the following argument: Although there might be material injury in the future, there cannot be a "*continuation or recurrence* of material injury" if there never was such injury in

the first place. Therefore, the Commission, in making the required inquiry into continuation or recurrence in its sunset review, must determine whether there *was* such material injury, applying the standards applicable in the investigation leading to the antidumping-duty order (including the negligibility standard). 24-2249 Erdemir Opening Br. at 16–20.

We reject this statutory interpretation. The relied-on language, which presupposes that there *has been* material injury, does not go further and specify where that premise about the past is to come from in the sunset review. In particular, the language does not itself resolve the issue here: whether, if there has been an authoritative final determination of material injury, not displaced through a direct Trade Court review or the subject of such a review that is still open, the Commission may (or perhaps must) take that determination as a given in its sunset review. We conclude that the better reading of the statute, given the sunset review provision's place in the statutory structure and its plain focus on the future, is that the Commission may do so (perhaps even must do so, though we need not resolve that issue here). *See, e.g.*, *Merit Management Group, LP v. FTI Consulting, Inc.*, 583 U.S. 366, 378–82 (2018) (statute must be read in context, considering statutory structure); *Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1322 (Fed. Cir. 2021) (same).

A Commission determination that there existed material injury in the period of investigation for the antidumping-duty order (years before the launch of the sunset review) is undisputedly subject to direct review in the Trade Court if such review is sought within the time limit set by statute. *See* 19 U.S.C. § 1516a(a)(2)(B)(i); 28 U.S.C. § 2636(c); *supra* pp. 9–10. The determination may (and sometimes must) be set aside in such a direct review that is still open, even if the asserted basis for review is a post-filing development in a related case. *See Borlem*, 913 F.2d at 938–40. We may assume, too, that the Commission has

discretion to grant reconsideration (after the direct-review period) and, in such reconsideration, alter its original material-injury determination. But when those ways of unsettling an otherwise-settled determination of a past fact have not been used successfully, it is a familiar practice in our legal system, *e.g.*, from the law of preclusion, for the determination to be treated as settling the issue (at least against a participant in the original proceeding) in a later proceeding, especially one that is focused on the future, not the past.

The sunset-review mechanism is such a proceeding. Section 1675(c) is clearly focused on future effects. Its central language is about whether a possible revocation "would be likely to lead" to certain adverse effects—an inquiry into the future based on a condition (revocation) that has not yet occurred. 19 U.S.C. §§ 1675(c)(1)(C), 1675a(a)(1). Section § 1675a repeatedly and pervasively uses the word "likely" in referring to the components of the overall inquiry. *Id.* § 1675a. And the action under contemplation—revocation—is, at least in general (and perhaps more categorically), a forward-looking one: to bring an antidumping-duty order to an end, not to retroactively undo it from its adoption. *See id.* § 1675(d); *Committee for Fairly Traded Venezuelan Cement v. United States*, 372 F.3d 1284, 1286 (Fed. Cir. 2004). The forward-looking character of the Commission's task is reinforced by the Statement of Administrative Action (SAA) for the URAA, which enacted the current language of the pertinent sunset-review provisions and is treated as "an authoritative expression by the United States concerning the interpretation and application of the [URAA] in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d). The SAA characterizes the sunset-review determination as "inherently predictive and speculative." SAA, H.R. Doc. No. 103–316, vol. 1 at 883 (1994); *see also id.* at 884 (stating that "the standard is prospective in nature").

In this context, we conclude that the Commission at least may (perhaps must) treat the past-material-injury premise as a given based on the earlier Commission determination of that fact when that determination has not been displaced through direct review or reconsideration. This is the fairest understanding of how, given the complex interests accommodated within trade law, Congress struck the balance between finality and correctness for this setting, a balance that, it is well recognized, can be struck in various ways in various settings. *See*, *e.g.*, *System Federation No. 91, Railway Employes' Department, AFL-CIO v. Wright*, 364 U.S. 642, 647–48 (1961); *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1342–43 (Fed. Cir. 2021); *Linyi Chengen Import and Export Co. v. United States*, 174 F.4th 1351, 1362 (Fed. Cir. 2026). The resulting reading of the provision respects the finality of a premise about the past while allowing relief based on an assessment of the future under congressionally prescribed standards that differ somewhat from the originally applicable standards. Erdemir has not shown that this result is anomalous, or otherwise defective, in a way that justifies a different reading.

Because it is relevant to our CCR discussion *infra*, we note that we have been shown no reason why the foregoing analysis of the "continuation or recurrence" language should not apply equally to a changed-circumstances review. Section 1675a(a) applies to both reviews; the difference between "is likely to lead" in § 1675(b)(2)(A) (changed circumstances) and "would be likely to lead" in § 1675(c)(1)(C) (sunset) seems insignificant; and § 1675(d), addressing revocation for both types of review, does not make one less future-focused than the other for present purposes. If there is a material difference between the two review mechanisms for present purposes, it has not been identified.

2

Erdemir's more case-specific challenges to the Commission's sunset review are unpersuasive. Notably, although Erdemir asserts that the Commission improperly considered Çolakoğlu's products in its prediction about future injury, we conclude that the Commission did *not* include Çolakoğlu's non-dumped products in its calculations of what would be likely to occur if the Commission revoked the antidumping-duty order. In its analysis, the Commission was explicit in recognizing that "exports from Çolakoğlu are no longer subject merchandise," *Commission Sunset Review*, at *31 n.298, and in stating that, because "Commerce found a zero antidumping duty margin for Çolakoğlu, . . . it is no longer a producer of subject merchandise and data for it is not included in the data for subject imports from Turkey during the current review," *id.* at *29 n.276. *See also id.* at *29 n.280 (assessing data "showing subject imports from Turkey minus Çolakoğlu's imports").

Nor has Erdemir identified any other reversible error in the Commission's determination. In particular, the Commission applied the required considerations under § 1675a(a), examining, *e.g.*, the volume of Turkish steel production each year since 2016 and the extent of excess capacity starting in 2021. *Id.* at *29–31. The Commission also reasonably cumulated data from Turkey with the data from five other countries under § 1675a(a)(7) and excluded Brazil because the national-security-based quota applicable to Brazil would uniquely limit the volume of what Brazil could import by a substantial amount. *Id.* at *39–40. We therefore affirm the Trade Court's decision upholding the Commission's determination in the *CIT Sunset Review*.

B

In the case involving the Commission's denial of Erdemir's request for a CCR, Fed. Cir. No. 24-2242, Erdemir challenges the Trade Court's dismissal for mootness of the

case in which Erdemir challenged that denial, a dismissal resting on the determination that Erdemir could not obtain, for the requested CCR, any relief it could have obtained but failed to obtain in the essentially contemporaneous sunset review. *See CIT CCR*, at 1315–22 (24-2242 J.A. 23–37). We affirm the dismissal, though not on mootness grounds.

As an initial matter, we conclude, for at least the following reason, that the Trade Court erred in relying on the doctrine of mootness. "[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (internal quotation marks and citation omitted); *see Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1080 (Fed. Cir. 2025). In assessing whether that prerequisite is met, as in deciding a question of standing, the court must assume the correctness of the plaintiff's allegation unless it is "so implausible that it is insufficient to preserve jurisdiction." *Chafin*, 568 U.S. at 173–74.

> [A] court has jurisdiction if the right of the [plaintiffs] to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another, unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

*Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 643 (2002) (internal quotation marks and citation omitted); *see also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998). "Absent such frivolity, the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (internal quotation marks and citation omitted);

*see Chafin*, 568 U.S. at 174 (making same point about "confus[ing] mootness with the merits").

Here, Erdemir argues that, as relevant to this case, the statutory CCR provisions set a different legal standard from the standard set by the sunset-review provisions, authorizing or requiring relief not authorized or required for a sunset review. 24-2242 Erdemir Opening Br. at 16–22. As reflected in the extensive analysis of the statutory argument by the Trade Court, *CIT CCR*, at 1315–22 (24-2242 J.A. 23–37), and by the parties' briefs to us, 24-2242 Erdemir Opening Br. at 16–22; 24-2242 Gov't Br. at 22–26; 24-2242 Domestic Interested Parties Br. at 35–40, that argument about the proper reading of a statute is neither "immaterial [n]or wholly insubstantial and frivolous." *Verizon*, 535 U.S. at 643 (internal quotation marks omitted). Therefore, the case was and is not moot.

Nevertheless, the government contends that we may affirm the Trade Court's dismissal by concluding, under USCIT Rule 12(b)(6), that Erdemir failed to state a claim on which relief can be granted. 24-2242 Gov't Br. at 42–45. In the Trade Court, we note, the government urged the same alternative basis for dismissal. *See CIT CCR*, at 1305 (24-2242 J.A. 3). Erdemir, which asks us to resolve the statutory-interpretation issue, has not identified any reason we may not proceed under Rule 12(b)(6). We may and do follow that course, as we have done before in relevantly comparable circumstances. *See, e.g.*, *Sioux Honey Association v. Hartford Fire Insurance Co.*, 672 F.3d 1041, 1062–65 & n.9 (Fed. Cir. 2012); *see also Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 254 (2010) (rejecting remand that "would only require a new [Fed. R. Civ. P.] Rule 12(b)(6) label for the same conclusion"); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 359 (1959) (citing *Lauritzen v. Larsen*, 345 U.S. 571, 575 (1953)). And we reject Erdemir's statutory premise on the merits, for the reasons the Trade Court did.

Had a changed-circumstances review been instituted, it would have provided Erdemir no meaningful opportunity for relief that Erdemir did not already have in the (unsuccessful) sunset review. All the relevant provisions of § 1675a(a)—the provision setting the standards for assessing likely material injury—apply to both types of review, including the provision focusing the inquiry on "the likely volume, price effect, and impact of imports of the subject merchandise on the industry if the order is revoked." 19 U.S.C. § 1675a(a)(1). Both § 1675(b) (changed circumstances) and § 1675(c) (sunset review) "focus on likely developments if the order is revoked," SAA, H.R. Doc. No. 103–316, vol. 1 at 876–77, and they do not differ in any way favorable to Erdemir, once the review gets under way. The provision on what entries would be covered by any revocation on its face also applies equally to the two types of review. *See* 19 U.S.C. § 1675(d). The statute provides no identified difference opening an avenue for Erdemir to secure relief in a changed-circumstances review that it could not have gotten, but failed to get, in the sunset review.

In fact, a party like Erdemir might have a harder time securing relief in a changed-circumstances review than in a sunset review. For the former, the statute says that "the party seeking revocation" has "the burden of persuasion with respect to whether there are changed circumstances sufficient to warrant such revocation." *Id.* § 1675(b)(3). There is no comparable provision placing such a burden of persuasion on a party seeking revocation in a sunset review. To the contrary, for a sunset review, the statute says that an order "shall" be revoked "unless" Commerce determines that dumping "would be likely to continue or recur" and the Commission determines that material injury "would be likely to continue or recur." *Id.* § 1675(d)(2). And the statute makes sunset reviews generally automatic every five years, *id.* § 1675(c)(1), whereas even the launching of a changed-circumstances review must be justified, *id.* § 1675(b)(1), and is presumptively unavailable for at

least two years after the underlying determination is published, *id.* § 1675(b)(4).

The SAA reinforces what the statute indicates—that the statute makes securing relief from a changed-circumstances review no easier, and perhaps makes it harder, than securing relief from a sunset review. Emphasizing the importance of finality, the SAA expresses the view that material-injury determinations should not be subject to continual reopening based on subsequent developments regarding dumping margins, lest the potential for "repeated requests for reconsideration or judicial remands." SAA, H.R. Doc. No. 103–316, vol. 1 at 851. In particular, referring to the regular (annual) "administrative reviews" conducted under § 1675(a) to set the final actual dumping margins for the preceding period (year) under an antidumping-duty order (*see Oman Fasteners*, 125 F.4th at 1074), the SAA states that "[c]hanges in dumping margins in administrative reviews should not form the basis for a changed circumstances review." *Id.*

For these reasons, we reject Erdemir's argument that the statute provides a greater opportunity for relief in a changed-circumstances review than the opportunity Erdemir had in the sunset review (where it failed to secure relief). That is so specifically, moreover, with respect to the focus of its effort—to get the Commission to redetermine whether there was material injury in the first place, in the period of investigation leading to the issuance of the antidumping-duty order, applying the negligibility standard applicable to the original determination. As we noted in our sunset-review discussion *supra*, such a backward-looking redetermination, applying a standard *not* included in the standards for the later review, is not required (and may not even be permitted) under the fairest understanding of the statute. And as we also noted *supra*, there is no material difference in the statutory language for the changed-circumstances review that would aid Erdemir in such a review.

Erdemir has made no other meaningful argument against the Trade Court's dismissal of the challenge to the Commission's denial of the request for a changed-circumstances review. The argument it has made fails, so Erdemir has not shown that it has stated a claim on which relief could be granted. On that basis, we affirm the Trade Court's dismissal of the changed-circumstances case.

C

In the case involving the Commission's denial of Erdemir's requests for reconsideration of the material-injury determination in the *Commission 2016 Final Determination*, Fed. Cir. No. 24-2243, Erdemir challenges the Trade Court's holding in *CIT Reconsideration* that it lacks subject-matter jurisdiction under the sole jurisdictional provision invoked, namely, 28 U.S.C. § 1581(i). The Trade Court did not question, and there is no dispute before us, that the Commission has inherent authority to reconsider one of its final determinations, despite the absence of an express statutory grant. *See Home Products International, Inc. v. United States*, 633 F.3d 1369, 1377 (Fed. Cir. 2011); *CIT Reconsideration*, at 1362 (24-2243 J.A. 11–12); 24-2243 J.A. 697–709; *see also Commission CCR and Reconsideration Denial*, 87 Fed. Reg. at 73,332–33. Rather, the Trade Court held that it lacked subject-matter jurisdiction under § 1581(i) to hear Erdemir's challenge to the Commission's denial, reasoning that this challenge was in its nature just a challenge to the *Commission 2016 Final Determination*, that Erdemir could have brought, but failed to bring, back in 2016 under § 1581(c), and that the remedy available through § 1581(c) was not manifestly inadequate. *CIT Reconsideration*, at 1367–73 (24-2243 J.A. 21–35). We affirm the Trade Court's dismissal on this ground.

1

Section 1581(c) confers on the Trade Court subject-matter jurisdiction over any civil action brought under 19 U.S.C. § 1516a, which undisputedly includes, under

§ 1516a(a), an action challenging a Commission final determination of material injury in an antidumping-duty investigation. Section 1581(i) then confers residual jurisdiction over a civil action arising out of any law providing for "administration and enforcement with respect to the matters referred to in . . . [subsection (c)]." 28 U.S.C. § 1581(i)(1)(D). But § 1581(i) immediately adds that "[t]his subsection"—*i.e.*, subsection (i)—"shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable by" the Trade Court "under [19 U.S.C. § 1516a(a)]." *Id.* § 1581(i)(2).

That last express exception to § 1581(i), addressing displacement of subsection (c), specifically, embodies a limitation on § 1581(i) that we have long recognized to be implicit in § 1581 as a whole to prevent its displacement of any of subsections (a)–(h). As quoted *supra*, "'[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 *is or could have been available*, unless the remedy provided under that other subsection would be manifestly inadequate.'" *ARP*, 47 F.4th at 1377 (quoting *Norcal/Crosetti Foods*, 963 F.2d at 359); *see Erwin Hymer Group North America, Inc. v. United States*, 930 F.3d 1370, 1374–75 (Fed. Cir. 2019); *Ford Motor Co. v. United States*, 688 F.3d 1319, 1323 (Fed. Cir. 2012) (collecting cases). The rationale is a simple one: The limitation is necessary to prevent overriding the congressional imposition of timing and other limits on pursuing review under the other subsections. "'This preserves the congressionally mandated procedures and safeguards provided in the other subsections, absent which litigants could ignore the precepts of subsections (a)–(h) and immediately file suit in the [Trade Court] under subsection (i).'" *ARP*, 47 F.4th at 1377 (quoting *Norcal/Crosetti Foods*, 963 F.2d at 359); *cf. Interstate Commerce Commission v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 279–80, 284 (1987) (relying on same rationale in other contexts); *Young v. Collins*, 164

F.4th 869, 877 (Fed. Cir. 2026) (same); *BLOM Blank SAL v. Honickman*, 605 U.S. 204, 210–11 (2025) (same).

Our cases indicate that the decision about whether a particular invocation of § 1581(i) violates that limitation should proceed in two steps. The court must "look at the facts asserted in the pleadings and determine the true nature of the action." *Rimco*, 98 F.4th at 1052. If the action, given its true nature, could have been brought under another subsection of § 1581, then § 1581(i) is *not* applicable unless that other subsection was "manifestly inadequate." *Erwin*, 930 F.3d at 1375.

We have ruled that the "true nature" of the complaint is not controlled by how a party frames a challenge. *See*, *e.g.*, *Rimco*, 98 F.4th at 1053 (determining the true nature was not, as argued, unconstitutional excessive fines, but Commerce's decision as the basis for those fines); *Wanxiang America Corporation v. United States*, 12 F.4th 1369, 1373, 1375 (Fed. Cir. 2021) (similar for a due process allegation, where the true nature was challenging Commerce's antidumping determination); *TR International Trading Co. v. United States*, 4 F.4th 1363, 1368 (Fed. Cir. 2021) (holding that the true nature of a claim that an antidumping-duty order was misapplied was a claim that the merchandise was within the order's scope). We have treated "manifestly inadequate" as a high standard, requiring that pursuit would be "an exercise in futility," with effort "incapable of producing any result[,] failing utterly of the desired end through intrinsic defect[,] useless, ineffectual, [or] vain." *Hartford Fire Insurance Co. v. United States*, 544 F.3d 1289, 1294 (Fed. Cir. 2008) (emphasis removed and citation omitted). We have held that another subsection of § 1581 was available and not inadequate when the party simply attempted to "circumvent[ ] the established administrative procedure," *Sunpreme Inc. v. United States*, 892 F.3d 1186, 1193 (Fed. Cir. 2018), and crucially, that "a remedy is not inadequate simply because [a plaintiff] failed to invoke it within the time frame it prescribes," *Juice*

*Farms, Inc. v. United States*, 68 F.3d 1344, 1346 (Fed. Cir. 1995) (citation and internal quotation marks omitted). *See also*, *e.g.*, *Rimco*, 98 F.4th at 1055; *International Custom Products, Inc. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006); *Miller & Co. v. United States*, 824 F.2d 961, 964 (Fed. Cir. 1987).

2

We ask here whether Erdemir's challenge to the denial of reconsideration of the *Commission 2016 Final Determination* is, in its true nature, a challenge to the *Commission 2016 Final Determination* itself. If so, that challenge could have been brought back in 2016 in a timely manner under subsection (c). Unless such a 2016 action would have been "manifestly inadequate," § 1581(i) is unavailable. We agree with the Trade Court that Erdemir's present action is, in its true nature, a challenge to the *Commission 2016 Final Determination* and that subsection (c) was not manifestly inadequate to press that challenge. Consequently, the Trade Court lacked § 1581(i) subject-matter jurisdiction.

Erdemir is seeking the undoing of the *Commission 2016 Final Determination* with retroactivity back to issuance of the antidumping-duty order.[6] The harm at issue was inflicted by the order issued immediately after, and based on, that 2016 determination. And Erdemir does not argue, and certainly does not demonstrate, that the evidence underlying Erdemir's challenge was unavailable to it from the investigation record by the time its 30-day window to sue in the Trade Court closed. *Cf. Brotherhood of*

---

[6] We may put aside for present purposes any independent statutory limitations on relief triggered by liquidations of particular entries. *See*, *e.g.*, *Carbon Activated Corp. v. United States*, 791 F.3d 1312, 1315 (Fed. Cir. 2015) (citing 19 U.S.C. § 1675(a)(3)(B)).

*Locomotive Engineers*, 482 U.S. at 278 (discussing, outside the trade-law setting, reviewability of an agency's denial of reconsideration sought on a basis, particularly "new evidence," not available originally); *Home Products*, 633 F.3d at 1376–79 (discussing new evidence of fraud in the context of a still-pending appeal). In these circumstances, a subsection (c) lawsuit was available and not manifestly inadequate, as the Trade Court explained. *See CIT Reconsideration*, at 1365–73 (24-2243 J.A. 21–35).[7]

A contrary view does not follow, as Erdemir urges, from the fact that Erdemir's challenge regarding negligibility was conditional on Çolakoğlu's separate challenge to Commerce's final determination of dumping margins in the Trade Court. *See* 24-2243 J.A. 698, 708. Erdemir knew of that separate action; indeed, it filed its own challenge to Commerce's final determination. It knew of the separate action, moreover, before its window to challenge the Commission's final determination closed. It also knew (or is charged with knowing) of the very same connection between the two cases it now alleges—that success in Çolakoğlu's challenge to its dumping margin could have (as Erdemir asserts it does have) the effect of establishing that dumped imports of the subject merchandise from Turkey were negligible, thereby undermining the material-injury determination of the Commission.

We will assume that an adjudication of an action brought by Erdemir against the Commission likely would have had to await resolution (to some degree of finality) of

---

[7] We have no occasion to address issues that may arise if reconsideration is sought, after the time for appeal has run, based on previously unavailable evidence, where the evidence bears on an issue, such as negligibility, that is material to the determination for which reconsideration is sought but is not part of a changed-circumstances review under 19 U.S.C. § 1675(b). *See supra* II.A.1 (pp. 23–26).

the companion case(s) challenging Commerce's determination. We can assume that the contingency at the outset would have barred immediate adjudication, on ripeness grounds. But the ripeness doctrine is applied and assessed at the time of *adjudication*, considering the state of relevant facts at that time. *See*, *e.g.*, *Blanchette v. Connecticut General Insurance Corps.*, 419 U.S. 102, 140 (1974); *Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 839 (9th Cir. 2024); *Whitaker v. Monroe Staffing Services, LLC*, 42 F.4th 200, 208–09 (4th Cir. 2022); *Church of Our Lord & Savior Jesus Christ v. City of Markham*, 913 F.3d 670, 677 (7th Cir. 2019); 13B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532.7 (3d ed. April 2026 update). Erdemir does not show why lack of ripeness at the outset would have barred the granting of a stay until the key underlying premise of the negligibility argument was established elsewhere. Protective filings with stays are hardly unknown. *See*, *e.g.*, *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 182–84 (1952); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979); *cf. Turner v. City of Memphis, Tennessee*, 369 U.S. 350, 353–54 (1962). And the Trade Court, as it explained here, has in a number of cases granted stays of proceedings while related cases proceed to resolution of issues of importance. *CIT Reconsideration*, at 1368–69 (24-2243 J.A. 24–27).

Erdemir can hardly assert inadequacy of the immediate appeal because relief would have been a long time coming. The alternative—waiting years to file an action from a reconsideration denial—is no faster. Meanwhile, filing the earlier action has the distinct virtue of putting all interested parties and the public on notice that the entire antidumping-duty order is subject to being set aside retroactively—advancing the evident purpose of the timing limits Congress set for challenges covered by various subsections of 28 U.S.C. § 1581 and 19 U.S.C. § 1516a. *See* 28

U.S.C. § 2636(c). It also has the virtue of reducing the need for after-the-fact counterfactual assessments of whether a filing would have been futile, as here seems not to be the case. We have said, in the protest context (28 U.S.C. § 1581(a)): "Plaintiff cannot take it upon itself to determine whether it would be futile to protest or not. In order to protect itself, a protest should have been filed[.]" *International Custom Products*, 467 F.3d at 1328 (internal quotation marks and citation omitted); *see also Juice Farms*, 68 F.3d at 1346 ("If Juice Farms had protested within ninety days of bulletin notices, it would have had an opportunity to protest the legality of [an administrative decision] in the [Trade Court].").

This conclusion is strongly supported by our decision in *ARP*, 47 F.4th 1370, a case involving not § 1581(c), but § 1581(a), governing protests. There, the United States Trade Representative (USTR) announced tariffs under § 301 of the Trade Act of 1974, *see* 19 U.S.C. § 2411, and later granted retroactive product-specific exclusions. *ARP*, 47 F.4th at 1373–74. United States Customs and Border Protection (Customs) had liquidated certain entries of such products by two firms before the grant of exclusions, but the two firms had not filed timely protests of the liquidations with Customs. *Id.* at 1374–76. The firms brought suit in the Trade Court, invoking § 1581(i) for subject-matter jurisdiction. *Id.* at 1376.

We held in *ARP* that § 1581(i) was inapplicable because the two firms could have filed timely protests or taken steps to extend the deadline so as to be able to file timely protests, *i.e.*, § 1581(a) was available and not manifestly inadequate. *Id.* at 1377–80. In the case of at least one of the firms, those routes had to be invoked even before the USTR announced the relevant exclusion, rendering the protest challenge effectively conditional on an uncertain administrative action (exclusion) that was yet to occur. *Id.* at 1373–76. We determined that a statutory mechanism (for protests) was available and had to be timely invoked to

preserve a challenge (to Customs' duty assessments), even if the basis for that challenge depended on a later, uncertain administrative action associated with another statutory mechanism (USTR's exclusion). *Id.* at 1379–80 ("Had ARP protested within 180 days following the liquidation for each entry now at issue, ARP would have had the opportunity to protest Customs' assessments of § 301 duties underlying the challenged entries' liquidations."). We explained:

> Because the importers contend that USTR's exclusions rendered Customs' classifications of their entries erroneous, they were statutorily obligated to timely protest under 19 U.S.C. § 1514(a)(2). That Customs' classification decisions became erroneous after USTR granted retroactive exclusions is irrelevant. The obligation to protest a Customs classification error does not turn on whether it was erroneous *ab initio* or became erroneous because of retroactive administrative action. It instead turns on whether Customs' classifications of the importers' entries were protestable "decisions" under 19 U.S.C. § 1514, and we hold that these classifications were such protestable "decisions."

*Id.* at 1379. A similar conclusion is warranted for the present case, involving subsection (c).

This result, in effect requiring a protective filing, also is in line with the established principle, from other settings, that requests for undoing a judgment, long after an appeal deadline, are not to be used as substitutes for appeal. *See*, *e.g.*, *McCulloch v. Secretary of Health and Human Services*, 923 F.3d 998, 1001 (Fed. Cir. 2019) (declining to apply Rule of Court of Federal Claims 60(b) as a substitute for appeal); *Lazare Kaplan International, Inc. v. Photoscribe Technologies, Inc.*, 714 F.3d 1289, 1297 (Fed. Cir. 2013) (same for Fed. R. Civ. P. 60(b)); *Ackermann v. United States*, 340 U.S. 193, 198–99 (1950) (same).

Here, the ground asserted in Erdemir's reconsideration request was readily available during the time allowed for an immediate action. The facts themselves were available—just not, yet, an adjudicator's reassessment of the facts. In this circumstance, § 1581(c) was available and adequate, and so § 1581(i) is not now available. We therefore affirm the dismissal in *CIT Reconsideration* for want of subject-matter jurisdiction.

## III

We have considered Erdemir's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Trade Court's judgments in each of the three appeals herein.

The parties shall bear their own costs.

**AFFIRMED**